**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NIASPAN ANTITRUST LITIGATION | MDL No. 2460 |
| This Document Relates to: | |
| DIRECT PURCHASER CLASS ACTIONS | Master File No.: 2:13-md-2460 JD |
| *Professional Drug Company, Inc. v. Abbvie, Inc*, *et al.*, No. 13-cv-01792-JD | |
| *Rochester Drug Co-Operative, Inc. v. Abbvie, Inc.*, *et al.*, No. 13-cv-01820-JD | |
| *Value Drug Company v. Abbvie, Inc.*, *et al.*, No. 13-cv-03124-JD | |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT**
**PURCHASER CLASS PLAINTIFFS' MOTION FOR CONSOLIDATION**
**AND FOR APPOINTMENT OF INTERIM CLASS COUNSEL**

Plaintiffs Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc., and

Value Drug Company (collectively "Direct Purchaser Class Plaintiffs") respectfully submit

this memorandum of law in support of their motion for the entry of Case Management Order

No. 2, substantially in the form proposed, consolidating the actions and appointing interim co-

lead and liaison counsel for the proposed class of direct purchasers of Niaspan (the "Direct

Purchaser Class").

**INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiffs Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc., and

Value Drug Company are pharmaceutical wholesalers and distributors who purchased Niaspan

directly from the defendants.  Each filed separate antitrust complaints in April and June of

2013.  In all three actions, this Court entered consent orders extending the time for the

defendants to answer, move or otherwise respond in deference to a motion pending before the Judicial Panel on Multidistrict Litigation.[1]  On September 17, 2013, the Panel issued an order declining to transfer the above-captioned actions from this Court.

Each of the Direct Purchaser Class Plaintiffs' complaints seeks, on behalf of a proposed class of direct purchasers of the prescription drug Niaspan, overcharge damages due to allegedly-illegal actions that suppressed generic competition to Niaspan.   Each of the Direct Purchaser Class Plaintiffs' complaints alleges violations of the Sherman Act.[2]  Such violations are made privately actionable through Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

This motion presents two issues:

First, Federal Rule of Civil Procedure 42 permits consolidation of cases involving common questions of law or fact.  All three of the Direct Purchaser Class Plaintiffs' complaints assert that defendants unlawfully suppressed generic competition for Niaspan by entering into collusive and anticompetitive litigation settlement agreements.  Should these cases be consolidated?

Second, Federal Rule of Civil Procedure 23(g) affords courts discretion to appoint attorneys or firms who are best able to represent the class as interim class counsel. Proposed interim lead counsel are highly experienced and trial-proven in pharmaceutical matters of this type and will expeditiously litigate this complex matter to a prompt trial or resolution that maximizes recovery to class members.  Should the court appoint interim class counsel and adopt the proposed structure?

Consolidation here is straightforward.  The Direct Purchaser Class cases present the same claims and seek to represent the same class.  Consolidation in one complaint will enable a single direct purchaser trial in this District.  And all parties agree that the complaints

---

[1] *See e.g.* Consent Order, June 4, 2013, No. 13-cv-01820, ECF No. 23.

[2] Complaint, *Professional Drug Company, Inc. v. Abbvie, Inc, et al.*, No. 13-cv-01792-JD, at ¶¶ 20-21, 155, 161 ("Professional Drug Compl."); Complaint, *Rochester Drug Co-Operative, Inc. v. Abbvie, Inc.*, *et al.*, No. 13-cv-01820-JD, at ¶¶ 10, 168; Complaint, *Value Drug Company v. Abbvie, Inc.*, *et al.*, No. 13-cv-03124-JD, at ¶¶ 1, 19, 117, 125.

filed on behalf of the Direct Purchaser Class should be consolidated.

The Direct Purchaser Class Plaintiffs have agreed to a leadership structure under Rule 23(g) of the Federal Rules of Civil Procedure and, by this motion, seek entry of the proposed order concerning that structure.

