**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br>NIASPAN ANTITRUST LITIGATION | MDL NO. 2460 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | MASTER FILE NO. 13-MD-2460 |

DuBois, J.                                                                                          December 8, 2015

**M E M O R A N D U M**

### I.        INTRODUCTION

This multidistrict litigation concerns claims brought on behalf of putative end-payor and direct-purchaser classes, and individual plaintiffs, pursuant to federal and state antitrust and consumer protection laws. Plaintiffs aver that defendants, a brand-name drug manufacturer and a generic-drug manufacturer, engaged in an alleged "pay for delay" settlement to end Hatch-Waxman Act patent litigation. By Memorandum and Order dated September 5, 2014, the Court granted in part and denied in part defendants' Joint Motion to Dismiss the Direct-Purchaser Plaintiffs and End-Payor Plaintiffs' Consolidated Amended Complaints. Presently before the Court is End-Payor Plaintiffs' Motion for Reconsideration in Light of Intervening Authority. For the following reasons, the Court denies the Motion.

### II.       BACKGROUND

The background of this case is set forth in detail in the Court's Memorandum and Order of September 5, 2014. *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735 (E.D. Pa. 2014). This Memorandum recites only the facts and procedural history relevant to this Motion for Reconsideration.

Defendant AbbVie Inc. ("AbbVie") markets and sells Niaspan, a brand-name prescription drug, primarily used in the treatment of lipid disorders, such as high cholesterol. In the early 1990s, Kos, a company later acquired by AbbVie, developed a therapeutically-effective time-release version of niacin, which does not cause the side-effects previously associated with niacin. This time-release version of niacin was marketed using the trademark Niaspan. Kos obtained a series of U.S. patents on time-release niacin. Niaspan has been marketed and sold by AbbVie (and AbbVie's predecessor corporations) since September of 1997.

In October 2001, Barr Pharmaceuticals, Inc. ("Barr"), a company later acquired by defendant Teva Pharmaceuticals Industries, Ltd. ("Teva"), filed an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration ("FDA") seeking to manufacture and sell a generic equivalent of certain dosages of Niaspan. The ANDA process, created by the Hatch-Waxman Act of 1984, allows for streamlined FDA approval of a bioequivalent generic version of an FDA-approved brand-name drug. As part of the ANDA process, Barr filed paragraph IV certifications with the FDA that its generic drug did not infringe any of the patents covering Niaspan and/or that the patents were invalid or unenforceable.

In March 2002, as contemplated by the Hatch-Waxman Act, Kos initiated the first of a series of patent-infringement lawsuits against Barr in the U.S. District Court for the Southern District of New York, alleging infringement of its Niaspan patents. Following litigation of those claims, on April 12, 2005, Kos and Barr entered into several related agreements terminating the litigation. These agreements constituted the alleged "pay for delay" or "reverse payment" settlement that are the subject of this litigation.

In April 2013, the first of seventeen putative class-action lawsuits in this matter was filed against defendants in this Court. The Judicial Panel on Multidistrict Litigation transferred eight

of these seventeen actions to this Court by Order dated September 17, 2013. On December 23, 2013, this Court issued a Practice and Procedure Upon Transfer Order Pursuant to 28 U.S.C. § 1407(a),  in which the Court, *inter alia*, (1) directed that the eight transferred actions be coordinated for pretrial purposes with nine tag-along actions pending in this Court; and (2) consolidated all pending end-payor actions for pretrial purposes and all pending direct-purchaser actions for pretrial purposes. Pursuant to that Order and by agreement, the direct-purchaser plaintiffs and end-payor plaintiffs each filed a Consolidated Amended Class Action Complaint on January 15, 2014, and January 16, 2014, respectively.

As relevant here, the end-payor plaintiffs' Complaint alleges: (1) defendants violated the antitrust statutes of twenty-one states and the District of Columbia (Count I); (2) defendants violated the consumer-protection statutes of sixteen states and the District of Columbia (Count II); and (3) defendants are liable under a theory of unjust enrichment under the laws of forty-eight states, the district of Columbia, and unspecified U.S. territories (Count III).

On March 17, 2014, defendants jointly filed a Motion to Dismiss both the direct-purchaser plaintiffs' Complaint and the end-payor plaintiffs' Complaint. Following briefing and oral argument, in a Memorandum and Order dated September 5, 2014, the Court granted in part and denied in part the Motion to Dismiss. The Court, *inter alia*, dismissed end-payor plaintiffs' claims brought on behalf of putative classes under the state laws of Alaska, Arkansas, the District of Columbia, Hawaii, Idaho, Kansas, Louisiana, Montana, Nebraska, New Mexico, South Dakota, Oklahoma, South Dakota, Washington, and unspecified U.S. territories on the ground that no named end-payor class plaintiffs purchased Niaspan in those states and therefore that the end-payor class plaintiffs lacked Article III standing to pursue claims on behalf of those putative state classes.

