

115 South LaSalle Street   Suite 2910   Chicago, Illinois 60603

Tel: 312. 332.3400

Lori A. Fanning
Lfanning@millerlawllc.com

September 7, 2017

Via ECF

The Honorable Jan E. DuBois
United States District Judge
United States District Court for the
   Eastern District of Pennsylvania
Room 12613
601 Market Street
Philadelphia, PA 19106

  Re: *In re Niaspan Antitrust Litigation,* MDL No. 2460, No. 2:13-md-02460 (E.D. Pa.)
    (**This letter responds to the September 1, 2017 Letter from Munger, Tolles & Olson LLP**)

Dear Judge DuBois:

  This letter submitted on behalf of the End-Payor Plaintiffs, ("EPPs") responds to Defendants' September 1, 2017 letter regarding points of dispute regarding the EPPs' document production. Despite the Defendants' citation to the Court's Case Management Order No. 1, the Defendants have advocated for their position in their letter; therefore, EPPs must respond.

**Redactions:**

  The documents produced are redacted to protect the proprietary information of three third party Pharmacy Benefit Managers ("PBMs"). Two of the types of documents in question are PBM contracts with two of the EPP named plaintiffs, CVS/Caremark's (and its predecessor companies Caremark and Advance PCS) contracts with Painters District Council No. 30 Health and Welfare Fund ("Painters") and Electrical Workers 242 and 294 Health and Welfare Fund ("Electrical Workers") contract with the PBM, Envision Pharmaceutical Services. The other documents are the formularies of BlueCross Blue Shield Alabama ("BCBS AL").

  EPPs produced certain of the redacted CVS/Caremark Pharmacy Benefit Manager ("PBM") contracts ***over three years*** ago, on March 31, 2014 without objection to the redactions. Additionally, CVS/Caremark redacted such information back in 2014 and subsequently, after consideration of and pursuant to this Court's Order of March 28, 2014 at paragraph 3(b).

  A. 3.(b). Unredacted copies of any contracts between End Payor Plaintiffs and pharmacy

The Honorable Jan E. DuBois
September 7, 2017
Page 2

benefits managers that governed the price paid by End Payor Plaintiffs for all relevant purchases of Niaspan or generic Niaspan by the later of March 28, 2014, or thirty (30) days following the entry of a protective order in this matter absent any objection filed with the Court by the counter-party to those contracts.

Counsel for both CVS/Caremark and BCBS AL hold the information requested to be highly proprietary and confidential and have indicated their intention to enforce their rights on the production of unredacted versions of such documents.[1] EPPs made clear to the Defendants that due to the obligation to maintain confidentiality in the contract, coupled with the knowledge that the PBMs intend to enforce their rights to protect proprietary information, the appropriate place to seek relief was from the PBM. Indeed, Defendants have served a subpoena on CVS/Caremark. Yet, inexplicably, Counsel failed to mention, in the September 1, 2017 letter to the Court, that no fewer than three attorneys for the defense and Counsel for CVS/Caremark had a lengthy meet and confer on this topic on August 23, 2017 where each redaction was discussed in detail. It is our understanding that during that meet and confer the Defendants agreed that only one of the redactions needed to be revealed. Therefore, their insistence that the EPPs are obligated to produce such proprietary information in the face of opposition from the protected party is unreasonable and Defendants' attempt to circumvent the subpoena process is improper.

**Collective Bargaining Agreements:**

EPPs have objected to the Defendants' recent demand for Collective Bargaining Agreements as, *inter alia*, is overly burdensome, duplicative, and not proportionate to the litigation. If what the Defendants claim to be seeking from these documents are a "full and complete picture" of the terms of prescription drug benefits, those terms are readily found in the previously produced documents such as the Summary Plan Descriptions, the Summaries of Benefits and Coverage, the PBM contracts, and similar documents. If there were such terms in the Collective Bargaining Agreements – and EPPs do not concede that there are – any terms regarding prescription drug benefits would also be found in the SPDs, SBCs, and similar documents. None of Ms. Reardon's deposition testimony contradicts that premise. Regarding the reference to a court decision involving the City of Providence, that matter was a decision about a Temporary Restraining Order in a case involving retirement benefits only after the City of Providence transitioned retirees over age 65 to Medicare by ordinance and thus, is distinguishable.

**City of Providence:**

With regard to Blue Cross Blue Shield Rhode Island's ("BCBS RI") former administration of prescription drug benefits, the City confirmed that the search was conducted for any and all BCBS RI plans and/or benefit summaries and any that were located were produced, but prior to 2009, when BCBS RI was the City of Providence's PBM, neither the City of Providence nor BCBS

---

[1] EPPs have diligently sought Envision Pharmaceutical Services' position on maintaining the redactions of its proprietary information. However, the attorney responsible for the contract is no longer with the PBM, the replacement counsel is on leave until next year, and we have not yet received a response from the covering attorney.

The Honorable Jan E. DuBois
September 7, 2017
Page 3

RI generally created plan documents because they were not required to do so.

With regard to the BlueCHip, MedicareRX/ Medical Advantage and Medicare Part D supplemental insurance plans, the City is not seeking damages under these plans given that they are fully funded and thus, are excluded from the Class.

The City of Providence has recently provided very specific information regarding the Local 1033 plan and its relationship to the City, which the EPPs will provide to Defendants via letter.

Very truly yours,

/s/ *Lori A. Fanning*
Lori A. Fanning

Cc: All Counsel of Record via ECF