# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br> **NIASPAN ANTITRUST LITIGATION** | MDL NO. 2460 |
| THIS DOCUMENT RELATES TO: <br> ALL ACTIONS | MASTER FILE NO. 13-MD-2460 |

DuBois, J.                                                                                                       May 23, 2018

## M E M O R A N D U M

### I.    INTRODUCTION

In this multidistrict antitrust litigation, plaintiffs seek to preclude defendants Barr Pharmaceuticals, LLC ("Barr") and Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries, Ltd., Teva Women's Health, Inc., and Teva Sales and Marketing, Inc. (together, "Teva"), from using certain deposition testimony on the ground that Barr and Teva improperly used the attorney-client privilege as a "sword" and a "shield" during the course of the deposition. Because plaintiffs have not shown that Barr and Teva took affirmative steps to place attorney advice at issue, their request is denied.

### II.    BACKGROUND

This multidistrict litigation concerns what has come to be known as a "reverse payment," or "pay-for-delay," settlement—a practice in which a brand-name drug manufacturer brings a patent-infringement action against a generic drug manufacturer and then compensates the generic drug manufacturer for its agreement to refrain from entering the market with a competing generic version of the brand-name drug until a specified date. In this case, two putative classes—the Direct-Purchaser Plaintiffs ("DPPs") and the End-Payor Plaintiffs ("EPPs")—allege that the brand-name manufacturer of Niaspan, Kos Pharmaceuticals, Inc. ("Kos"), entered into anticompetitive reverse-payment settlement agreements in March of 2005 with Barr, the generic

manufacturer of that drug, in order to terminate patent-infringement litigation brought by Kos against Barr in the United States District Court for the Southern District of New York. Kos was later acquired by defendant AbbVie Inc. ("AbbVie"); Barr was later acquired by Teva.

On March 26, 2018, the parties deposed Paul Bisaro, the former President and Chief Operating Officer of Barr. During the deposition, counsel for plaintiffs asked Bisaro about outside counsel's "opinions in 2004 or 2005 regarding the invalidity, unenforceability or noninfringement of Kos' Niaspan patent." Counsel for Teva objected on the ground of attorney-client privilege and instructed Bisaro not to answer. Bisaro Dep. 35:4-1. Counsel for Teva later asked Bisaro during redirect, "Absent a settlement, would Barr have launched generic Niaspan at risk,"[1] to which Bisaro responded, "No." Bisaro Dep. 174:10-20.

At the end of the deposition, counsel for DPPs asked Bisaro, "Is your testimony today that Barr would not have launched at risk based in any way on the patent merits?" Bisaro Dep. 192:3-5. Bisaro responded:

> I don't know what you're trying to get me to say. Yes or no to what? I mean, if we decided to launch at risk, it would be a number of factors. One of those factors would have been the relative merits of the patent. But it also had to take into effect a lot of other factors including risk, including the potential for preliminary injunction, including potential treble damages, our ability to pay those potential damages if they happened. . . . [I]t's based on enormous number of factors.

Bisaro Dep. 192:6-21. When counsel for DPPs asked, "What were the relative merits of the patents," counsel for Teva objected on the basis of attorney-client privilege and instructed Bisaro not to answer.

---

[1] An "at risk" launches refers to the launch of a generic pharmaceutical after the expiration of the thirty-month stay imposed by the Hatch-Waxman Act, 21 U.S.C. § 355, but before the conclusion of any patent litigation filed by the brand-name manufacturer against the generic manufacturer, placing the generic manufacturer "at risk" of liability for patent infringement. *See FTC v. Actavis, Inc.*, 570 U.S. 136, 143 (2013); *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1330 (Fed. Cir. 2015).

The DPPs, on behalf of all plaintiffs, now ask the Court to preclude defendants from using Bisaro's testimony that Barr would not have launched a generic version of Niaspan "at risk." Plaintiffs argue that defendants made an impermissible use of the attorney-client privilege as both a "sword" and a "shield" by "present[ing] arguments and factual assertions that implicate attorney advice, while simultaneously preventing Plaintiffs from exploring the basis behind those arguments and assertions." Letter-Brief for Plaintiffs at 4-5, *In re Niaspan Antitrust Litigation*, No. 13-md-2460 (Apr. 13, 2018) [hereinafter Pls. Brief], Doc. No. 529. In response, defendants Barr and Teva contend that the "so-called 'sword and shield' doctrine applies [only] where a party selectively waives privilege," not done in this case, and at the same time asserts its privilege as to unfavorable advice. Letter-Brief for Defendants at 3, *In re Niaspan Antitrust Litigation*, No. 13-md-2460 (Apr. 16, 2018) [hereinafter Defs. Brief], Doc. No. 532. The Court heard oral argument on this issue in a telephone conference on May 14, 2018. Plaintiffs' request is ripe for decision.

## III. APPLICABLE LAW

The attorney-client privilege "protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014). However, a party may not use the attorney-client privilege as "both a sword and a shield" by selectively "waiv[ing] its privilege for favorable advice while asserting its privilege on unfavorable advice." *In re EchoStar Communs. Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006). Consequently, a party may not "rely upon the legal advice it received . . . without permitting [the opposing party] the opportunity to probe the surrounding circumstances and substance of that advice." *Berckeley Inv.*

*Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006) (citing *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 537 (3d Cir. 1996)).

A party is deemed to have waived the privilege where it "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Attorney advice "is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Id.* at 863. Instead, the "advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.*

## IV. DISCUSSION

Plaintiffs have failed to show that defendants have improperly used the attorney-client privilege as both a "sword" and a "shield": they have not shown that (1) Bisaro's testimony implicated attorney advice and (2) Bisaro's testimony was relevant to proving a claim or defense in this case.

