```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


                                  .
                                  .  Case No.  2:13-md-02460
IN RE:                            .
                                  .
NIASPAN ANTITRUST                 .
LITIGATION,                       .  U.S. Courthouse
                                  .  601 Market Street
        Debtor.                   .  Philadelphia, PA 19106
                                  .
                                  .  Wednesday, February 13, 2019
                                  .  4:50 p.m.
. . . . . . . . . . . . . . . .   .
```

               TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
                  BEFORE THE HONORABLE JAN E. DUBOIS
                  UNITED STATES DISTRICT COURT JUDGE

TELEPHONIC APPEARANCES:

For the End-Payor            Wexler Wallace, LLP
Putative Class:              By:  KEN WEXLER, ESQ.
                             55 West Monroe Street
                             Suite 3300
                             Chicago, IL 60603
                             (312) 346-2222

                             Spector Roseman & Kodroff, PC
                             By:  JEFFREY KODROFF, ESQ.
                             1818 Market Street
                             Suite 2500
                             Philadelphia, PA 19103
                             (215) 496-0300

For CVS/Rite Aid             Hangley Aronchick Segal Pudlin &
Plaintiffs:                  Schiller
                             By:  BARRY L. REFSIN, ESQ.
                             One Logan Square, 27th Floor
                             Philadelphia, PA 19103
                             (215) 496-7031

TELEPHONIC APPEARANCES CONTINUED.

Audio Operator:              Michael Cosgrove, ESR

TRANSCRIBED BY:              Access Transcripts, LLC
                             10110 Youngwood Lane
                             Fishers, IN 46038
                             (855) 873-2223
                             www.accesstranscripts.com

            Proceedings recorded by electronic sound
        recording, transcript produced by transcription service.

```
TELEPHONIC APPEARANCES (Continued):

For Walgreen            Kenny Nachwalter P.A.
Plaintiffs:             By:  LAUREN C. RAVKIND, ESQ.
                        111 Congress Avenue, Suite 1060
                        Austin, TX 78701
                        (305) 373-1000


For the Direct          Berger Montague, P.C.
Purchaser Putative      By:  NICHOLAS URBAN, ESQ.
Class:                       DAVID F. SORENSEN, ESQ.
                        1818 Market Street, Suite 3600
                        Philadelphia, PA 19103
                        (215) 875-5705

                        Garwin Gerstein & Fisher LLP
                        By:  DAN LITVIN, ESQ.
                        88 Pine Street, 10th Floor
                        New York, NY 10005
                        (212) 398-0055

                        Odom & Des Roches, LLC
                        By:  DAN CHIOREAN, ESQ.
                             CHRISTOPHER T. STOW-SERGE, ESQ.
                        Suite 2020, Poydras Center
                        650 Poydras Street
                        New Orleans, LA 70130
                        (504) 522-0077

                        Hagens Berman Sobol Shapiro, LLP
                        By:  HANNAH SCHWARZSCHILD, ESQ.
                        55 Cambridge Parkway, Suite 301
                        Cambridge, MA 02142
                        (617) 482-3700

                        Faruqi & Faruqi, LLP
                        By:  PETER KOHN, ESQ.
                        1617 John F. Kennedy Boulevard #1550
                        Philadelphia, PA 19103
                        (215) 277-5770

For TEVA Defendants:    Kirkland & Ellis, LLP
                        By:  DEVORA ALLON, ESQ.
                        601 Lexington Avenue
                        New York, NY 10022-4611
                        (212) 446-5967
```

TELEPHONIC APPEARANCES (Continued):

For AbbVie Defendants:     Drinker, Biddle & Reath LLP
                           By:  JOHN YI, ESQ.
                                PAUL H. SAINT-ANTOINE, ESQ.
                           One Logan Square, Ste. 2000
                           Philadelphia, Pennsylvania 19103-6996
                           (215) 988-2990

                           Munger Tolles & Olson LLP
                           By:  STUART N. SENATOR, ESQ.
                                GREGORY SERGI, ESQ.
                           350 South Grand Avenue, 50th Floor
                           Los Angeles, CA 90071-3426
                           (213) 683-9528

4

1          (Proceedings commence at 4:50 p.m.)

2                THE COURT:  This is Judge DuBois.  Good afternoon.

3                UNIDENTIFIED:  Good afternoon, Your Honor.

4                THE COURT:  We're going to proceed with our regularly

5     scheduled status conference in the In re Niaspan antitrust

6     litigation, MDL Number 13-2460.  The conference is being

7     recorded.

