```
                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF PENNSYLVANIA

                             .  Case No.  2:13-md-02460
IN RE:                       .
                             .  U.S. Courthouse
NIASPAN ANTITRUST            .  601 Market Street
LITIGATION                   .  Philadelphia, PA 19106
                             .
                             .  Friday, April 12, 2019
. . . . . . . . . . . . . . . . . 9:57 a.m.

            TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
           BEFORE THE HONORABLE JAN E. DUBOIS
              UNITED STATES DISTRICT COURT JUDGE
```

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the End-Payor Putative Class: | Wexler Wallace, LLP<br>By:  KEN WEXLER, ESQ.<br>55 West Monroe Street<br>Suite 3300<br>Chicago, IL 60603<br>(312) 346-2222 |
| | Spector Roseman & Kodroff, PC<br>By:  JEFFREY KODROFF, ESQ.<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>(215) 496-0300 |
| For CVS/Rite Aid Plaintiffs: | Hangley Aronchick Segal Pudlin & Schiller<br>By:  BARRY L. REFSIN, ESQ.<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>(215) 568-6200 |
| For Walgreen Plaintiffs: | Kenny Nachwalter P.A.<br>By:  LAUREN C. RAVKIND, ESQ.<br>One Congress Plaza<br>111 Congress Avenue, Suite 1060<br>Austin, TX 78701<br>(305) 373-1000 |

TELEPHONIC APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Michael Cosgrove, ESR |
| TRANSCRIBED BY: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46038<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

2

APPEARANCES (Continued):

For the Direct            Berger Montague, P.C.
Purchaser Putative        By:  NICHOLAS URBAN, ESQ.
Class:                         DAVID F. SORENSEN, ESQ.
                          1818 Market Street, Suite 3600
                          Philadelphia, PA 19103
                          (215) 875-3000

                          Garwin Gerstein & Fisher LLP
                          By:  DAN LITVIN, ESQ.
                          88 Pine Street, 10th Floor
                          New York, NY 10005
                          (212) 398-0055

                          Odom & Des Roches, LLC
                          By:  DAN CHIOREAN, ESQ.
                          Suite 2020, Poydras Center
                          650 Poydras Street
                          New Orleans, LA 70130
                          (504) 522-0077

                          Hagens Berman Sobol Shapiro LLP
                          By:  JESSICA MACAULEY, ESQ.
                          55 Cambridge Parkway, Suite 301
                          Cambridge, MA 02142
                          (617) 482-3700

For TEVA Defendants:      Kirkland & Ellis, LLP
                          By:  DEVORA ALLON, ESQ.
                               DMITRIY TISHYEVICH, ESQ.
                          601 Lexington Avenue
                          New York, NY 10022-4611
                          (212) 446-4800

For Giant Eagle:          Marcus & Shapira, LP
                          By:  BRIAN HILL, ESQ.
                          One Oxford Centre, 35th Floor
                          Pittsburgh, PA 15219
                          (412) 338-5212



TELEPHONIC APPEARANCES (Continued):

For AbbVie Defendants:      Drinker, Biddle & Reath LLP
                            By:  PAUL H. SAINT-ANTOINE, ESQ.
                            One Logan Square, Ste. 2000
                            Philadelphia, PA 19103-6996
                            (215) 988-2700

                            Munger Tolles & Olson LLP
                            By:  STUART N. SENATOR, ESQ.
                                 JEFFREY Y. WU, ESQ.
                            350 South Grand Avenue, 50th Floor
                            Los Angeles, CA 90071-3426
                            (213) 583-9528

                            Munger Tolles & Olson LLP
                            By:  BLANCA FROMM YOUNG, ESQ.
                            560 Mission Street, 27th Floor
                            San Francisco, CA 94105
                            (415) 512-4019

                            Munger Tolles & Olson LLP
                            By:  JONATHAN S. MELTZER, ESQ.
                            1155 F Street Northwest
                            Washington, DC 20004
                            (202) 220-1105

4

1      (Proceedings commence at 9:57 a.m.)

2              THE COURT:  This is Judge DuBois.  Good morning.

3              UNIDENTIFIED:  Good morning, Your Honor.

4              UNIDENTIFIED:  Good morning, Your Honor.

5              THE COURT:  We're going to conduct our regularly

6   scheduled status conference in the Niaspan Antitrust

7   Litigation, MDL Number 13-2460.  I'm not going to call the

8   roll, but I want to make sure everyone is represented.  First,

9   end-payor plaintiffs.