## ARGUMENT

I.    **CONSOLIDATION OF THE DIRECT PURCHASER CLASS CASES IS APPROPRIATE UNDER FED. R. CIV. P. 42(a).**

This case, like a number of similar prior and pending cases, arises from unlawful conduct that has suppressed the availability of less expensive, generic versions of a brand prescription drug, thereby inflicting overcharges on direct purchasers of drugs. Generic drugs contain the same active pharmaceutical ingredient as their brand-name counterpart and are determined by the Food and Drug Administration ("FDA") to be just as safe and effective.[3]  The key difference between generic and brand name drugs is their price: generics are usually at least 25% less expensive than their brand counterparts when there is a single generic competitor, and this discount typically increases to 50% to 80% (or more) when there are multiple generic competitors on the market for a given brand.[4]

This case concerns the brand prescription drug Niaspan, an extended-release version of niacin.  In early 2005, Defendant Barr was poised to launch its generic version of Niaspan, the key product sold by Kos, a predecessor of defendants Abbott and AbbVie.  Desperate to avoid losing its major stream of revenue and profits, Kos agreed to pay Barr many millions of dollars in return for Barr's agreement to delay the launch of its generic version of Niaspan for eight

---

[3] *See*, *e.g.*, Professional Drug Compl. ¶ 3.

[4] *Id*.

years – until September 2013.[5]  This agreement not only delayed Barr's entry but also served as a "bottleneck" that delayed the entry of other generic versions of Niaspan.[6]

Defendants' agreement worked as planned and allowed them to overcharge the Direct Purchaser Class Plaintiffs and the proposed class.  Direct Purchaser Class Plaintiffs seek to recover those overcharges on behalf of themselves and similarly-situated direct purchasers.[7]

All Direct Purchaser Class Plaintiffs support, and the defendants do not oppose, consolidation of the three Direct Purchaser Class actions for pretrial and trial purposes.  In the event that additional direct purchaser class cases are filed and transferred to this Court for pretrial purposes only, such cases can be consolidated only for pretrial purposes and then, if necessary, returned to their transferor districts.

Federal Rule of Civil Procedure 42(a) states that if "actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."[8]  The *Manual for Complex Litigation* encourages transferee courts to consider consolidation early and establish a master docket for all actions:

> [a]ll related civil cases pending in the same Court should initially be assigned to a single judge to determine whether consolidation, or at least coordination of pretrial proceedings, is feasible and is likely to reduce conflicts and duplication. . . When cases are coordinated or consolidated, the court should enter an order establishing a master file for the litigation in the clerk's office, relieving the parties from multiple filings of the same pleadings, motions, notices, orders and discovery materials, and providing that documents need not be filed separately in an individual case file unless uniquely applicable to that particular case.[9]

---

[5] *Id*. ¶¶ 5-7.

[6] *Id*. ¶ 8.

[7] *Id*. ¶¶ 9-10.

[8] Fed. R. Civ. P. 42(a)(2).

[9] Manual for Complex Litigation (Fourth) at § 20.11 (Cases in same court) (West, 2009).

Consolidation of the pending Direct Purchaser Class cases, and consolidation of any future class cases filed, removed or transferred to this District, is appropriate.  Each of the Direct Purchaser Class cases involves similar allegations that defendants unlawfully delayed the market entry of less expensive, generic versions of Niaspan.  The factual allegations, alleged wrongdoing, and causes of action are the same.  Direct Purchaser Class Plaintiffs thus seek, and all parties support, consolidation of the Direct Purchaser Class cases.

## II.      THE APPOINTMENT OF INTERIM CO-LEAD AND LIAISON COUNSEL IS APPROPRIATE UNDER FED. R. CIV. P. 23(g).

The Direct Purchaser Class Plaintiffs propose that the firms Garwin Gerstein & Fisher LLP ("GGF"), Hagens Berman Sobol Shapiro LLP ("HBSS"), and Berger & Montague, P.C. ("B&M") serve as interim co-lead counsel for the proposed Direct Purchaser Class ("Interim Co-Lead Counsel") and propose that B&M serve as interim liaison counsel for the proposed Direct Purchaser Class ("Interim Liaison Counsel").[10]

Appointment of Interim Co-Lead and Liaison Counsel is in accordance with Federal Rule of Civil Procedure 23(g) and the *Manual for Complex Litigation (Fourth)* ("Manual"), facilitates the orderly advancement of the litigation, and results in a substantial time savings for the parties and the Court.[11]

The proposed interim Co-Lead and Liaison Counsel satisfy the applicable criteria for serving as interim Class Counsel.  Each has worked to identify and investigate the potential claims; is experienced in handling complex class actions and antitrust litigation,

---

[10] "We note in passing that lead plaintiffs may retain multiple firms as co-lead counsel."  *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005).