3

On November 9, 2015, the end-payor class plaintiffs filed this Motion for

Reconsideration. In the Motion, end-payor class plaintiffs aver that reconsideration is warranted

in light of an intervening decision of the United States Court of Appeals for the Third Circuit,

*Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353 (3d Cir. 2015). The Court concludes

that *Neale* does not require reconsideration of this Court's Memorandum and Order dated

September 5, 2014.

### III.    DISCUSSION

On a motion for reconsideration, "a judgment may be altered or amended if the party

seeking reconsideration shows at least one of the following grounds: (1) an intervening change in

the controlling law; (2) the availability of new evidence that was not available when the court

granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent

manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A

motion requesting consideration on a change in law must indeed be supported by an actual

change in the law. A decision clarifying existing law is insufficient." *Assoc. of N.J.*

*Chiropracters v. Aetna, Inc.*, No. 09-cv-3761, 2014 WL 7409919, at *3 (D.N.J. Dec. 31, 2014).

End-payor plaintiffs argue that *Neale* constitutes an intervening change in the controlling

law that requires reconsideration of the Court's September 5, 2014, Memorandum and Order.

There is no question that *Neale* is binding on this Court and was decided after the Court's

September 5, 2014, Memorandum and Order. However, the Court concludes that *Neale* did not

change the controlling law in this case.

In *Neale*, the Court of Appeals addressed whether a district court must consider the

Article III standing of absent class members in the context of a pre-certification Rule 12(b)

motion to dismiss. 794 F.3d at 358. In a prior case involving a settlement class, the Court of

Appeals determined that absentee class members need not make a showing of Article III standing prior to certification "because once the named parties have demonstrated they are properly before the court, 'the issue [becomes] one of compliance with the provisions of Rule 23, not one of Article III standing.'" *Id.* at 361 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 148 F.3d 283, 307 (3d Cir. 1998)). In *Neale*, the Court of Appeals extended this holding to litigation classes and stated, "We now squarely hold that unnamed putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Id.* at 362.

*Neale* did not disturb the well-settled proposition that at least one named plaintiff must have Article III standing in order to assert claims on behalf of absent class members. *Id.* at 364 ("[A] class action is permissible so long as at least one named plaintiff has standing."). "[A] plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class." *Id.* at 366 (quoting *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000)). Nor did *Neale* affect the requirement that plaintiff must establish standing individually with respect to each claim asserted. *Id.* at 359 ("Standing requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

In summary, the Court of Appeals concluded in *Neale* that plaintiffs need not establish, on a Rule 12(b) motion to dismiss, the Article III standing of *absent class members*. However, the Court of Appeals did not relieve plaintiffs of their burden of establishing that at least one *named plaintiff* has Article III standing to pursue each claim plaintiffs assert.

Consistent with these principles from *Neale*, prior decisions in this district and others have ruled that named plaintiffs in an antitrust class action lack standing to bring claims on behalf of putative classes under the laws of states where no named plaintiff is located and where no named plaintiff purchased the product at issue. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157-58 (E.D. Pa. 2009); *see also, e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (same); *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365, 1371 (S.D. Fl. 2001) (same). *Neale* does not cast doubt on or abrogate these rulings.

In the September 5, 2014, Memorandum and Order, this Court granted defendants' Motion to Dismiss in part and, *inter alia*, dismissed end-payor plaintiffs' claims brought on behalf of putative classes under the state laws of Alaska, Arkansas, the District of Columbia, Hawaii, Idaho, Kansas, Louisiana, Montana, Nebraska, New Mexico, South Dakota, Oklahoma, South Dakota, Washington, and unspecified U.S. territories. The Court concluded that "end-payor plaintiffs have not alleged that any one *named plaintiff* either resides in or made purchases and/or reimbursements" of Niaspan in those states and therefore that the end-payor plaintiffs lack Article III standing to pursue those claims. *In re Niaspan*, 42 F. Supp. 3d at 758 (emphasis added). The Court's ruling is unaffected by *Neale*, which addressed the Article III standing of absent class members. Thus, *Neale* does not constitute an intervening change in the controlling law justifying reconsideration of the September 5, 2014, Memorandum and Order.

To the extent that end-payor plaintiffs seek reconsideration of the dismissal of these claims due to "the need to correct a clear error of law or fact or to prevent manifest injustice,"

that argument is rejected. For the reasons previously stated, the Court finds no error of law or fact, or manifest injustice (or any injustice), to warrant reconsideration in the September 5, 2014, Memorandum and Order.

## IV.     CONCLUSION

For the foregoing reasons, End-Payor Plaintiffs' Motion for Reconsideration in Light of Intervening Authority is denied. An appropriate order follows.