### A. Bisaro's Testimony Does Not Implicate Attorney Advice

First, and most importantly, plaintiffs have failed to show that Bisaro's testimony implicates attorney advice. In the record before the Court, the testimony elicited by defendants was that Barr would not have launched at risk—Bisaro did not mention either the advice of counsel or the merits of the underlying patent litigation. In contrast, plaintiffs, not defendants, elicited the testimony from Bisaro regarding those topics. When plaintiffs asked about outside counsel's opinion on the merits of the patent litigation, defendants objected on the basis of attorney-client privilege. This was a proper assertion of the privilege and did not amount to a

4

waiver. *Accord Synygy, Inc. v. Zs Assocs.*, No. 07-3536, 2013 U.S. Dist. LEXIS 106109, at *6 (E.D. Pa. July 29, 2013) (finding no waiver where testimony elicited by opposing counsel "merely revealed the fact of a communication with counsel without revealing the substance of that communication").

Plaintiffs argue that Bisaro's testimony regarding an "at risk" launch necessarily implicates attorney advice. In their argument, plaintiffs rely on the decision *In re Lidoderm Antitrust Litigation*, No. 14-md-02521-WHO, 2016 U.S. Dist. LEXIS 105619 at *90 (N.D. Cal. Aug. 9, 2016), which concluded, "By its very definition, the concept [of an at risk launch] requires reference to the status and strength of the patent litigation and necessarily implicates legal advice." The *Lidoderm* court, however, relied on the broader standard utilized by the Ninth Circuit in addressing issues of waiver of the attorney-client privilege, which requires only that the advice be "*directly* relevant and necessary to allow a party to fully challenge the claims or defenses of the party asserting the privilege" *Id.* at *46 (emphasis in original). Applying that standard, the *Lidoderm* court did not require plaintiffs to show that defendants made "affirmative use" of attorney advice in proving a claim or defense as required by the Third Circuit, and expressly distinguished decisions under the more demanding standard of the Third Circuit as "inapposite." *Id.* at *46 n.5 (citing *Rhone-Poulenc Rorer, Inc.*, 32 F.3d at 863). Because the *Lidoderm* court reached its decision employing the broader standard of the Ninth Circuit, it is inapplicable to this case.

This Court applies the Third Circuit rule in addressing issues related to waiver of the attorney client privilege in this case. Simply stated, that rule provides that the "advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc Rorer*,

5

32 F.3d at 863. As described above, any attorney advice in this case was merely relevant to the testimony elicited by defendants, and plaintiffs have not shown that defendants attempted to prove a claim or defense by disclosing or describing a client communication.

Plaintiffs' reliance on the decision in *In re: Cardizem CD Antitrust Litigation*, Case No. 99-md-1278 (E.D. Mich. Jan. 9, 2002), ECF No. 573, is also misplaced. In that case, the defendant generic manufacturer "repeatedly argued . . . that its fear of being subject to a treble-damage judgment for willful infringement . . . caused it to stay off the market," and its officers, including its general counsel, testified that the risk of patent liability was a "critical factor" and "[t]he biggest reason" it did not enter the market with a generic drug. *Id.* at 2, 2 n.1. Based on those facts, the *Cardizem* court concluded that defendant had taken an "affirmative act" to put its fear of patent liability "at issue" as the "critical facts" in its defense, and thus had improperly used the attorney-client privilege as both a "sword" and "shield." *Id.* at 2, 5-6.

Defendants in this case have not placed the advice of counsel in issue as a "critical fact" in their defense. As noted above, Bisaro testified only that Barr would not have launched at risk absent a settlement agreement, and defendants did not inquire into the role that the advice of counsel or the merits of the underlying litigation played in Barr's decision. Those issues were raised by *plaintiffs*, and defendants blocked further inquiry on the basis of attorney-client privilege. The record before the Court thus shows that attorney advice is, at most, merely relevant to Bisaro's testimony, and that defendants did not take an "affirmative step" to place attorney advice in issue to prove a claim or defense.

B.  **Bisaro's Testimony Is Not Relevant to a Claim or Defense**

Plaintiffs have also failed to show how Bisaro's testimony is relevant to proving a claim or defense in the case, which the Third Circuit requires in order for attorney advice to be "in

6

issue." *Rhone-Poulenc Rorer*, 32 F.3d at 863. On this issue, plaintiffs argue that defendants selectively waived the attorney-client privilege when Bisaro testified in response to plaintiffs' questioning that Barr's decision not to launch at risk depended, in part, on the "relative merits of the patent[s]" in the underlying litigation. Pls. Brief at 4.

The Supreme Court has made it clear that "a detailed exploration of the validity of the patent itself" is not necessary to determine the anticompetitive effects of a reverse-payment settlement. *FTC v. Actavis, Inc.*, 570 U.S. 136, 158 (2013). Instead, the anticompetitive effects of a reverse payment depend on "its size, its scale in relation to the payor's anticipated future litigation costs, its independence from other services for which it might represent payment, and the lack of any other convincing justification." *Id.* at 159. Although plaintiffs may establish the relevance of the merits of the patents in the underlying litigation to the anticompetitive effects of the reverse payment at the summary judgment stage or trial, they have failed to do so on the present state of the record. Plaintiffs have not shown that defendants "attempt[ed] to prove [a] claim or defense" through Bisaro's testimony, and consequently have failed to show that defendants thereby placed attorney advice at issue.

## V. CONCLUSION

For the foregoing reasons, on the present state of the record, the Court denies plaintiffs' request to bar defendants' use of Bisaro's testimony that Barr would not have launched a generic version of Niaspan at risk. The Court's decision is without prejudice to plaintiffs' right to renew their request or file a motion *in limine* if warranted by the evidence presented in motions for summary judgment or at trial.

An appropriate order follows.