8                To start, we did not get an agenda from counsel, but

9     that doesn't mean that you violated an order.  I just want to

10    be sure that the agenda did not get lost.  Will someone

11    respond?  Was there an agenda prepared and submitted?

12               MS. ALLON:  No, Your Honor.

13               THE COURT:  All right.  Then, we'll pick up on what I

14    have on my agenda, really a carryover from the January 15th,

15    2019 conference.  And then, we'll address any issues that are

16    ripe for discussion, any issues that you might have.

17               First, the defendants provided plaintiff with the

18    technical appendix covering the substance of Dr. Cremieux's

19    sur-rebuttal submission.  That was done on January 18th, as I

20    directed.  And plaintiffs' counsel reported that they would be

21    able to submit a report responding to Dr. Cremieux's

22    sur-rebuttal by February 27th, 2019 and that no additional data

23    is required from defendants.  That more or less tells me that

24    we're still on schedule, although we still have to schedule the

25    depositions of Dr. Cremieux and Dr. McGuire, which were

1 continued.  Will someone address those issues?

2       UNIDENTIFIED:  Yes, Your Honor.

3       MR. SENATOR: (Indiscernible).

4       UNIDENTIFIED:  Go ahead.  Go ahead.

5       MR. SENATOR:  This is Stuart Senator, Munger Tolles,

6 Your Honor.  I think what you said is correct, and I agree we

7 need to schedule the depositions, and I'd suggest that the two

8 sides, if that's how I should call them, come up with a

9 schedule for those two depositions.  I'm not sure if we need to

10 wait for Dr. McGuire's report to do that or not, but now that

11 we know when it's coming, I think we can get together and come

12 up with dates for those depositions.  And as long as we do them

13 in the timeframe when class certification is still pending,

14 they shouldn't interfere with anything else.

15       THE COURT:  Does everyone -- is there anyone who

16 disagrees with that?

17       Hearing nothing, I direct that you come up with some

18 dates to schedule -- for the scheduling of those depositions,

19 Dr. Cremieux and Dr. McGuire.  Are they time-sensitive in the

20 sense that are they needed in connection with the motions --

21 motion for class -- motions for class certification?

22       MR. SENATOR:  No, Your Honor.

23       THE COURT:  All right.  I still want them scheduled

24 at an early date.  Are you thinking they can be scheduled in

25 March, Mr. Senator?

1          MR. SENATOR:  I don't know what Dr. McGuire's
2  schedule is.  I hope we can do him in March.  I know that Dr.
3  Cremieux, because I asked, is booked solid in March but could
4  do early April, the first week of April, April, I think, 3rd,
5  4th, 5th are the dates he gave me.
6          THE COURT:  All right.  Does that work for everyone?
7  Or let me put it this way so everyone doesn't have to chime in.
8          MR. SORENSON:  Your Honor --
9          THE COURT:  Is there anyone for whom that does not
10  work?
11          MR. SENATOR:  Your Honor --
12          THE COURT:  Go ahead.
13          MR. SENATOR:  And I don't --
14          MR. SORENSON:  I'm sorry.
15          MR. SENATOR:  I don't mean to negotiate this on the
16  phone.  I haven't told Mr. Sorenson those dates yet.  I just
17  got them last evening, so I'm not attempting to -- you know,
18  perhaps I should just talk to him offline about dates.
19          THE COURT:  Fine.  Who is speaking now?
20          MR. SENATOR:  That's Stuart Senator, Your Honor.  I
21  apologize.
22          THE COURT:  Oh, I'm -- fine.  I want you to identify
23  yourselves.  Makes it much easier for my electronic sound
24  recording operator.
25          All right.  Well, we don't have to finalize those

1  dates now.  Sooner is better than later, but as long as they're

2  not time-sensitive and they're not linked to the pending

3  motions for class certification, there's no -- I don't want to

4  use the term "real urgency."  There is an urgency, but not a,

5  quote, "real urgency," end of quote.  Again, I want them

6  scheduled sooner rather than later.

7          The motions for class certifications -- for class

8  certification had been filed.  Responses and <u>Daubert</u> motions

9  related to experts offered by plaintiffs in support of class

10  certification are due on February 25th, 2019.  Is that a date

11  that will be met?