10              MR. WEXLER:  Yes, Your Honor.

11              THE COURT:  Fine.  Direct-purchaser plaintiffs.

12              MR. SORENSON:  Yes, Your Honor.

13              THE COURT:  Defendants, AbbVie.

14              MR. SENATOR:  Yes, Your Honor.

15              THE COURT:  TEVA.

16              MS. ALLON:  Yes, Your Honor.

17              THE COURT:  Walgreens.

18              MS. RAVKIND:  Yes, Your Honor.

19              THE COURT:  CVS/Rite Aid.

20              MR. REFSIN:  Yes, Your Honor.

21              THE COURT:  And Giant Eagle.

22              MR. HILL:  Yes, Your Honor.

23              THE COURT:  I'm going to start the conference by

24   referring to a conditional transfer order that was just filed.

25   It's Document 87, filed today, April 12th.  It transfers a case

1  from the Southern District of Ohio.  The parties have seven

2  days to object from the date the conditional transfer order was

3  filed, and as I said, it was just filed today.

4          Anyone have any comments about this case?  The

5  caption is MSP Recovery Claims, Series LLC and a number of

6  others versus AbbVie and a number of others.  And I think --

7          MR. SENATOR:  Your Honor?

8          THE COURT:  Yes, go ahead.

9          MR. SENATOR:  Sorry.  I didn't mean to interrupt.

10  This is Stewart Senator.

11          THE COURT:  No, go ahead, Mr. Senator.

12          MR. SENATOR:  So first on the logistics, my

13  understanding is that the conditional transfer order was filed

14  by the panel a week ago, and therefore there was one week to

15  object, and no objections were filed and the order became final

16  either -- sometime extremely recently.  And I got an ECF-type

17  notice from the JPML this morning that the order was final

18  (indiscernible) --

19          THE COURT:  You know, it's -- I just -- I have two

20  copies of the conditional transfer order.  The first was filed

21  on April 4th, it's Document Number 85 on iDocket, and the

22  second was filed April 12th, and it's, as I said, Document

23  Number 87, and they're identical.

24          But be that as it may, I gather that none of the

25  parties represented in this telephone conference have any

1  objection to the transfer.  If you do have an objection --

2          MR. SORENSON:  Your Honor?

3          THE COURT:  Yes, go ahead.

4          MR. SORENSON:  Your Honor, this is David Sorenson.

5  I'll speak for myself.  I have not seen this order.  I don't

6  know whether any of my colleagues have.  My immediate

7  information is it wasn't filed in a way that was provided to

8  us, but I'll just say I have not seen it, and I don't know if

9  any other plaintiffs' counsel have.

10          THE COURT:  Well, the way to see it is to download

11  it.

12          MR. SORENSON:  No, understood.  What I mean is I'm

13  just saying that, whatever reason, neither I nor colleagues

14  have -- got notice of it when it was filed.  I'm not sure we

15  would have, and maybe it's our fault.  I'm not saying -- I

16  don't know.  I'm just telling you -- informing you that we have

17  not seen it.  Again, if one of my colleagues on the phone on

18  the plaintiff side has, I'm -- you know, they can address it.

19          THE COURT:  Well, what -- I'm not certain how the

20  judicial panel handles service of these conditional transfer

21  orders, but I know they were docketed, and I suggest that you

22  promptly docket them.  And for those of you who want to see

23  what's going on in the case -- of course, Mr. Senator

24  is -- well, AbbVie is represented.  Are you representing AbbVie

25  in that case, Mr. Senator?  I suspect you are.

1          MR. SENATOR:  We will be in this court, Your Honor.

2    We didn't make an appearance in the Ohio case.  The counsel

3    there served it and then promptly filed a motion to stay it,

4    pending transfer, which was granted.  And then the request to

5    transfer or the tagalong notice, I'm not exactly sure what it's

6    called, was filed with the JPML.  But we will in your court,

7    Your Honor.

8          THE COURT:  Well, for those of you who are

9    interested, the case was filed in District Court for the

10   Southern District of Ohio, and it's Civil Action Number 00892.

11   The parties are -- and I don't have them all.  I have a lot of

12   the et als., but it's MSP Recovery Claims, Series LLC, and a

13   number of others, plaintiffs, and AbbVie et al., defendants.