[11] *See* Manual §§ 10.22, 10.221; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) (DuBois, J.) ("[t]he multiplicity of suits requires that the district court be allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency") (quotation omitted).

particularly pharmaceutical antitrust litigation; possesses in-depth knowledge of the applicable law; and has adequate resources to commit to representing the proposed Class.[12]

The three firms are preeminent antitrust class action firms and each has substantial experience working in a wide range of complex antitrust matters.  Attorneys at GGF, HBSS and B&M have decades of experience litigating some of the nation's most complicated antitrust class actions and have successfully recovered billions of dollars in damages for class members.  The firms have the resources necessary to prosecute this action and will devote those resources to the prosecution of this action in the best interest of the class.

GGF (www.garwingerstein.com), along with its supporting co-counsel Odom & Des Roches, LLP and Smith Segura & Raphael, LLP, are pioneers in Hatch-Waxman antitrust litigation, having been involved in the first such direct purchaser class case filed in 1998.[13] GGF, in particular, has been appointed lead or co-lead class counsel in nineteen Hatch-Waxman antitrust actions since that time, and is among the most experienced and successful Hatch-Waxman antitrust litigation firms in the country.  As lead or co-lead class counsel, GGF, along with its co-counsel, have been responsible for a combined recovery of more than one billion dollars on behalf of direct purchasers. These cases include, among others:

- *In re Tricor Antitrust Litig.,* C.A. No. 05-cv-340 (D. Del.) ($250 million) (sole lead);

- *In re Cardizem CD Antitrust Litig*., MDL Docket No. 1278 (E.D. Mich.) ($110 million) (co-lead);

- *In re Buspirone Antitrust Litig.*, MDL Docket No. 1410 (S.D.N.Y.) ($220 million) (co-lead);

- *In re Relafen Antitrust Litig.*, Master File No. 01-12239 (D. Mass.) ($175 million) (co-lead);

---

[12] *See* Fed. R. Civ. P. 23(g)(1).

[13] *See In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278 (E.D. Mich.).

- *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317 (S.D. Fla.) ($75 million) (co-lead);

- *In re Remeron Antitrust Litig.*, C.A. No. 03-cv-323 (D.N.J.) ($75 million) (co-lead);

- *In re Nifedipine Antitrust Litigation*, MDL No. 1515 (D.D.C.) ($35 million) (co-lead);

- *Meijer, Inc., et al., v. Abbott Laboratories*, C.A. No. 07-cv-5985 (N.D. Ca.) ($52 million) (co-lead);

- *Rochester Drug Co-Operative, Inc., v. Braintree Laboratories, Inc.*, C.A. No. 07- cv-0142 (D. Del.) ($17.25 million) (co-lead);

- *In re OxyContin Antitrust Litigation*, MDL No. 04-md-1603 (S.D.N.Y.) ($16 million) (co-lead);

- *In re DDAVP Direct Purchaser Antitrust Litigation*, C.A. No. 05-cv-2237 (S.D.N.Y.) ($20.25 million) (co-lead).

Additionally, GGF is currently serving as court-appointed lead or co-lead counsel in several other complex pharmaceutical antitrust litigations involving the Hatch-Waxman Act.  For example:

- *King Drug Company of Florence, Inc. v. Cephalon, Inc., et al.*, No. 06-cv-1797 (E.D. Pa.) (sole lead);

- *In re Neurontin Antitrust Litig.,* MDL Docket No. 1479 (D.N.J.) (FSH) (co-lead counsel);

- *In re Androgel Antitrust Litigation (II)*, MDL Docket No. 2084 (N.D. Ga.) (co-lead);

- *In re K-Dur Antitrust Litigation*, No. 01-cv-1652 (D.N.J.) (JAG) (co-lead counsel);

- *In re Nexium (Esomeprazole) Antitrust Litigation*, No.12-md-2409-WGY (D. Mass.) (co-lead);

- *In re: Lipitor Antitrust Litigation*, MDL No. 2332 (D.N.J.) (co-lead);

- *In re: Lamictal Antitrust Litigation*, No. 12-995 (D.N.J.) (sole lead); and

- *In re: Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust*

*Litigation*, MDL No. 2445 (E.D. Pa.) (co-lead).