12          MS. ALLON:  Yeah -- this is Devora Allon for TEVA.

13  Yes, Your Honor.

14          THE COURT:  Anyone have a problem with that date?

15  That's the date in the seventh amended scheduling order.

16          MR. SENATOR:  This is Stuart Senator for AbbVie.  We

17  agree.

18          THE COURT:  Okay.  That's really all I had on my

19  agenda from really a pickup from the open items at the last

20  conference, the January 15th, 2019 conference.  Are there any

21  other matters we need to discuss other than the scheduling of

22  our next telephone conference?

23          MR. SORENSON:  Your Honor --

24          MR. SENATOR:  Your Honor, Stuart Senator for AbbVie.

25          MR. SORENSON:  Okay.

1          MR. SENATOR:  Further on class certification, I
2   thought at some point -- and perhaps now is the right time to
3   bring it up, perhaps the next conference, but we'd like to
4   inquire of the Court what the Court envisions for the class
5   certification hearing and whether we should be scheduling a
6   date for that.

7          THE COURT:  The scheduling order doesn't.  Let me
8   turn to it.  I've forgotten the last date the reply is due in
9   April, April 8th.  That's really the date for filing defense
10  opposition to <u>Daubert</u> motions filed by plaintiffs.  I certainly
11  will require time thereafter to review the voluminous
12  submissions, and we'll start certainly before April 8th.

13         We ought to talk first about the structure of the
14  hearing.  I think I'm going to need a tutorial, and we haven't
15  really addressed that.  And the question is whether the lawyers
16  do it or whether an expert or experts do it and what rules we
17  put in place regarding what is said at the tutorial.  Any
18  comments on that?

19         MR. SORENSON:  Your Honor, this is David Sorenson.
20         MS. ALLON:  Your Honor, this is Devora Allon --
21         MR. SORENSON:  It's -- well, it's the plaintiffs'
22  motion, so if I could address that first.  This is David
23  Sorenson for the direct class.  We would be moving -- I think,
24  Your Honor, that, you know, a variety of structures are both
25  permissible under the law, and it really depends on what it

most helpful to you.  Even in the current environment, there
are instances where courts, in one hand, skip a hearing
entirely.  Judge McMahon in <u>Namenda</u> went straight to a decision
without a hearing.  I'm not advocating that for Your Honor.
I'm just saying that that is still -- that's acceptable under
the law.

          Two, live testimony from experts in another matter
pending before Judge Smith in the <u>Loestrin</u> matter.  On Monday,
we just finished a class hearing that had both a tutorial,
which was offered by both sides.  The lawyers -- that is the
lawyers for the plaintiff direct class and a lawyer
representing defendants -- presented for about an hour each on
Monday, followed by testimony from plaintiffs' economist and
defendants' economist.  That's another way of doing it that
would work out fine.

          We've also had just straight argument from lawyers,
and then if the Court has decided that, you know, more -- it
would be helpful, more is needed, come back and have testimony.
I mean, there's a variety of ways of doing this.  It's really
-- it comes down to a question, what is most helpful for the
Court, that something perhaps after you've received all the
papers, had a chance to look them over, you know, we could talk
further or you could simply tell us what your preference is --
you know, what you'd like, or we could have a further
discussion about it at that point.

1          THE COURT:  Well, I don't want to delay this.  And I

2  can tell you that I am not going to proceed without a hearing.

3  I haven't yet decided what form the hearing should take, except

4  that it should include a tutorial, and I think that can be

5  provided by counsel.  Certainly, I'll hear oral argument from

6  counsel.

7          The question whether the experts need to testify is

8  something I have not decided in this phase.  I've conducted

9  class certification hearings in which that has been done.  My

10 recollection, it was done in <u>Linerboard</u> and <u>Blood Reagents</u>, and

11 it's something we should consider.  I don't -- but I don't,

12 quite frankly, know whether it's necessary in this case.  I

13 haven't read the motions --

14         MR. WEXLER:  Your Honor --

15         THE COURT:  I haven't read the motions -- let me

16 finish.  I have not yet read the motions for class

17 certification.

18         All right.  You may proceed.

19         MR. WEXLER:  Your Honor -- yeah, I'm sorry to

20 interrupt.  This is Ken Wexler for the end-payors, and I would

21 just interject that we would like to have an evidentiary

22 hearing, but you know, obviously, that's just our preference.