14   And your rights are established by the rules.  And again, act

15   accordingly, and you're now on notice that these two

16   conditional transfer orders were filed, one on April 4th, one

17   on April 12th.  But certainly, I --

18          MR. WEXLER:  Your Honor?

19          THE COURT:  -- can't expect any of the plaintiffs to

20   say they are or are not objecting when they don't know anything

21   about it.  I suggest that you try to find out about it.

22          MR. WEXLER:  Your Honor?

23          THE COURT:  Yes, go ahead.

24          MR. WEXLER:  I'm sorry to interrupt.  This is Ken

25   Wexler for the end-payors.  We're aware of the case.  It was

1  filed under the auspices of interim co-lead counsel in the

2  case.  We will reach out to those plaintiffs, which they have

3  filed in other cases that are pending, and we will address the

4  issue with them.

5           THE COURT:  Mr. Wexler, you --

6           MR. WEXLER:  And if you want, we can report to the --

7           THE COURT:  -- refer to "other cases that are

8  pending."  Are you talking about other --

9           MR. WEXLER:  Yeah.

10          THE COURT:  Let me finish.  Not -- other Niaspan

11  cases?

12          MR. WEXLER:  No, not Niaspan cases.

13          THE COURT:  All right.  Because I think --

14          MR. SENATOR:  Yes, Your Honor.

15          MR. WEXLER:  Yeah.

16          MR. SENATOR:  This is Stewart Senator.  If I could

17  just add one thing that might be helpful background.  This is

18  my understanding is that the plaintiffs in the Ohio case are a

19  subgroup of the proposed EPP class in our case.

20          THE COURT:  All right.  Thank you, Mr. Senator.

21          All right.  I don't think there's anything else we

22  need to do with respect to the conditional transfer order at

23  this time.  And I gather the plaintiffs move for the -- well,

24  who moved for the conditional -- or the transfer?  Was it the

25  defense, Mr. Senator, or the plaintiffs?

1           MR. SENATOR:  It was the plaintiffs, but I'm not
2   sure.  Technically, I think we may have joined in the notice or
3   request.
4           THE COURT:  Well, what's your --
5           MR. SENATOR:  But --
6           THE COURT:  Go ahead.
7           MR. SENATOR:  And we certainly didn't -- we certainly
8   don't oppose it.  We think, you know, although we don't have
9   any insight into why they filed the case as a subgroup of a
10  group that's already before the Court, we were certainly
11  supportive that everything should be in one place.
12          THE COURT:  I am certainly in agreement with that.
13  Are you aware of any objections among the remaining defendants
14  in the Ohio case?
15          MR. SENATOR:  No, Your Honor.  I think the only
16  defendants in -- well, I think --
17          MS. ALLON:  Your Honor, this is Devora Allon for
18  TEVA.  We were the only other defendants, and we also did not
19  object to the transfer.
20          THE COURT:  Thank you very much, Ms. Allon.
21          All right.  Well, is -- I don't think there's
22  anything else that we have to talk about with respect to the
23  conditional transfer order.  And I'll await the
24  appearances -- the necessary appearances as soon as the
25  conditional transfer order is served on them.

1          Okay.  Let's turn to the agenda.

2          I should tell you that since the last conference, and

3  particularly in the last, I don't know, seven or eight or nine

4  days, I've been on trial.  I -- as a matter of fact, the jury

5  just returned a verdict late yesterday, and I have not studied

6  the class-action submissions.  I'm really not up to speed on

7  the class-action submissions now.  There's no way -- going

8  nine o'clock Eastern to six o'clock Eastern, and that's roughly

9  what our schedule was -- there's no way I can read the volumes

10  that you've submitted.  So I'm not up to the minute.

11          And as we go through the agenda, we just might end up

12  having to schedule an early on -- I'm going to call it a

13  followup telephone status conference.  But let's address the

14  issues as you've presented them.

15          Before we do, though, is there anything you wish to

16  call to my attention?  Hearing nothing, we'll turn to the

17  agenda.

18          The first item is the format for the hearings on DPP

19  and EPP motions for class certification.  The hearings are

20  scheduled for May 14th and 15th, and the key question is

21  whether we have expert testimony.  The end-payor plaintiffs

22  prefer expert testimony.  The rest of you either don't think

23  it's necessary or don't oppose going without expert testimony.

24  For now, because I haven't really gotten into the motions, I'm

25  going to suggest that we proceed on the assumption that there

1  will be no expert testimony and that if, during the

2  proceedings, during the hearing -- hearings, plural -- anyone

3  decides that expert testimony is required, then I want to hear

4  about it.