GGF has expertly and consistently performed (and is performing) critical work in the above cases, including: (a) formulating and implementing litigation strategy; (b) writing briefs and arguing key motions; (c) taking and defending the depositions of key fact and expert witnesses; (d) retaining and working with experts; (e) working cooperatively with co-counsel to ensure that all litigation tasks, including trial, are efficiently and thoroughly handled by those lawyers best suited to particular issues and tasks; and (e) successfully negotiating multi-million dollar settlements for the benefit of class members.

Bruce E. Gerstein is the senior partner of GGF and has both personally supervised and been intimately involved in the litigation of these actions. GGF's leadership and excellence as class counsel has been recognized repeatedly by the courts. For example, in a hard-fought and complex stockholder's derivative action brought on behalf of Cendant Corporation that resulted in a $54 million settlement paid by the corporation's individual directors, District Court Judge William H. Walls commented that "[t]here is little doubt that [GGF] is highly skilled and experienced in litigating shareholder derivative suits."[14]  Additionally, in the very first Hatch-Waxman antitrust case filed on behalf of direct purchasers, *In re Cardizem CD Antitrust Litig.*, District Court Judge Nancy G. Edmunds recognized the trailblazing efforts of GGF and its co-counsel, stating:

> Class Counsel brought this private antitrust action seeking to enforce the antitrust laws and alleging that a brand-name drug manufacturer had colluded with a generic competitor to block cheaper generic versions of the brand-name drug from coming to market. This case has helped put prescription drug pricing and marketing tactics at the forefront of media, Congressional

---

[14] *In re Cendant Corp.*, 232 F. Supp. 2d 327, 331 (D.N.J. 2002).

scrutiny, and judicial scrutiny. Encouraging qualified counsel to
bring inherently difficult and risky but beneficial class actions like
this case benefits society.[15]

HBSS (www.hbsslaw.com) has extensive experience in pharmaceutical antitrust
litigation.  HBSS specializes in the representation of plaintiffs in class actions and multi-party,
large-scale complex litigation and is regularly listed in the *National Law Journal's* Plaintiffs'
Hot List.  The firm's Boston office leads HBSS's drug litigation efforts and has significant
experience representing purchasers in pharmaceutical antitrust actions.  Thomas M. Sobol is
the Managing Partner of the firm's Boston office; he, along with Boston Partner Lauren Guth
Barnes, will be primarily responsible for HBSS's participation in this matter.  Individually
and/or in conjunction with other members of his firm, Mr. Sobol has been appointed lead, co-
lead, or liaison counsel in many pharmaceutical antitrust litigation matters, including the
following:

- *In re Nexium (Esomeprazole) Antitrust Litigation*, No. 12-md-02409 (D. Mass.);

- *In re Skelaxin (Metaxalone) Antitrust Litigation*, No. 12-md-2343 (E.D. Tenn.)

- *In re Prograf Antitrust Litigation,* MDL No. 2242 (D. Mass.);

- *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141 (E.D. Mich.);

- *In re Flonase Antitrust Litig.*, No. 08-cv-3149 (E.D. Pa.);

- *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-02431 (E.D. Pa.);

- *In re OxyContin Antitrust Litig.*, MDL No. 1603 (S.D.N.Y.);

- *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, No. 06-cv-52 (D. Del.);

- *In re Tricor Indirect Purchasers Antitrust Litig.*, No. 05-cv-0360 (D. Del.);

- *In re Neurontin Antitrust Litig.*, MDL No.1479 (D.N.J.);

---

[15] 218 F.R.D. 508, 534 (E.D. Mich. 2003).

- *In re Paxil Direct Purchaser Litig.*, No. 03-cv-4578 (E.D. Pa.);

- *In re Augmentin Antitrust Litig.*, No. 02-cv-442 (E.D. Va.); and

- *In re Relafen Antitrust Litig.,* No. 01-cv-12239 (D. Mass.).

In addition, reflecting HBSS's broad experience in pharmaceutical industry litigation generally, HBSS has also been appointed lead or co-lead counsel in many pharmaceutical industry pricing and marketing actions, including:

- *New England Carpenters Health Benefits Fund v. First DataBank, Inc. and McKesson Corp.*, No. 05-cv-11148 (D. Mass.) (AWP manipulation);

- *In Re Bextra and Celebrex Marketing Sales Practices and Product Liability Litig.*, MDL No. 1699 (N.D. Ca.);

- *Kaiser Foundation Health Plan, et al v. Pfizer, Inc., et al*, No. 04-cv-10739 (D. Mass.) (Neurontin promotion);

- *In Re Vioxx Products Liability Litig.*, MDL No.1657 (E.D. La.) (TPP claims);

- *In Re Vytorin/Zetia Marketing, Sales Practices and Products Liability Litig.*, MDL No. 193 (D.N.J.);

- *Government Employees Hospital Association v. Serono,* No. 05-cv-11953 (D. Mass.) (Serostim);

- *In Re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (AWP manipulation); and

- *In Re Lupron Marketing and Sales Practices Litig.*, MDL No. 1430 (D. Mass.).