23         THE COURT:  By evidentiary hearing, you mean

24 testimony from the expert witnesses.

25         MR. WEXLER:  Correct.

1          THE COURT:  What other evidence do you intend to

2 produce at this evidentiary hearing, should we have one?

3          MR. WEXLER:  You know, in all likelihood, they would

4 be documents to the extent they shed light on, you know, the

5 existence of common evidence and to the extent that those have

6 been relied on by experts.  Sitting here right now, I just know

7 that live testimony would be our preference.

8          MR. SENATOR:  Your Honor, this is Stuart Senator, and

9 I think -- agree with Mr. Sorenson.  It really comes down to

10 how the -- how we could be of most assistance to the Court

11 because, of course, we're all submitting the experts' evidence

12 -- the record is closed on the experts' evidence, but their

13 reports and depositions, and we're submitting what we think is

14 relevant with the papers so the Court will have the full scope

15 of the allowable evidence with the papers.  And then, it's not

16 as though the expert can come in in an evidentiary hearing and

17 say, well, I put XYZ in the papers and now I'm going to give

18 you ABC, as well.  Of course, you know, that decision has

19 already been made.

20          So the question is, would the Court like some of that

21 evidence that it's already got in paper form highlighted

22 directly by the experts, or the Court presumably may have

23 questions, but if I understand, the Court wants to consider

24 that and consider the motions.  My one thought I had is perhaps

25 we could at least come up with a timeframe when the Court would

1    be interested in having a hearing, whatever the structure of it
2    is, so folks could start just making sure that they've arranged
3    their schedules accordingly.  And if Your Honor wants to
4    address the structure of it now or after you've seen, you know,
5    the panoply of the briefing, you know, obviously, we'll address
6    that whenever you'd like.  But I do think it could be helpful
7    if the Court can, you know, have a general timeframe to share
8    with us for us to know what that is as soon as you have it so
9    that we can plan.
10             THE COURT:  Well, the last submission --
11             MR. WEXLER:  Your Honor, this is Ken Wexler.
12             THE COURT:  Yes?
13             MR. WEXLER:  Oh, I'm sorry.
14             THE COURT:  Go ahead.
15             MR. WEXLER:  I just wanted to say, with regard to
16   what Mr. Senator just said, that the fact that Your Honor may
17   have questions of the expert, I think is very significant, at
18   least that's been in my personal experience.  And second, I
19   think the credibility of experts is not visible in the reports
20   as much as they are in live testimony.  And you know that as
21   well as anybody, so I -- you know, I'm just preaching to the
22   choir in that sense.  I just wanted to put that on the record.
23             THE COURT:  Yes.  Well, I'm looking --
24             MR. SORENSON:  Your Honor --
25             THE COURT:  Yes?

1          MR. SORENSON:  Your Honor, I'm sorry, I didn't mean

2    to interrupt.

3          THE COURT:  No, go ahead.

4          MR. SORENSON:  Yeah, this is David Sorenson again.

5    Just a couple of observations.  One, at least from our

6    perspective for the direct class, in our view, our motion and

7    expert testimony, relatively speaking, is, you know,

8    uncomplicated and fits with numerous, numerous prior cases that

9    have certified these kinds of classes.  Doesn't mean that, you

10   know, if the Court finds it helpful to have witnesses, we won't

11   present witnesses.  We will.  Just in terms of compared to some

12   other cases for class hearings, we think that the direct class

13   is in, relatively speaking, an uncomplicated situation.

14         Now, and there also may be a difference in the

15   Court's view, once you've had a chance to look at the papers,

16   between the direct class and the end-payors.  It may be that

17   you think that just the lawyers for the direct class are

18   sufficient but for various reasons including the end-payor

19   plaintiffs' own requests that an evidentiary hearing for that

20   class would be more appropriate.  And I'm just throwing those

21   ideas out there, but at the end of the day, we'll do what you

22   think is most useful.

23         THE COURT:  Well, we're talking --

24         MS. ALLON:  Your Honor, this is --

25         THE COURT:  Okay.  Go ahead.

1          MS. ALLON:  This is Devora Allon for TEVA.  I agree
2    with Mr. Sorenson in very small part, which is that the
3    testimony is not complicated and it's straightforward and can
4    be relied upon based on the record with respect to the direct
5    purchaser class.  I obviously don't agree that the class fits
6    within prior case law and should be certified.  But I do think
7    we are in agreement that we would feel comfortable relying on
8    the record as opposed to live testimony.