5        And as I said, I have absolutely no problem if that

6  develops or if I decide, after hearing the arguments, that

7  expert testimony is required.  We'll have a followup hearing.

8  Right now, we've scheduled two days, May 14th and May 15th, for

9  the hearings.  But there's no reason why, if we need expert

10 testimony, that we can't schedule a third day of hearings or

11 more.

12       Also, as I told you in <u>Blood Reagents</u>, we had a need

13 for expert testimony, expert was unavailable, and we received

14 his deposition.  I found that not quite as helpful as having

15 the expert in court but nevertheless helpful.  So as of today,

16 no expert testimony.

17       Now, I plan shortly, certainly well in advance of the

18 hearings, to review your submissions.  I haven't totaled the

19 pages, but they're quite extensive.  And if I think, after

20 reading the submissions, that expert testimony is required, I

21 will advise you.  But for now, do not plan on expert testimony.

22       Anybody want to comment?

23       MS. ALLON:  Your Honor --

24       UNIDENTIFIED:  Your Honor --

25       THE COURT:  Yes?

1          MS. ALLON:  -- this is Devora Allon for TEVA.  I

2    actually just had a clarification question, which is if we're

3    only going to have argument and no testimony for now, should we

4    consider whether we might only need one day of hearing instead

5    of two days?

6          THE COURT:  I don't know whether we'll need one day

7    or two days.  I certainly am not going to have you convene on a

8    second day if we don't need you.  The reason for scheduling two

9    days is the fact that I thought when we talked about this that

10   we might need two days.

11         MS. ALLON:  Right.  I think when we originally

12   blocked off the two days, it was because we were uncertain as

13   to whether we would have live testimony.  Certainly, TEVA's

14   position would be if we're just having arguments, we do not

15   need two days, and we could work out time limits among the

16   parties so that we could cover both DPP and EPP class cert. in

17   one day of hearing.

18         THE COURT:  Well, that would be good then.

19         MS. ALLON:  We could clear up time for the Court's

20   calendar.

21         THE COURT:  No, that's fine.  Among the parties

22   represented today, and there are seven of you, certainly I'll

23   hear from the end-payor plaintiffs and the direct-purchaser

24   plaintiffs and the AbbVie defendants and the TEVA defendants.

25   What about the Walgreens, CVS/Rite Aid, Giant Eagle?

1            Let's start with you Mr. -- or Ms. Ravkind.  Does

2  Walgreens plan to participate in the argument, or are you going

3  to be a tagalong?

4            MS. RAVKIND:  We do not plan on participating in the

5  argument.  We filed our own separate case, Your Honor, so we do

6  not plan on participating in the argument.  We may attend the

7  hearing.  I don't know whether we will or we won't, but we do

8  not plan on participating.

9            THE COURT:  I don't see, since you've started your

10 own action -- well, I really haven't -- you're still part of

11 the class, aren't you?

12           MS. RAVKIND:  Well, we -- because class hasn't been

13 certified, we have not had the opportunity to technically opt

14 out.  However, we did file a separate lawsuit, which is part of

15 the MDL proceeding before you, on behalf of our clients.  So we

16 represent our clients in their individual capacity and not as

17 members of the class, Your Honor.

18           THE COURT:  Okay.

19           MR. REFSIN:  Your Honor, this is Barry Refsin.  And

20 if when -- if the class is certified, direct-purchaser class is

21 certified, and the class definition includes our claims,

22 Rite Aid, CVS, and the Walgreens plaintiffs, and I assume Giant

23 Eagle as well, will opt out of that class.

24           THE COURT:  I thought so.  But --

25           MR. REFSIN:  Sometimes --

1           THE COURT:  Go ahead.

2           MR. REFSIN:  Sometimes the class is defined to

3 exclude us, but when it doesn't explicitly exclude us, we opt

4 out.

5           THE COURT:  Well, it seems to me -- well, first of

6 all, right now, you're all members of the class.  I don't know

7 whether I'm going to certify the class or not.  And it seems to

8 me you have standing to participate in the argument, at least

9 to object to class certification if you object -- if you have

10 any objections.  But I want your position on the record.

11           And when I talked to you, Ms. Ravkind, I hadn't

12 really thought this through.  But I want you there at the

13 hearing, and you can put your position on the record.  You've

14 got to tell me whether you have any objections to the class

15 certification, knowing that if the class is certified, you've

16 told me that Walgreens will opt out.