B&M (www.bergermontague.com) has handled complex and class action litigation from its Center City Philadelphia office for over 40 years, and was among the first firms to prosecute cases such as this seeking to recover overcharges for a class of direct purchasers caused by unlawfully delayed generic competition.  Over the past decade, B&M has played a principal role in obtaining hundreds of millions of dollars in settlements from drug companies alleged to have impeded the entry of generics and artificially inflated drug prices.  B&M is routinely appointed by federal courts to serve in leadership roles in complex antitrust class

action cases.

For example, B&M has been appointed by federal courts as lead or co-lead counsel in:

- *Meijer, Inc., et al., v. Abbott Laboratories*, C.A. No. 07-cv-5985 (N.D. Ca.) ($52 million settlement) (co-lead);

- *Rochester Drug Co-Operative, Inc., v. Braintree Laboratories, Inc.*, C.A. No. 07- cv-0142 (D. Del.) ($17.25 million) (co-lead);

- *In re OxyContin Antitrust Litigation*, MDL No. 04-md-1603 (S.D.N.Y.) ($16 million) (co-lead);

- *In re DDAVP Direct Purchaser Antitrust Litigation*, C.A. No. 05-cv-2237 (S.D.N.Y.) ($20.25 million) (co-lead);

- *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, No. 06-52 (D. Del.) ($20 million) (co-lead).

- *In re Androgel Antitrust Litigation (II)*, MDL Docket No. 2084 (N.D. Ga.) (co-lead);

- *In re K-Dur Antitrust Litigation*, No. 01-cv-1652 (D.N.J.) (JAG) (co-lead);

- *In re Nexium (Esomeprazole) Antitrust Litigation*, No.12-md-2409-WGY (D. Mass.) (co-lead);

- *In re: Lipitor Antitrust Litigation*, MDL No. 2332 (D.N.J.) (co-lead);

- *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431 (E.D. Pa.) (co-lead) ($37.5 million settlement with one defendant).

The firm and its lawyers (including shareholders Eric L. Cramer and David F. Sorensen, who will be handling this matter) are regularly recognized by Chambers and Partners, The Legal 500, Martindale-Hubbell, America's Best Lawyers, Lawdragon.com, and *The National Law Journal* for outstanding work in antitrust litigation.  Chambers and Partners has noted that B&M "specializes in plaintiffs' antitrust class actions, and is noted for its exceptional work in pharmaceutical and financial disputes," is "the top choice for plaintiff antitrust representation, particularly in complex class actions" and "stand[s] out by virtue of its first-class trial skills."  Chambers also quotes B&M's clients as saying that "the lawyers are

superb at preparing briefs and arguments, and they command the respect of the courts because they are always so well prepared."  Indeed, for seven straight years, B&M has been selected by Chambers and Partners' *America's Leading Lawyers for Business* as one of Pennsylvania's top antitrust firms.  Furthermore, *The National Law Journal* has selected B&M in eight out of the last nine years to its "Hot List" of top plaintiffs'-oriented litigation firms in the United States with a history of high achievement and significant, groundbreaking cases.  Nationally, fifteen or fewer firms are chosen for this honor.

There can be no doubt that GGF, HBSS and B&M are able to represent the Class fairly and adequately as Interim Co-Lead Counsel.[16]  Similarly, there can be no doubt that B&M is able to represent the Class as Interim Liaison Counsel.  Accordingly, appointment of Interim Co-Lead Counsel and Liaison Counsel and the assignment of responsibilities to them as set forth in the Proposed Order accompanying this motion is consistent with Rule 23(g), as well as with the Manual's recommendations regarding establishment of an organizational structure for counsel in furtherance of the ultimate goal of achieving "efficiency and economy" in the litigation.[17]

## III.    THE OTHER ELEMENTS OF THE PROPOSED ORDER ARE APPROPRIATE

In addition to appointing Interim Co-Lead and Liaison Counsel, the proposed order immediately achieves two things.  It:

- ensures that the Court's consolidation of the Direct Purchaser Class actions applies to any subsequently-filed Direct Purchaser Class action unless the Court determines otherwise (¶¶ 1-2, 7); and

---

[16] *See* Fed. R. Civ. P. 23(g)(1)(B).