9          THE COURT:  Well, the preference for live testimony
10   versus relying on the record, I think the decision there will
11   turn on what I think is best in the case, and that will turn on
12   how familiar I am with the technology and the expert opinions
13   that are at issue.  Again, I'm not -- I haven't looked at those
14   -- the motions yet.  And I think what we can do, we're not
15   going to decide today the type of hearing that we will have,
16   but it might be helpful if we were to go ahead and target a
17   date, or dates, for the hearing.

18         I'm going to want -- I've got a rather busy trial
19   schedule following April 8th, definite trial during the week of
20   the 8th and spilling into the week of the 15th.  The 22nd, a
21   criminal case that I'm told -- let me just look.  The 22nd just
22   opened up, which a criminal case, there will be a guilty plea,
23   but I think that's too soon.  I don't think I'm going to be
24   able to spend the necessary time reviewing all of these papers.
25   I'm not going to have the time to review it in -- review them

1    in two weeks, and I'm thinking that we're going to end up

2    sometime in May.  I have a criminal case scheduled for trial

3    April 29th.  I'm told it will proceed to trial.

4           Next, April -- May -- I think it's 6th, another

5    criminal trial I'm told will go to trial.  So we're up to May

6    13th right now.  No trials scheduled for May 13th, that week.

7    A two-week trial scheduled May 20th.

8           So I think we ought to shoot for May 13th.  I might

9    change my mind, but right now, that looks realistic.  Now, does

10   anybody envisage any issues with -- we haven't really talked

11   about what will follow the hearing and my decision on class

12   certification.  What will follow?  What do you contemplate will

13   follow?

14           MR. SORENSON:  Well, Your Honor, this is David

15   Sorenson.  I'll jump in.  Looks -- assuming for the direct

16   class it's certified, I think what follows is scheduling

17   summary judgment proceedings and trial --

18           THE COURT:  That's what I wanted to know.

19           MR. SORENSON:  -- setting that schedule out.

20           THE COURT:  All discovery is complete, and nothing

21   remains other than motions for summary judgment and the filing

22   of pretrial papers like pretrial memos and trial.  Is that it?

23           MR. SORENSON:  Yes.  Of course --

24           MS. ALLON:  And, Your Honor, the remaining Daubert

25   motions for the non-class certification experts.

1           THE COURT:  I'm wondering whether we'll be able to

2  get that all done this summer, which is a goal to be desired.

3  I guess a lot depends on how quickly I rule on class

4  certification.

5           All right.  I think --

6           MR. SENATOR:  Your Honor, can I ask on your May 13th

7  date, are you saying we should all -- should we be holding a

8  week -- that whole week open?  Should we be holding Monday or

9  Monday and Tuesday?

10          THE COURT:  That was just a week when I'm available.

11 Other times might open up before May 13th.  I'm a little

12 concerned with putting this off that long because I want to get

13 this case tried, optimistically, by the end of the summer, and

14 that doesn't leave us too much time.  I don't want you now to

15 put aside a full week.  Seems to me the class certification

16 hearing should take no more than one day if experts are not to

17 testify.  With expert testimony, maybe a day and a half,

18 possibly two days.  Does anyone disagree with that?  Hearing --

19          MR. SENATOR:  This is Stuart Senator.  I agree with

20 that, Your Honor.

21          THE COURT:  Anyone disagree?  So we can pick two days

22 during that week, but I'm not married to those two days.  And

23 if something opens up sooner, we just might advance that date.

24 And I'll certainly advise you of my schedule, but let's pick --

25          MR. SENATOR:  May I --

```
 1              THE COURT:  Go ahead.
 2              MR. SENATOR:  May I request if we're holding dates
 3    now that we not start on Monday but we start either Tuesday or
 4    Wednesday?
 5              THE COURT:  I agree with that, Mr. Senator.
 6              Anyone -- well, we have the whole week.  Should we
 7    set aside now?
 8              MR. SORENSON:  Your Honor --
 9              THE COURT:  Yes?
10              MR. SORENSON:  -- Your -- I'm sorry, Your Honor.
11    This is David Sorenson.  I apologize.  Obviously, many of us
12    have different schedule issues.  I am not available the 17th of
13    that week.  MY daughter is graduating from college, and I am
14    unavailable starting that Friday.  So I would only ask if
15    nothing be scheduled for the direct class for the 17th.
16              THE COURT:  Well, that gives us the 14th, 15th, and
17    16th.  We only -- right now, we're talking about setting aside
18    two days.  Why don't we set aside the 14th -- Tuesday, May
19    14th, and Wednesday, May 15th.
20              MR. SORENSON:  That's fine, Your Honor.
21              THE COURT:  Again, if my schedule opens, I think I'd
22    like to advance that date because I'm concerned that after I
23    decide the motions for class certification, you're going to
24    have to brief summary judgment motions.  And I'm wondering
25    whether that briefing should take place while the class
```