17           All right.  Is there anything more?  Well, before we

18 finish on the two days versus one day, I gather that any

19 participation by Walgreens, CVS/Rite Aid, Giant Eagle, will be

20 brief.  Is that a fair statement?  Does anyone disagree with

21 that?

22           MR. REFSIN:  That's correct, Your Honor.

23           THE COURT:  How long do you think -- have you given

24 any thought to scheduling the argument and figuring out who's

25 going to speak for how long?

1          MR. SORENSON:  Your Honor, this is David Sorenson for

2     the direct-purchaser class.  If I may start with that.

3               THE COURT:  You may.

4          MR. SORENSON:  I had suggested on the last call that

5     the direct-purchaser class mission be taken up first because I

6     think the issues are fairly straightforward, and relatively

7     speaking, simpler.  I recall that my colleague, Ken Wexler, I

8     think, had mentioned a scheduling issue that the indirects were

9     facing.  I don't know if that still pertains.  But if you

10    decide on one day, let's say the 14th, I would suggest that the

11    direct purchaser motion be taken up first.  I think it will be

12    shorter and simpler.

13         I can certainly talk to the defendants about a time

14    limit.  I would think total for each side on the order of an

15    hour is more than sufficient, but I will say that I haven't

16    talked to the defendants directly about this, so I don't want

17    to hold them to any particular number.  But that's just

18    my -- you know, my sense of things.

19         So if that went forward at ten o'clock, let's say,

20    the direct class submission could be finished by the lunch

21    break, assuming Your Honor takes a lunch break, and we could

22    have the afternoon, as much as Your Honor, you know, would

23    like, and your own schedule to deal with the impaired motion.

24    That's, you know, sort of my impression of how this might go.

25              MS. ALLON:  And Your Honor, this is Devora Allon for

1  TEVA.  I agree with Mr. Sorenson about the time needed for the

2  direct-purchaser motion.  I think an hour per side sounds

3  reasonable.

4          THE COURT:  All right.  Well, but I think you ought

5  to talk among yourselves.  I haven't heard from Mr. Senator on

6  this.  And the Walgreens, CVS/Rite Aid, Giant Eagle plaintiffs

7  ought to decide whether they believe it necessary to say

8  anything at the hearing.

9          And what I've decided I have to do, I have to get

10  more familiar with the issues in the -- raised in the class

11  certification motions.  So we're going to have another

12  conference before the hearing.  And I want -- before that

13  conference, I want you to meet and confer and come up with a

14  proposed schedule for one day of hearings.  And I should think

15  you'd be able to do that in a week.  Is that agreeable

16  to -- well, does anyone disagree with that?

17          MR. WEXLER:  Your Honor, hi.  This is Ken Wexler.

18  Before -- obviously, we're perfectly willingly to meet and

19  confer and discuss the time limits and whatnot and trying to do

20  those in one day, but could you not jettison the second day yet

21  until we have had that opportunity?

22          THE COURT:  I'm not jettisoning -- my gosh, that's a

23  tough word.  You better find another word.  How about --

24          MR. WEXLER:  That's okay.

25          UNIDENTIFIED:  Pick another one.

1          MR. WEXLER:  It was serendipity that I was able to

2     get it out.

3          THE COURT:  Well, I'm having -- I just came from the

4     gym.  I am fairly tired.  And I've got to tell you, jettisoning

5     -- I can't even get it out.  Scrapping.  That's --

6          MR. WEXLER:  We know what you mean.

7          THE COURT:  The second day of hearings --

8          UNIDENTIFIED:  Don't scrap the day, Your Honor.

9          THE COURT:  I get it.  The second day of hearings is

10    not scrapped yet.  And as I said, we're going to have another

11    conference before those hearings.  I've got to get a better

12    handle, as I said a moment ago, on the issues raised in the

13    class certification motions.

14          And the same is true of page limitations.  I have

15    thought less is more.  I've always thought that.  I don't think

16    either of your proposals, the proposals set forth in the

17    addendum, are in the less category.  But there's a lot of

18    reading to do right now, and I want to think about -- and

19    really I want to canvass my colleagues.  I haven't imposed page

20    limits, and I really suffered as a result.  The volumes that

21    have been dropped on us have been unbelievable, and -- well,

22    maybe not unbelievable to you.  But really when you think there

23    are two of us, and how many, many more of you, it's quite a

24    problem.