[17] *See* Manual § 10.221.

- suspends the 90-day rule provided by Local Civil Rule 23.1(c), that would

  otherwise require that the Direct Purchaser Class Plaintiffs move for class

  certification within ninety days of filing their various complaints (¶ 11).

These are useful things to accomplish at this stage.  First, if any additional direct purchaser class

actions are filed, they are automatically governed by the proposed Order, unless the Court

decides otherwise on application, facilitating orderly case management.  Second, while the

Direct Purchaser Class Plaintiffs have no intention to delay the filing of their motion for class

certification,  more discovery may be required than the ninety-day rule of Local Civ. R. 23.1(c)

would allow.[18]

## CONCLUSION

For the reasons set forth above, and in order to provide for the orderly and efficient

conduct of this litigation and any other related actions, including those subsequently filed

or transferred, Plaintiffs respectfully request that the Court enter the proposed order filed

concurrently herewith.


Dated: October 17, 2013                          Respectfully Submitted,

                                                 */s/ David F. Sorensen*
                                                 David F. Sorensen
                                                 **BERGER & MONTAGUE, P.C.**
                                                 1622 Locust Street

---

[18] Numerous cases like this one have been certified as class actions, including within this Circuit. *See  e.g.,  In re K-Dur Antitrust Litig*., No. 01-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008), *aff'd*, 686 F.3d 197 (3d Cir. 2012), *vacated on other grounds and remanded, Merck & Co., Inc. v. Louisiana Wholesale Drug Co., Inc.,* 133 S.Ct. 2849 (2013) and *Upsher-Smith Labs., Inc. v Louisiana Wholesale Drug Co., Inc.* 133 S.Ct. 2849 (2013), *class certification holding reinstated, In re K-Dur Antitrust Litig.,* 2013 U.S. Dist. LEXIS 19959 (3d Cir. Sept. 9, 2013); *In re Wellbutrin XL Antitrust Litig*., 2011 U.S. Dist. LEXIS 90075 (E.D. Pa. Aug. 11, 2011); *In re Neurontin Antitrust Litig*., 2011 U.S. Dist. LEXIS 7453 (D.N.J. Jan. 25, 2011); *American Sales Co., Inc. v. SmithKline Beecham Corp*., 2010 U.S. Dist. LEXIS 120177 (E.D. Pa. Nov. 12, 2010); *Teva Pharms.USA, Inc. v. Abbott Labs*., 252 F.R.D. 213 (D. Del. 2008).

Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4604

Thomas M. Sobol
Lauren Guth Barnes
**HAGENS BERMAN SOBOL**
   **SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Tel: (617) 482-3700
Fax: (617) 482-3003

Bruce E. Gerstein
**GARWIN GERSTEIN & FISHER LLP**
1501 Broadway, Suite 1416
New York, New York 10036
Tel: (212) 398-0055
Fax: (212) 764-6620

*Proposed Interim Lead Counsel*

Peter R. Kohn
**FARUQI & FARUQI, LLP**
101 Greenwood Ave., Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770

Don Barrett
**BARRETT LAW GROUP, P.A.**
404 Court Square
Lexington, MS 39095
Tel: (662) 834-2488

John Radice
**RADICE LAW FIRM, P.C.**
34 Sunset Blvd.
Long Beach, NJ 08008
Tel: (646) 386-7688

Barry S. Taus
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704

David C. Raphael
**SMITH  SEGURA & RAPHAEL, LLP**
3600 Jackson Street, Suite 111
Alexandria, LA 71303
Tel: (318) 445-4480

Stuart E. Des Roaches
**ODOM & DES ROCHES, L.L.P.**
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504)522-0077

Keith Verrier
**LEVIN FISHBEIN SEDRAN &**
   **BERMAN**
510 Walnut ST., Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Joseph H. Meltzer
**KESSLER TOPAZ MELTZER &**
   **CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706

*Plaintiffs' Counsel*

14