1 certification issues are pending.  I'm thinking out loud now.

2 I haven't thought that through.  Are there any issues that that

3 suggestion might precipitate?

4         MR. SENATOR:  Yes.  Your Honor, this is Stuart

5 Senator.  I -- we believe, or I believe, that we should know

6 what we're briefing, in other words, whether we're briefing a

7 motion for summary judgment that's going to apply and -- to a

8 whole class or is going to apply to just the main plaintiffs

9 when we're putting it together.  So we'd very much advocate

10 that we have a class certification decision before we're moving

11 for summary judgment.

12         THE COURT:  Well, that certainly might be preferable,

13 but because of the extensions that we've already granted in

14 completion of discovery and in filing the class certification

15 motions, I'm concerned that we're going to run out of time and

16 I'm going to lose a law clerk familiar with the case, and we'll

17 then lose a month or two before we can start up again.  That's

18 the problem that I envisage.

19         MR. SORENSON:  Yeah, Your Honor, this is David --

20 this is David --

21         MS. ALLON:  Your Honor, this is Devora Allon for

22 TEVA.  I think in addition to Mr. Senator's point, obviously,

23 about efficiency, and recognizing that we haven't filed our

24 opposition brief yet, I think it is important to note that it's

25 not just an all-or-nothing question of is a class certified or

1   is a class not certified.  One of the arguments that we're

2   making is that there are different types of purchasers that

3   have been conflated into a single class, and there is a

4   potential outcome where a class is certified but only as to

5   some purchasers and not others.  And because of that dynamic,

6   that affects summary judgment briefing.  It affects what parts

7   of damages are in the case, what parts of theories of liability

8   are in the case.

9           So it's not just that, you know, it's a waste of

10  resources to brief summary judgment because classes might not

11  be certified.  It's that even if they do, they could be

12  certified in a way that affects how the issues are teed up for

13  summary judgment.

14          MR. SORENSON:  Your Honor, this is David Sorenson.

15  You know, I am having trouble, actually, in imagining what kind

16  of summary judgment motion defendants are envisioning that will

17  turn materially on whether a class is certified or the size or

18  scope of the class.  So, for example, whether it's -- whether

19  they envision that they have a good faith summary judgment

20  motion on the reverse payment aspect of the case, well, that's

21  class-wide.  There's nothing that is specific to any particular

22  plaintiff about that.

23          Same thing with market power.  Same thing with

24  causation.  I mean, I -- I'm not saying -- they're imaginative

25  folks, so they might come up with something, but I don't see

1   it.  I have a different view.  I think that we should go ahead

2   and get summary judgment schedules put together and on the

3   calendar after -- and I'm assuming -- in a world in which class

4   is certified, obviously, notice has to go out, so there has to

5   be some time built in for that before trial.  And I think from

6   -- certainly from my perspective, whenever the Court is ready,

7   we can have a summary judgment schedule put together and we

8   could simply set it or you could direct the parties to meet and

9   confer and propose one, whatever you prefer.  But I don't see

10  that it needs to wait on the outcome of class certification.

11          MR. SENATOR:  This is Stuart Senator, and I think

12  perhaps I was a little less complete than I should have been in

13  my last statement.  I think Mr. Sorenson's put his finger on

14  something.  If a class is certified, there has to be notice of

15  period to opt out, and we're entitled to -- on one hand, we're

16  entitled to know who we're moving against, and the class -- you

17  know, if a class is certified, people shouldn't be sort of

18  waiting around and then being able to determine whether they

19  want to opt in or out based on, you know, what a class motion

20  looks like or if there's even been a class -- I'm sorry, a

21  summary judgment motion looks like or whether there's a summary

22  judgment motion hearing that's already taken place.  That's not

23  a -- sort of a game of, well, let's see what it looks like and

24  will I be -- maybe I should now opt out and file my own case

25  and, you know, start with different scenarios.