25          Again, less really is more.  It's much easier to

1  grasp and much more difficult to write a good, short brief than

2  any kind of a longer brief.  So I want to defer on that as

3  well.  But I want to get you notice quickly because I'm sure

4  you're going to start working on the summary judgment motions.

5          I think now because we've deferred on page limits, a

6  final word on the schedule and the -- really the format for the

7  hearings as well, we ought to turn to the scheduling of the

8  next conference.  And I just want enough time to read the class

9  action submissions and any other submissions.  And it looks

10  like my schedule -- well, I've got one day of hearings.  A lot

11  of conferences but no trials and no hearings.  And a trial the

12  following week, but it's not going to last.  It's a criminal

13  case.

14          So I'm thinking we ought to try to schedule something

15  around the end of next week -- not next week.  I'm sorry.  The

16  end of the following week.  The -- I'm just looking to see

17  about criminal cases.  Or the beginning of the next week, the

18  week of the 29th.  That --

19          MR. WEXLER:  Your Honor?

20          THE COURT:  Yeah?

21          MR. WEXLER:  Ken Wexler here.

22          THE COURT:  Yes?

23          MR. WEXLER:  I have knee surgery on the 30th, so if

24  we could do it the 29th, that would be great.

25          THE COURT:  Well, I wish you well on your knee

1 surgery.

2          MR. WEXLER:  Or while I'm under anesthetic.  I might

3 be more coherent.

4          THE COURT:  I wish you well on the --

5          MR. SENATOR:  I second that.

6          THE COURT:  Well, then we'll do it on the 30th,

7 Mr. Senator, or better still, on May 1st.  I haven't had knee

8 surgery, but the next -- the day after, I'm told, is much less

9 harsh now today than it was years ago.  They've really

10 perfected the knee and hip surgery.  I've had two hockey-player

11 sons have hips replaced, and one was treated as an inpatient

12 [sic], I couldn't believe that.  The other spent one day in the

13 hospital.  And I wish you well.  I hope you get in and out

14 quickly and it's uneventful.

15          But we can do it the 29th.  Michael, that case is

16 going to be continued because the defendant has fired his

17 lawyer.  Do you know anything about the rescheduling?

18          THE COURT RECORDER:  I do not.

19          THE COURT:  All right.  Well, let's do it -- can we

20 do it later on the 29th in case I have to have a continuance

21 hearing that morning, say three o'clock?

22          MR. SENATOR:  Fine with us.

23          MR. WEXLER:  Yeah, fine with us, Your Honor.

24          THE COURT:  All right.  3 p.m. on Monday, the 29th.

25 Who will initiate?

1          MR. WEXLER:  I will, Your Honor.

2          UNIDENTIFIED:  We can't -- okay.  go ahead.

3          MR. WEXLER:  Yeah, this is Ken Wexler.  We

4 can -- yeah, it's our turn.

5          THE COURT:  Okay.  Good.  We'll address all of the

6 issues that we haven't addressed today, I'll include that in

7 the order, and any new issues, the order will provide for the

8 submission of a proposed agenda, no less than three days in

9 advance.  And hopefully we'll have answers -- better answers

10 certainly on expert witnesses, but page limitations I think

11 we'll be better on, and I hope to be able to finalize that.

12          Is there anything else that we need to address now?

13 Hearing nothing, I'll end the conference.  I'll issue an order

14 scheduling the next conference for Monday, April 29th at

15 3 p.m., and Mr. Wexler will initiate.

16          All right.  Have a good weekend, everybody.  Thank

17 you very much for participating.  I look forward to chatting

18 with you on April 29th.

19          UNIDENTIFIED:  Thank you, Your Honor.

20          UNIDENTIFIED:  Thank you.

21          UNIDENTIFIED:  Thank you.

22          UNIDENTIFIED:  Appreciate it.

23          THE COURT:  Bye now.

24     (Proceedings concluded at 10:26 a.m.)

25                    * * * * *

1                     **C E R T I F I C A T I O N**

2

3        I, Alicia Jarrett, court-approved transcriber, hereby

4 certify that the foregoing is a correct transcript from the

5 official electronic sound recording of the proceedings in the

6 above-entitled matter.

7

8

9

10 
_____

11 ALICIA JARRETT, AAERT NO. 428    DATE:  April 22, 2019

12 ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25