1          So I think the rules, when they talk about a class
2     certification as soon as whatever the term is, "reasonably
3     practical" or -- I'm not quite sure frankly off the top of my
4     head what the term is, but they envision that the defendants
5     know who's in and who's out and that the plaintiffs can't then
6     come in and out based on sort of how the case is going, if you
7     will.
8          THE COURT:  Well, but that's a rule honored more
9     often in the breach than in the observance.  The language has
10    been changed down through the years.  I -- in the MDLs that
11    I've had -- they've all been antitrust MDLs -- we've never
12    ended up with an early, early on, class certification
13    determination, which I think is what the rules contemplate.
14    But the bottom line --
15         MR. SENATOR:  Yeah.
16         THE COURT:  I'm not going to decide this based on
17    what I've heard today without having read the motion papers,
18    the class certification motions and the responses.  And so
19    we're not going to have an agreement on this, and we'll not
20    schedule the briefing on summary judgment.  What it seems
21    you're telling me is that it would be difficult to try the case
22    before the end of August, and again, that's not a goal to be
23    desired to me.  That will slow down the proceedings.
24         But more on that, how much time do you contemplate it
25    will take -- if you're going to provide this information, how

much time do you contemplate it will take to submit summary

judgment motions after I rule on class certification?  Well,

I'm obviously not --

MR. SENATOR:  Your Honor, this is Stuart Senator.

MR. SORENSON:  This is David Sorenson -- all right,

go ahead.

MR. SENATOR:  We hear this pregnant silence, and I

guess my -- I'd personally --

THE COURT:  Who is speaking then?

MR. SENATOR:  -- like it if we can confer and address

-- this is Stuart Senator, I apologize.  I personally would

think perhaps we could address this among ourselves and then

make this the subject of our conference next month.

THE COURT:  Okay.  All right.  But however this turns

out, unless I require summary judgment briefing before I rule

on class certification, it is doubtful that we'll be able to

try this case before the end of August.  Does anyone disagree

with that?  I hope you do, and that would be good for me, but

I've got it.  Go ahead.  Anyone disagree with my statement that

based on what we've discussed today, it will be difficult to

complete the trial by the end of August?  No one disagrees.

That was not an answer I wanted.  Well, we'll see what happens.

We'll address these --

MR. SORENSON:  Well, Your Honor -- Your Honor, this

is David Sorenson again.  Again, it obviously depends, in terms

Case 2:13-md-02460-TJS   Document 612   Filed 03/01/19   Page 23 of 28

23

1 of class, exactly when the hearing is able to be scheduled, and

2 that's something we'll all just, you know, listen to Your

3 Honor's schedule and -- but in terms of -- again, in terms --

4 in my view, summary judgment can go ahead and be scheduled, but

5 briefing can get scheduled soon or now or next few days. It's

6 not difficult, and I just don't think that it turns on class,

7 and at least a schedule can be put in place.

8             THE COURT: Well --

9             MR. SORENSON: Notice after class certification

10 requires a certain amount of time, but not that much, at least

11 the direct side, it's not difficult and can be accomplished,

12 you know, relatively, you know, quickly in terms of the notice

13 and it's mailed and it's -- you know, we'll submit it to Your

14 Honor for approval, and then it goes out.

15             And then -- so in terms of scheduling a trial, if not

16 the end of August, certainly thereabouts. Early fall should

17 still be, you know, possible and certainly to be aimed for.

18             THE COURT: That won't work for me. I lose my law

19 clerks. I don't have a very sound business model for hiring

20 law clerks. I hire three. They arrive -- oh, I guess their

21 period is about -- over three weeks in August, and they all

22 leave at the same time. And so we'll be breaking in a new law

23 clerk. And so it won't work. I'm telling you that if we don't

24 try the case this summer, we're not going to try it quickly in

25 the fall.

1          But what we'll do, because we really -- and I gather
2  -- I understand your position, Mr. Sorenson.  Most plaintiffs
3  don't like motions for summary judgment, and you're
4  demonstrating that dislike, and you want to simplify it -- you
5  really want them to go away, and I don't think they will.

6          What we'll do is address this issue.  It will affect
7  the timing of our next conference -- status conference, and
8  we'll pick up on these issues.  You know what concerns me now,
9  and you'll be able to address them.  And I think what I will
10  ask you to do is when you submit the agenda for the next
11  telephone conference, you give me a little more detail.
12  Because we're talking about scheduling, I don't need lengthy
13  letters, but a little detail on what you're proposing, and
14  hopefully you'll all agree, but if not, your separate proposals
15  with respect to scheduling.

16          All right.  Is there anything else we need to address
17  in this conference?  Hearing nothing, let's go ahead and
18  schedule the next telephone conference.  I'm looking at the
19  scheduling order. I want to see what comes up in March.  I know
20  there are responses to class certification, that's February
21  25th, about two weeks, and replies March 25th.  I think we
22  ought to schedule the next conference early in March.  And part
23  of the reason for scheduling such an early conference is to see
24  if we can be a little more specific about a schedule for filing
25  summary judgment motions and a schedule for the hearing on the

1  motion for class certification.  But right now, again, we're

2  setting aside May 14th and 15th.

3       All right.  Let's schedule the next telephone

4  conference sometime between February 25th and March 25th, and I

5  think sooner is better than later.  I would say -- let me see,

6  either -- I'm thinking March 8th or March 15th, Fridays.

7       MR. SORENSON:  Either is fine, Your Honor.  This is

8  David Sorenson.  I think the sooner, the better.

9       THE COURT:  Which day, Mr. Sorenson?

10       MR. SORENSON:  Either is fine for -- from my

11  perspective.  I was just saying the sooner, the better.

12       MR. WEXLER:  Your Honor, this is Ken Wexler.  I would

13  ask for May [sic] 8th, simply because March 15th is my birthday

14  and I have no idea what anyone has planned for me.

15       THE COURT:  Okay.  You said May 8th, you mean

16  March 8th.

17       MR. WEXLER:  March 8th.

18       THE COURT:  All right.  Let's do it --

19       MR. SENATOR:  Did you forget your birthday, Ken?

20       MR. WEXLER:  I'm reaching that point.

21       THE COURT:  He's confused by all the legal issues

22  that are being thrown at him like when do we schedule the next

23  telephone conference.  That's awesome stuff.  We'll do it

24  March 8th.

25       MR. SORENSON:  Great.

1          THE COURT:  And we'll do it -- it's a Friday --

2          MS. ALLON:  Your Honor, could I just request, since

3   it's a Friday, if we'd try to do it a little bit earlier in the

4   day.

5          THE COURT:  Yes.

6          MS. ALLON:  Because I'm Sabbath-observant at sundown.

7          THE COURT:  Yes.  Absolutely.  And actually, that --

8   where are you?  That will tell me a little bit about --

9          MS. ALLON:  New York.

10         THE COURT:  Oh, well then you're East Coast.  Well,

11  the law clerk assigned to this case is also Sabbath-observant,

12  so we'll take that into consideration.  Let's -- we can do

13  it --

14         MS. ALLON:  Thank you.

15         THE COURT:  Let me see what I'm doing -- that was a

16  week that opened up, so I don't have -- I have no trials

17  scheduled.  We can do it at two o'clock.  Is that -- will that

18  work?

19         MS. ALLON:  Yes, Your Honor, thank you, if we're

20  able.

21         THE COURT:  All right.  2 p.m.  Who initiates?

22         MR. SAINT-ANTOINE:  Your Honor, this is Paul

23  Saint-Antoine.  We haven't done it for a while.  We're happy to

24  do it.

25         THE COURT:  All right, Mr. Saint-Antoine.  Thank you.

1          Okay.  One last chance.  Is there anything else we
2  need to address in this telephone conference?  Hearing nothing,
3  I'll end the conference.  Thank you all very much.  I'll issue
4  an order covering the reservation of the two days in May for a
5  class certification hearing and schedule the next telephone
6  status conference for March 8th, Friday, March 8th, at 2 p.m.
7  And now, I will end the conference.  Thank you again.  Bye now.
8          UNIDENTIFIED:  -- Your Honor.
9          UNIDENTIFIED:  Thank you, Your Honor.
10      (Proceedings concluded at 5:33 p.m.)
11                      *  *  *  *  *
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1          **<u>C E R T I F I C A T I O N</u>**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8    

9    _____

10   ALICIA JARRETT, AAERT NO. 428      DATE:  February 27, 2019

11   ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25