MUNGER, TOLLES & OLSON LLP

RONALD L. OLSON
ROBERT E. DENHAM
JEFFREY I. WEINBERGER
CARY B. LERMAN
GREGORY P. STONE
BRAD D. BRIAN
BRADLEY S. PHILLIPS
GEORGE M. GARVEY
WILLIAM D. TEMKO
JOHN W. SPIEGEL
DONALD B. VERRILLI, JR.*
TERRY E. SANCHEZ
STEVEN M. PERRY
MARK B. HELM
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
KATHLEEN M. M°DOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
HENRY WEISSMANN
KEVIN S. ALLRED
JEFFREY A. HEINTZ
JUDITH T. KITANO
JEROME C. ROTH
GARTH T. VINCENT
TED DANE
STUART N. SENATOR
MARTIN D. BERN
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
KELLY M. KLAUS
DAVID B. GOLDMAN
DAVID H. FRY
LISA J. DEMSKY
MALCOLM A. HEINICKE
TAMERLIN J. GODLEY
JAMES C. RUTTEN
RICHARD ST. JOHN
ROHIT K. SINGLA
LUIS LI
CAROLYN HOECKER LUEDTKE
C. DAVID LEE
MARK H. KIM
BRETT J. RODDA*
FRED A. ROWLEY, JR.
KATHERINE M. FORSTER
BLANCA FROMM YOUNG
ROSEMARIE T. RING
MELINDA EADES LEMOINE
SETH GOLDMAN

GRANT A. DAVIS-DENNY
JONATHAN H. BLAVIN
DANIEL B. LEVIN
MIRIAM KIM
MISTY M. SANFORD
HAILYN J. CHEN
BETHANY W. KRISTOVICH
JACOB S. KREILKAMP
JEFFREY Y. WU
LAURA D. SMOLOWE
ANJAN CHOUDHURY
KYLE W. MACH
HEATHER E. TAKAHASHI
ERIN J. COX
BENJAMIN J. HORWICH
E. MARTIN ESTRADA
MATTHEW A. MACDONALD
BRYAN H. HECKENLIVELY
ELAINE J. GOLDENBERG*
MARK R. YOHALEM
GINGER D. ANDERS*
MARGARET G. MARASCHINO
JOHN M. GILDERSLEEVE
ADAM B. WEISS
GEORGE CLAYTON FATHEREE, III
KELLY L.C. KRIEBS
JEREMY A. LAWRENCE
LAURA K. LIN
ACHYUT J. PHADKE
ZACHARY M. BRIERS
JENNIFER M. BRODER
KURUVILLA J. OLASA
JUSTIN P RAPHAEL
ROSE LEDA EHLER
ERIC P. TUTTLE
JOHN W. BERRY
ROBIN K. BACON
JORDAN D. SEGALL
DAVID S. HONG
JONATHAN KRAVIS*
WESLEY T. L. BURRELL
KAREN A. LORANG
CRAIG JENNINGS LAVOIE
JENNIFER L. BRYANT
ANDREW CATH RUBENSTEIN
NICHOLAS D. FRAM
JOHN L. SCHWAB
ASHLEY D. KAPLAN
JESSICA REICH BARIL

JULIANA M. YEE
JEREMY K. BEECHER
MATTHEW K. DONOHUE
EMILY CURRAN-HUBERTY
JORDAN X. NAVARRETTE
BENJAMIN B. MAJOR
LAUREN C. BARNETT
C. HUNTER HAYES
TREVOR N. TEMPLETON
SKYLAR B. GROVE
ELIZABETH H. DYER
SARAH S. LEE
LAURA M. LOPEZ
MICHAEL C. BAKER
ADELE M. EL-KHOURI*
COLIN A. DEVINE
DANE P. SHIKMAN
LEXI PEACOCK
MAGGIE THOMPSON
SAMUEL H. ALLEN
ALLISON M. DAY
JONATHAN S. MELTZER*
LAUREN M. HARDING
NEFI D. ACOSTA
STEPHANIE G. HERRERA
TERESA REED DIPPO
DANIEL BENYAMIN
SARA A. MCDERMOTT
J. MAX ROSEN
RACHEL G. MILLER-ZIEGLER*
ALISON F. KAROL SIGURDSSON
ANNE K. CONLEY
KATHERINE G. INCANTALUPO
DAVID P. THORESON
NICHOLAS H. AXELROD
DAVID W. MORESHEAD
ANNIE W. BREWSTER III
TERRA D. LAUGHTON
ROWLEY J. RICE
JEREMY S. KREISBERG*
GINA P. ELLIOTT
BRANDON R. TEACHOUT
LUCAS J. ARRIETA
USHA CHILUKURI VANCE
TYLER HILTON
VINCENT LING
ALEXANDER S. GORIN
BRENDAN GANTS*

MARKUS BRAZILL
MARI T. SAIGAL
LAUREN E. ROSS*
ZOE BEDELL*
BENJAMIN D. BAROKH
ABE DYK
MICHELE C. NIELSEN
APRIL YOUPEE-ROLL
DAVID T. FREENOCK
COBUS VAN DER VEN*
MARIANNA MAO
MEGAN MCCREADIE
OMAR M. NOURELDIN
STEPHEN MYLAS
ARIEL TESHUVA
SHANNON GALVIN AMINIRAD
LLOYD MARSHALL
NATALIE KARR
BRANDON MARTINEZ
ANTHONY J. RAMIREZ
ANDREW LEWIS
CARRIE C. LITTEN
BEAU C. TREMITIERE
ESTALYN S. MARQUIS
JAMES R. SALZMANN
ELIZABETH DOUGLAS
SAMIR HALAWI
ROBIN S. GRAY

OF COUNSEL

ROBERT K. JOHNSON
PATRICK J. CAFFERTY, JR.
PETER A. DETRE
BRAD SCHNEIDER
PETER E. GRATZINGER
JENNY H. HONG
KIMBERLY A. CHI
ADAM R. LAWTON
MATTHEW S. SCHONHOLZ
MICHAEL E. GREANEY

E. LEROY TOLLES
(1922-2008)

*ADMITTED IN DC.
ALL OTHERS ADMITTED IN CA

350 SOUTH GRAND AVENUE
FIFTIETH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

———

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

———

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100
FACSIMILE (202) 220-2300

December 17, 2020

Writer's Direct Contact
(213) 683-9528
(213) 683-4028 FAX
stuart.senator@mto.com

The Hon. Jan E. DuBois
United States District Court
Eastern District of Pennsylvania
Room 12613, Ctrm. 12-B
601 Market Street
Philadelphia, CA 19106

Re:  *In re Niaspan Antitrust Litigation - MDL No. 13-2460*
     **Time-Sensitive Request**

Dear Judge DuBois:

I write on behalf of Defendants to request an expedited teleconference to address an issue that the End Payor Plaintiffs have raised at the last minute with respect to their renewed class certification motion reply papers due this Friday, December 18, 2020.

As the Court will recall, the scheduling order governing EPPs' renewed motion for class certification does not permit reply expert reports with the EPPs' reply brief that is due today.  Docket No. 716, ¶ 4  (Ex. A hereto).  This issue was specifically discussed at the teleconference that led to the scheduling order.  Transcript of Telephonic Scheduling Conference of 8-11-2020, at 38:17-18, 39:8-13 (Ex. B hereto).

Nonetheless, just Wednesday of this week (December 16, 2020), EPPs first stated that in light of Defendants' opposition to their renewed motion for class certification and an accompanying expert report – filed and served **six weeks ago** on November 6, 2020, EPPs

MUNGER, TOLLES & OLSON LLP

The Hon. Jan E. DuBois
December 17, 2020
Page 2

planned to file a reply expert report, and sought Defendants' concurrence.  (Ex. C hereto, at initial [bottom] email in chain.)  That same day Defendants set forth their objection.  (Ex. C at Correspondence from Stuart N. Senator attached thereto, at 4.)  We refer the Court to the correspondence from the undersigned that is attached to Ex. C for a complete statement of the bases for Defendants' objection.

Exhibit C also made an important procedural request – that, especially in light of the Court's prior consideration and rejection of reply expert reports, EPPs seek and obtain the Court's permission before lodging any proposed reply report or otherwise smuggling such a report into the record.   Defendants requested that, if EPPs planned otherwise, "please tell us immediately and we will present the issue to Judge DuBois tomorrow [Thursday, December 17, 2020]."  *Id.*

EPPs said nothing that night or through most of today (Thursday).  EPPs responded only after further prompting from Defendants' counsel this afternoon.  (Ex. D hereto.)  EPPs' 4:30 pm Eastern Time response was that they did plan to lodge the proposed reply report with the Court, presumably concurrently with their renewed class certification reply brief on Friday.  (Exhibit C hereto, at most recent [top] email in chain, time stamped 1:30 pm Pacific Time.)  By the time EPPs sent that response, however, it was too late for Defendants to raise the issue with the Court during the Court's business hours on Thursday.

Defendants object to this entire course of conduct.  It appears to have been timed to make it as logistically difficult as possible for the Court to consider the issue of whether to allow the reply expert report (contrary to the Court's prior order) prior to EPPs' preparing and putting that report before the Court.  Defendants would then be left with the hollow potential remedy of trying to unring the proverbial bell.

This letter is being filed on Thursday night (December 17, 2020).  With apologies for burdening the Court on short notice, but with the justification that this is an emergency entirely of EPPs' making, Defendants request that the Court consider holding a telephone conference on this issue on Friday (December 18, 2020) or issuing an order that no reply expert report be filed, lodged or otherwise placed before the Court until after the Court considers this issue in a more orderly fashion.

Very truly yours,

Stuart N. Senator

SNS:flr

cc:      All Counsel of Record (via ECF)

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>NIASPAN ANTITRUST LITIGATION | MDL NO. 2460 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | MASTER FILE NO. 13-MD-2460 |

### <u>O R D E R</u>

**AND NOW**, this 12th day of August, 2020, upon consideration of proposed schedules submitted by the parties on June 16, 2020 (Document Nos. 711, 712, 713), following a telephone scheduling conference with the parties, through counsel, on the record on August 11, 2020, **IT IS ORDERED** as follows:

1. On or before August 25, 2020, End-Payor Plaintiffs shall serve supplemental expert reports;

2. On or before September 5, 2020, End-Payor Plaintiffs shall file and serve an amended motion for class certification not to exceed twenty five (25) pages in length;

3. On or before November 6, 2020, defendants shall:

    a. Complete depositions of End-Payor Plaintiffs' expert witnesses and serve defendants' expert reports;

    b. File and serve *Daubert* motion(s) and a response to End-Payor Plaintiffs' amended motion for class certification, not to exceed a total of forty (40) pages in length.

4. On or before December 18, 2020, End-Payor Plaintiffs shall file and serve *Daubert* motion(s) and response(s) to defendants' *Daubert* motion(s), and are granted leave to file and serve a reply in further support of their amended motion for class certification, not to exceed a total of thirty (30) pages in length;

5. On or before January 11, 2021, defendants shall file and serve response(s) to End-

Payor Plaintiffs' *Daubert* motion(s) and are granted leave to file and serve a reply in further

support of their *Daubert* motion(s), not to exceed a total of fifteen (15) pages in length;

6.      On or before January 21, 2021, End-Payor Plaintiffs are granted leave to file and

serve a reply in further support of their *Daubert* motion(s) not to exceed ten (10) pages in length.

**IT IS FURTHER ORDERED** that, on or before September 12, 2020, counsel shall

jointly report to the Court with respect to whether the case is settled.   In the event the case is not

settled on or before September 12, 2020, counsel shall include in their joint report a statement as

to whether they believe settlement conferencing before a magistrate judge or some other form of

alternative dispute resolution might be of assistance in resolving the case and, if so, on what form

of alternative dispute resolution they agree and by what date they will be prepared to begin such

proceedings.  If the parties agree on alternative dispute resolution and deem it appropriate to

suspend further proceedings under the scheduling order until the question of settlement is fully

explored, they should request a vacatur of the scheduling order in their joint report.

**IT IS FURTHER ORDED** that the Court will schedule summary judgment briefing and

all other proceedings after ruling on End-Payor Plaintiffs' amended motion for class

certification.

**BY THE COURT:**

**/s/ Hon. Jan E. DuBois**

_____

**DuBOIS, JAN E., J.**

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: | .  Case No.  2:13-md-02460 |
|  | . |
|  | .  U.S. Courthouse |
| NIASPAN ANTITRUST LITIGATION | .  601 Market Street |
|  | .  Philadelphia, PA 19106 |
|  | . |
|  | .  August 11, 2020 |
| . . . . . . . . . . . . . . . . . | .  3:17 p.m. |

TRANSCRIPT OF TELEPHONIC SCHEDULING CONFERENCE
**BEFORE THE HONORABLE JAN E. DUBOIS**
**UNITED STATES DISTRICT COURT JUDGE**

TELEPHONIC APPEARANCES:

| For the End-Payor | Wexler Wallace, LLP |
|---|---|
| Putative Class: | By:  KEN WEXLER, ESQ. |
|  | JUSTIN N. BOLEY, ESQ. |
|  | 55 West Monroe Street |
|  | Suite 3300 |
|  | Chicago, IL 60603 |
|  | (312) 346-2222 |

| For Walgreen | Kenny Nachwalter P.A. |
|---|---|
| Plaintiffs: | By:  SCOTT E. PERWIN, ESQ. |
|  | One Congress Plaza |
|  | 111 Congress Avenue, Suite 1060 |
|  | Austin, TX 78701 |
|  | (305) 373-1000 |

| For the Direct | Berger Montague, P.C. |
|---|---|
| Purchaser Putative | By:  DAVID F. SORENSEN, ESQ. |
|  | 1818 Market Street, Suite 3600 |
|  | Philadelphia, PA 19103 |
|  | (215) 875-3000 |

TELEPHONIC APPEARANCES CONTINUED.

| Audio Operator: | Carl Hauger, ESR |
|---|---|

| TRANSCRIBED BY: | Access Transcripts, LLC |
|---|---|
|  | 10110 Youngwood Lane |
|  | Fishers, IN 46038 |
|  | (855) 873-2223 |
|  | www.accesstranscripts.com |

Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

2

APPEARANCES (Continued):

For TEVA Defendants:        Kirkland & Ellis, LLP
                            By:  DEVORA ALLON, ESQ.
                            601 Lexington Avenue
                            New York, NY 10022-4611
                            (212) 446-4800

For AbbVie Defendants:      Munger Tolles & Olson LLP
                            By:  STUART N. SENATOR, ESQ.
                            350 South Grand Avenue, 50th Floor
                            Los Angeles, CA 90071-3426
                            (213) 583-9528

1        (Proceedings commence at 3:17 p.m.)

2              THE COURT:  We're going to conduct a scheduling

3    conference today in the Niaspan Antitrust Litigation, MDL

4    Number 13-2460.

5              The telephone conference is being recorded.  We have

6    an electronic sound recording operator on the line.  I've got

7    the attendance list.  I don't think we're going to need to talk

8    to very many of you.  The issues really involve the end-payor

9    purchasers, the defendants, and to a certain extent, direct

10   purchaser plaintiffs.

11             As I see it, there are four issues that we have to

12   address.  The first is the sequencing of the filing of an

13   amended motion for class certification, which the end-payor

14   plaintiffs are contemplating, and the filing of motions for

15   summary judgment, the first issue.

16             The second issue is the need for discovery, and

17   specifically expert testimony, which means expert reports in

18   connection with the filing of end-payor plaintiffs' amended

19   motion.  The third issue is page limits, and the fourth issue

20   is the schedule.

21             Are there any other issues that anyone thinks we

22   ought to address very briefly?

23             I hear nothing, so we will proceed.  So the first

24   issue is summary judgment versus class certification.  Should

25   we proceed simultaneously or not?  I've read your submissions

1  and my inclination is to adopt defendants' position, and that

2  is to go through whatever motion practice is required with

3  respect to end-payor plaintiffs and defer the filing of any

4  motion for summary judgment.  I base that preliminary decision

5  primarily on the fact that I think a defense summary judgment

6  motion, with respect to end-payor plaintiffs, would depend to a

7  large extent on what end-payor plaintiffs do regarding the

8  class, and specifically the class definition.

9        I don't have a copy of my opinion denying the initial

10  motion for class certification, but my -- I have a recollection

11  of the issues.  And, quite frankly, I think the end-payor

12  plaintiffs face a very, very difficult task, and that

13  specifically I think whatever they do will impact the way in

14  which the defendants approach the issue of summary judgment as

15  to their claims.

16        Now, that's my preliminary view.  Do the end-payor

17  plaintiffs or direct purchasers want to say anything on that

18  issue?  End-payor plaintiffs first.  That's you, Mr. Kodroff.

19        MR. KODROFF:  Thank you, Your Honor.  This is Jeffrey

20  Kodroff.  I think Mr. Wexler, my co-counsel, will be handling

21  this issue.

22        THE COURT:  All right.  Mr. Wexler?

23        MR. WEXLER:  Good afternoon, Your Honor.

24        THE COURT:  Good afternoon.

25        MR. WEXLER:  Good afternoon.  You mentioned the class

definition.  The amended motion we intend to file eliminates consumers from the class definition, which in our view --

THE COURT:  I'm sorry, say that again, please.  I missed that.

MR. WEXLER:  I'm sorry.  Let me make myself more hearable.  The amended motion -- is this better?

THE COURT:  Yes.

MR. WEXLER:  The amended motion that we plan to file eliminates consumers from the class definition, which, when -- in reading your decision carefully, it does eliminate most of your concerns about certifying the class.  It's our view that the -- in terms of the heavy burden that Your Honor said that we have, the third party making the case that the class consists solely of third-party payors really streamlines the issues.  And our intention is to file a motion that does not retread old ground, but simply addresses the road map that you laid out in your opinion regarding what your concerns are and whether or not we can ameliorate them.

So in our view, it's not going to be as complex as the initial motion, which, as Your Honor knows, took a great deal of briefing and two hearings.  The defendants want to limit us to 25 pages, at least our opening brief.  We think we can do that easily.  The expert reports we intend to submit with it are limited to those issues that Your Honor raised as concerns.

1          This is not something that we think requires a

2   sequencing of briefing, but obviously it's up to Your Honor.

3   We think both can proceed simultaneously, both summary judgment

4   and our class motion, because our class motion is not that

5   complex.  Plus the only thing that the defendants were able to

6   articulate how it might affect their briefing on summary

7   judgment has nothing to do with the merits.  The merits are

8   going to be the same whether it's end-payors or direct

9   purchasers, whether there is or is not a class.  It's an

10  antitrust case, so the elements are going to be the same.

11         Having said that, it's obviously in Your Honor's

12  purview to do sequencing.  But if, as the defendants point out,

13  the only issue that would -- that they might address

14  differently on summary judgment is whether we have a class-wide

15  damages model that, assuming Your Honor denies our reviewed

16  motion, that we want to use that damages model for individual

17  damages.  And that's such a discrete issue in the life of this

18  case, and given the complexity of the merits, that that is

19  something that could be briefed -- assuming the hypothetical

20  comes true -- separately from summary judgment on the merits.

21         That's our view.  I'm happy to answer any questions

22  that you have.

23         THE COURT:  No.  I have no questions.  But I'll hear

24  from the defense on this issue.

25         Are you going to speak, Mr. Senator, or someone else?

1          MS. ALLON:  Your Honor, this is Devora Allon for
2    TEVA.  I'll be speaking for the defendants.

3          THE COURT:  All right.  Yes, you may go ahead.

4          MS. ALLON:  So as Your Honor noted, our summary
5    judgment brief will depend in large part on whose claims we are
6    addressing, and there will be a material difference in our
7    briefing and the arguments we make if we're moving against the
8    EPPs as a class or if we're proceeding against individual EPPs
9    who are litigating as opt-outs if the class isn't certified.

10         You know, Mr. Wexler says it's just about damages.
11   It's not just about damages.  It's about the theory of injury.
12   The evidence the EPPs use as a class, the average evidence they
13   use, presumably they would not be using if they were litigating
14   individually.  They would have an entirely different damages
15   model, our arguments would be different, and it would be unfair
16   for us if we had to brief every possible summary judgment
17   argument now, and it's inefficient to go through this exercise
18   twice.

19         There's a second point I'd like to make, which is we
20   certainly appreciate the desire of all the parties to move this
21   case along, and we share that same desire.  But summary
22   judgment in any event cannot be accelerated before a decision
23   on EPP class certification because you have an issue with class
24   notice.  And that issue is that summary judgment is not binding
25   on absent class members until the class notice expires.

1          So if the Court rules on summary judgment before

2    issuing a decision on class certification, or before notice has

3    gone out, or before the notice period has expired, the summary

4    judgment decisions will not bind anyone except for the named

5    plaintiff.  And that will create a substantial prejudice to the

6    defendants because it allows absent class members to decide

7    whether to join the class after they have the benefit of seeing

8    the results of summary judgment.

9          And so for both of these reasons, we think it would

10   inefficient and prejudicial to the defendants to proceed with

11   summary judgment simultaneously with the briefing on an amended

12   motion for class verification.

13         We have proposed a very consolidated schedule for the

14   briefing on the motion -- renewed motion for class

15   certification.  We believe it can be done quickly without a lot

16   of delay, but we think it makes the most sense to wait for

17   summary judgment until we have the Court's decision on that

18   motion because it will govern which arguments we make and

19   against which counter-parties.

20         THE COURT:  How will the contemplated difference in

21   class definition impact defendants' motion for summary

22   judgment, if at all?

23         MS. ALLON:  Well, Your Honor, it does to the extent

24   that we'll be making arguments about the damages model, which

25   we will, and obviously, not knowing are we moving against the

1  original class definition, are we moving against the revised

2  class definition that excludes consumers, or are we moving

3  against individual EPPs as opt-outs?  That is three different

4  scenarios that will lead to three different sets of summary

5  judgment arguments.

6          THE COURT:  All right.  I've heard argument on this

7  issue and --

8          MR. SORENSON:  Your Honor --

9          THE COURT:  -- I would make --

10          MR. SORENSON:  I'm sorry.  I'm sorry, Your Honor.

11  This is David Sorenson for the direct purchaser class

12  plaintiffs.  May I be heard briefly?

13          THE COURT:  Yes, Mr. Sorenson.

14          MR. SORENSON:  I just want to add, as we set out in

15  our submission, we do think that briefing should proceed

16  simultaneously.  Putting aside the issue of when the decisions

17  issue briefing on EPP renewed class and summary judgment, we

18  think can go forward simultaneously, and the principal benefit

19  is to cut down on delay and move this case along.

20          Listening to defense counsel in terms of what -- why

21  does it matter to them in terms of summary judgment, it wasn't

22  clear to me that it -- that -- I just wasn't clear on what they

23  were saying in terms of how much it matters.  They're being

24  told that the EPP class definition is eliminating consumers.

25  They can accept that and move on summary judgment with a --

1  against a class that does not have consumers.  If it turns out

2  that Your Honor does not certify the class and then there is

3  later proceedings with individual third-party payors, that can

4  be dealt with later.  I don't think it will require all that

5  much, and meanwhile the case is moving along.

6       In terms of the point about a notice and decisions,

7  there is no fixed rule that summary judgment comes before or

8  after class certification.  Indeed, Judge Goldberg in the

9  Provigil case -- I went back and looked at this -- he decided

10 two sets of summary judgment motions in that case before

11 deciding the direct purchaser class motion.

12      So it's -- I understand this argument, but it's not

13 as if there is any fixed rule about it.  And, principally,

14 we're just concerned about moving the case.  And I point out

15 that, you know, whenever you rule on a renewed EPP class

16 motion, my expectation is that there will be a 23(f) petition

17 filed potentially by either side, and once that's filed, it

18 wouldn't shock me if one side or the other then seeks to stay

19 proceedings before Your Honor while that wends its way through

20 the Third Circuit.  Unless, you know, Counsel are prepared now

21 to disclaim any such intent or desire to slow things down on a

22 23(f), that's what we're going to face.

23      And so just in the interest of moving the case along,

24 again putting aside exactly when the decisions on summary

25 judgment and EPP class are issued and what sequence, we believe

1   that briefings should go forward.  So that's our view.

2             THE COURT:  Thank you, Mr. Sorenson.

3             Does anyone else wish to add anything on this issue?

4             MR. PERWIN:  Your Honor, just very briefly.  This is

5   Scott Perwin for the Walgreen plaintiffs.  We agree with

6   Mr. Sorenson.  It looks like the sequencing the defendants are

7   asking for is going to cause a significant delay in the

8   progression of the rest of the case, which is going to go

9   forward obviously regardless of what happens to the EPP class.

10  And so we just think it makes more sense to go forward on

11  parallel tracks, putting aside the question of the sequence of

12  decisions, which is up to Your Honor.

13            THE COURT:  All right.  Well, and you don't have to

14  repeat.  No one else who has not spoken has to repeat what's

15  already been said.  I remain of the view that the end-payor

16  plaintiffs' motion -- amended motion for class certification

17  should proceed forward and we should defer any action on a

18  motion for summary judgment.  So we'll proceed in that way.

19            That raises the second question, and the second

20  question is that of limited discovery.  Quite frankly, I didn't

21  see how -- I can recall -- I think it was you, Mr. Kodroff, who

22  kept saying during trial that we've created a record here that

23  will enable the Court to grant our initial motion for summary

24  judgment, no issues.  We've read all the other cases, the cases

25  in which similar motions have been denied.  We plugged all the

1  loopholes in here and we think we're strong.  And that turned

2  out to be dramatically not so in my judgment.  And I, quite

3  frankly, wouldn't see how you would be able to restructure the

4  case in such a way as to come out with an amended motion that

5  would work.

6          And I haven't thought through completely, maybe

7  because I don't have an opinion in front of me, but I haven't

8  thought through the way in which the revised class definition

9  to proceed only with a class of third-party payors and to

10 eliminate consumers from claims.  I haven't thought through how

11 that will play out regarding the issues raised in my opinion.

12 But I'm sure you're not in this wasting time, and hopefully it

13 will -- I'm going to use the term "shorten dramatically" the

14 time it takes between the filing of the amended motion and a

15 decision.

16         But I want to know what additional discovery you

17 think you need, and explain why, why it wasn't done initially

18 and what specific discovery that you need.

19         MR. WEXLER:  Your Honor, this is Ken Wexler.  I'll

20 address that.  We're not seeking other discovery.  What we're

21 seeking to do is submit declarations that address specifically

22 the points that you raise in your opinion.

23         THE COURT:  And you don't think that --

24         MR. WEXLER:  So, for example --

25         THE COURT:  And you don't think that's discovery,

1  Mr. Wexler?

2          MR. WEXLER:  No.  It -- we would certainly produce it

3  with our -- as part of -- I mean, it does entail discovery, of

4  course, because the defendants are going to want to depose the

5  declarant, I understand that, and they may want to submit

6  something in opposition.  But given the guidance that your

7  opinion gave with regarding the facts and the law applicable to

8  the facts, given the recent <u>Suboxone</u> decision out of the Third

9  Circuit, and given the fact that you told us where we had our

10 problems, we think we can, in a very tailored fashion, meet

11 your concerns.

12         It's -- I'll give you the examples.  Laura Craft from

13 OnPoint Analytics would provide a declaration that will address

14 the Court's concerns regarding the method for applying certain

15 exclusions to the revised class definition.  Your Honor was

16 very troubled by the lack of app -- you know, a methodology for

17 applying the exclusions to the class definition.  But there

18 were six exclusions, but only two of which relate to third-

19 party payors, self-funded government plans, and fully-insured

20 plans.  She will provide the methodology and provide the

21 process by which the methodology will be applied in this case,

22 which are the --

23         THE COURT:  Can you --

24         MR. WEXLER:  -- matters that concerned you.

25         THE COURT:  You think with respect to the federal

1  claims, for example, and notwithstanding --

2          MR. WEXLER:  That -- yes, yes.

3          THE COURT:  Okay.  And notwithstanding the examples

4  provided by defendant -- I think there are one or two

5  examples --

6          MR. WEXLER:  Yes.

7          THE COURT:  -- in evidence.

8          MR. WEXLER:  Yes.

9          THE COURT:  She'll be able to come up.

10         MR. WEXLER:  Yeah, because she's already --

11         THE COURT:  (Audio interference).

12         MR. WEXLER:  Yes.  That work has been done already,

13 yes.  And then Eric Miller, who provided a declaration before,

14 he's from a notice firm A.B. Data.  Your Honor expressed

15 concerns about ascertainably facilitating the best notice

16 practicable.  With a third-party payor-only class as opposed to

17 third-party payors and consumers, with respect to third-party

18 payors, they receive direct notice in these cases.  So the

19 ascertainability issue insofar as facilitating the best notice

20 practicable, he'll put on evidence that they will receive the

21 best notice practicable, which is direct notice.

22         And then you expressed an issue regarding our use of

23 averages and said that the -- you know, you distinguished the

24 Flonase case because a sensitivity analysis was performed

25 there.  Well, we have had that done.  Even though you found

1  that there was a de minimis number of uninjured third-party
2  payors, we still have had the sensitivity analysis done to
3  satisfy Your Honor, to more than satisfy Your Honor that we
4  don't have -- and particularly with respect to what you're
5  remembering about Mr. Hughes' chart, that we aren't masking any
6  injuries.

7          And the Suboxone case, by the way, really strengthens
8  our position with regard to the use of averages to demonstrate
9  class-like impact and damages.  So that is the limited nature
10 of what we want to do.  For what I just said, these are not
11 lengthy declarations and they don't require lengthy
12 depositions.

13         THE COURT:  Give me the names of the experts for whom
14 you propose submitting declarations.

15         MR. WEXLER:  Laura Craft from OnPoint Analytics, Eric
16 Miller from A.B. Data, and Meredith Rosenthal, an economist
17 from the Harvard School of Public Health.

18         The other thing we would do as part of our motion is
19 meet Your Honor's request for a trial plan that Your Honor
20 found wanting, and a demonstration on how the case is
21 manageable regarding -- you know, despite so-called minor
22 difference in state law.

23         We can do this.  We tried the Nexium case with a
24 class certified for 26 states, so this is something we can
25 provide Your Honor.  That's something that you were unhappy

1  that we hadn't before, we'll do it now, but it doesn't involve

2  consumers, only third-party payors.

3          THE COURT:  Well, I certainly relied on Nexium in my

4  opinion --

5          MR. WEXLER:  (Audio interference).

6          THE COURT:  -- with respect to antitrust injury

7  particularly.

8          MR. WEXLER:  Yes.

9          THE COURT:  I'm mindful of the fact that that's not a

10 -- that doesn't seem to be a panacea.  That ruling is, I don't

11 want to say unique to that case, because now there are two

12 cases (indiscernible), but Nexium is not, I think, adopted

13 nationwide.

14         MR. WEXLER:  Your Honor, this is Ken Wexler again,

15 I'm only -- I only raised Nexium to demonstrate -- it's for --

16 its demonstration of manageability because in that case --

17         THE COURT:  What I was talking about --

18         MR. WEXLER:  -- we were able to try it.  That's all.

19         THE COURT:  What I was talking about was the

20 discovery you thought you needed.

21         MR. WEXLER:  Yes.

22         THE COURT:  And you said you needed to supplement the

23 record with --

24         MR. WEXLER:  Yeah.

25         THE COURT:  -- three declarations, Craft, Miller, and

1  Rosenthal, and a trial plan.

2         MR. WEXLER:  Yes.

3         THE COURT:  The trial plan I don't think falls into

4  the same category.  I know it doesn't.  With respect to three

5  declarations, you would anticipate the defendants might file or

6  seek -- need to file <u>Daubert</u> motions?

7         MR. WEXLER:  They might.

8         THE COURT:  Take the depositions and file <u>Daubert</u>

9  motions, is that what you contemplate?

10        MR. WEXLER:  I suspect they'll take depositions.  I

11 doubt they'll have grounds for <u>Daubert</u> motions, but I don't

12 know what they're going to do.

13        THE COURT:  All right.  Is there anything else you

14 wish to add to the record, any other supplementing for the

15 record?

16        MR. WEXLER:  Not sitting here right now, no.  We are

17 -- these -- this is where we are right now, and we -- the work

18 has been done with these experts.

19        THE COURT:  All right.  Well, that --

20        MR. WEXLER:  So it's not like we have to start -- it

21 doesn't mean we need much delay, right?

22        THE COURT:  Well, and that's good, and we'll get to

23 that later.

24        I'll hear from the defense on this additional -- I'm

25 not going to call it discovery, but supplementing the record

1   with leave to the defendants to take depositions on the newly

2   identified issues and the experts on -- to file <u>Daubert</u>

3   motions, if they deem it appropriate.

4               MR. SENATOR:  Your Honor --

5               MR. WEXLER:  Your Honor, this is Ken Wexler again.

6   Can I make one comment, one more comment?

7               THE COURT:  Yes.

8               MR. WEXLER:  The only thing I left out that I did

9   want to say is when we received your order and your opinion, we

10  obviously read it very carefully, and we believed that we could

11  not -- I mean, we took at face value that we had the right to

12  file an amended motion if warranted by the facts and applicable

13  law.  We just got it face value and therefore made strategic

14  decisions such as not to bring a 23(f) in reliance on it.

15              So I really think I'm going to appeal to Your Honor's

16  sense of fairness about our ability to do this.  We have no

17  reason to think that we could not.  Having said that, I have

18  nothing else to say.  Thank you.

19              MR. SENATOR:  Your Honor, this is Stuart Senator on

20  behalf of the AbbVie Defendants.  We do not believe that

21  further experts or fact discovery is appropriate here.  There

22  was a significant expert discovery period.  Both parties spent

23  a lot of time on expert discovery, and then we submitted our

24  motions on the basis of that.  The Court's decision did not

25  break new ground, did not enunciate new law.  It took

1  established law and applied it to what the facts were, what the

2  expert record was, and what the factual record was.

3         If the plaintiffs that direct -- the indirect

4  purchaser plaintiffs, end-payor plaintiffs, believe that on the

5  record they created extended facts and expert discovery period

6  can show that an end-payor or a PPP-only class is appropriate

7  where a bigger class of the sort they moved for the first time

8  is not appropriate, Your Honor's opinion gave them the chance

9  to show how that can be done on the record, facts they

10 developed in expert and fact discovery over the past many

11 years.

12         But the idea that they can now roll back and redo

13 expert discovery at not just great expense to us and to them,

14 but at great expense to us, but also with a great amount of

15 time required for (indiscernible) to make up, just sort of rush

16 through and have to deal with their rushed analysis is just not

17 appropriate.

18         Now, the plaintiffs say, oh, it's just three expert

19 declarations.  Well, whether it's a declaration or a report is

20 without moment.  That's a technical issue.  But the fact is

21 there were three main experts that they presented on class

22 certification.  They were Ms. Craft, Mr. Miller, and

23 Dr. Rosenthal, and there was also Winkelman on a few issues,

24 but those were the three main experts.  And now they want to

25 redo every single one of them.

1        And it's not just on minor points.  This sensitivity
2  analysis they say they want to do, that's a completely new
3  methodology and analysis over the analysis that Rosenthal
4  provided before.  So what they're saying is let's just start
5  over on expert discovery, and not because Your Honor announced
6  any new principle of law or any new standard for class
7  certification, just because Your Honor applied the very well-
8  established Third Circuit law, and that's been in numerous
9  cases that they said, at oral argument, as Your Honor noted,
10 they had fully evaluated.

11       So I understand the point that if they think they can
12 take the record that they've developed and fill in the gaps
13 that Your Honor has identified, they can go forward and do
14 that.  You know, I'm obviously not the Court, and so I wouldn't
15 presume to, you know, say anything on that.  Your Honor said
16 what he said in the class cert decision, and we take that and
17 we say, okay, you said it's without prejudice, but they are
18 going ahead and doing it.  But that's a very different
19 proposition from now reopening expert discovery.

20       And while Mr. Wexler has only mentioned expert
21 discovery on this call, his letter also mentioned fact
22 discovery.  He says that they want to go and get new data --
23 Ituvia data that they would present to their economist for
24 analysis.  I don't know what that will involve on their end, or
25 has involved on their end, but they haven't sent that data to

1  us.  It's been almost 70 says since Your Honor's decision.  In

2  their letter to you, they said it would take them four to six

3  weeks to get this data.  We haven't seen it.  We have no idea

4  what is contained in it, the format they've got it in, what

5  issues it raises.  We haven't seen any of that, and so it can't

6  be one-sided.

7        If they get to use new data, we have to examine it,

8  have our experts examine it, potentially fill in the gaps in

9  it, if there are gaps, or make corrections in it if we see

10  there are corrections.  Or if there is alternative data that

11  should be considered, we need to develop that and then go to

12  our experts with that.

13        So this combination that is being suggested as just a

14  slight little thing is really a complete redo of the expert

15  discovery period and a complete redo of the class motions, and

16  without any change in law or legal standard that would justify

17  it at all.

18        And we propose -- and I don't want to switch issues,

19  but it's a related issue, it would be the timing of the class

20  cert motion.  And that is integrally related, obviously, to

21  whether the plaintiff can supplement, as they put it, or as I

22  would put it, redo discovery.  Because if they're just filing a

23  new motion on the same record, obviously it's much cleaner to

24  respond to and could be done much more quickly, and then the

25  replies can be much more quick and Your Honor's consideration

1  could be much quicker.

2          On the other hand, if they're redoing discovery, we

3  need a much greater period of time and, frankly, we're behind

4  the eight ball on that because we don't know what their

5  discovery -- their new discovery is actually going to be, so we

6  don't know how much time we would need.

7          So we believe Your Honor should stick to what we

8  believe was apparent from the ruling in the original class cert

9  motion on June 4th, and if they -- and on the current

10 evidentiary record developed over the past six or seven years,

11 fill in the gaps with a -- and correct the shortcomings with a

12 smaller class, they can agree to that.

13         But if they cannot, frankly, we should just move on

14 and no motions should be filed.  The result should not be a

15 complete do-over litigation on the class certification stage

16 and the damages analysis and all those things.

17         THE COURT:  Mr. Senator, I'm familiar with time

18 involved in performing a sensitivity analysis.  You started

19 talking about that after you identified the issues regarding

20 supplemental declarations or declarations from plaintiffs'

21 experts.  What is involved in a sensitivity analysis?  How much

22 time?  What -- just what is that all about?

23         MR. WEXLER:  Are you asking me, Your Honor?

24         THE COURT:  I'm asking Mr. Senator first, then I'll

25 go back to the plaintiffs.

1          MR. WEXLER:  Okay.  Sure.

2          MR. SENATOR:  Well, Your Honor, it's not my analysis

3     to perform, it's theirs.  And so ultimately it's theirs to say

4     what it is.  And until we see it, I'm not sure how much time it

5     will take us to respond.  But the thing I would note is that

6     it's been now 68 days or so since the class cert decision, and

7     they've sent us literally nothing, not the additional data they

8     want to rely on, not any sort of -- any proposed declaration,

9     nothing, whereas they told Your Honor that it would take them

10    four to six weeks to refile their class certification motion.

11    So, in other words, to be done with all of this.  So I do feel

12    like we're working quite a bit behind the eight ball, having

13    now waited over two months, seeing nothing, and then --

14          THE COURT:  So let's --

15          MR. SENATOR:  Well, anyway, that's what I had.

16          THE COURT:  Let's find out about that.  I think the

17    declarations or supplemental declarations from the three

18    experts stand apart from the sensitivity analysis.  Explain

19    what you have in mind and whether you have the data you talked

20    about, Mr. Wexler.

21          MR. WEXLER:  Yes.  Like I said, Your Honor, the work

22    has been done.  Dr. Rosenthal has drafted a declaration using

23    the data that she took time to get, which obviously we -- you

24    know, I love Mr. Senator's complaining we didn't give him

25    anything when he's fighting for us not to do anything.

1          But in any event, we'll produce the data with the

2    declaration and it's been done.  It's 22 paragraphs.  This is

3    not -- if anybody recalls, it's not the hundreds of paragraphs

4    that were filed previously.  We're not doing a redo.

5          THE COURT:  We don't know that.

6          MR. WEXLER:  I'm telling you -- I'm an officer of the

7    court representing it.  That's the truth.

8          THE COURT:  Well, and who prepared that declaration?

9    Dr. Rosenthal?

10         MR. WEXLER:  Yes.  And so it's going to be part of

11   our motion --

12         THE COURT:  And how will all --

13         MR. WEXLER:  -- if we're permitted to file it.

14         THE COURT:  How long (audio interference) paragraphs?

15         MR. WEXLER:  I'm going to ask Mr. Boley.

16         How many pages, Justin?

17         MR. BOLEY:  I think it's -- I will have to double

18   check.  It is very short.  These are three and four paragraphs.

19   These are not -- it's not 20 paragraphs of 15 and 20 lines,

20   Your Honor.

21         THE COURT:  And the declarations -- you have

22   declarations from the other experts, Craft, Miller, and

23   Rosenthal?

24         MR. WEXLER:  Not -- no, not yet, but the work is

25   done.  I mean, Mr. Miller, we're talking about he's simply

1  going to testify that in this case they will give direct notice

2  to third-party payors.  And again, because Your Honor was

3  concerned about ascertainbility facilitating the best notice

4  practicable, you can't get better notice than direct notice,

5  and so that's all his declaration will say.

6          Ms. Craft, I don't know the length of it.  It's

7  simply going to explain the methodology for applying the two

8  exclusions to the class definition.  And also they will provide

9  -- they will provide cost information to how much it will cost

10 to do that.

11         THE COURT:  Exactly what (audio interference) do you

12 seek to supplement the record with?  Is it correct to say

13 you're talking about three declarations from Craft, Miller, and

14 Dr. Rosenthal?

15         MR. WEXLER:  Yes.

16         THE COURT:  Period?

17         MR. WEXLER:  Period.  Yeah, that's it.

18         MR. SENATOR:  Your Honor, if I could just be heard on

19 that?  That bit is so misleading.  Dr. Rosenthal is doing

20 economic work.  It's not how long a paragraph is.  Often these

21 economists say see my analysis, and you've got a whole chart.

22 And then sometimes it's just a summary chart.  But then we get

23 these backup files and programs and things that have to be run

24 through analysis, and it's all in the -- it's all in the stuff

25 that, frankly, when you see the declaration, is sort of

1   invisible.  But that's where all the analysis is, is in the

2   economics, on Dr. Rosenthal.  So I think that counsel's attempt

3   to say it's just three declarations and they're short doesn't

4   cut it here.

5          And then on the Craft declaration, I truly don't

6   understand what -- why there's anything to add.  They proposed

7   the class definition before and they put forward the

8   exclusions.  Ms. Craft had a full and fair opportunity to put

9   forward whatever methodology, whatever she wanted to say, as

10  did Mr. Miller, as did the plaintiffs.  So I -- it's just a

11  mystery to me why she now needs to come forward with some new

12  declaration that says something new on the exclusion

13  methodology.

14         Mr. Wexler said at the hearing that they had

15  presented everything they wanted to present, everything

16  necessary to present, and they couldn't -- I don't have the

17  direct quote in front of me, but he said words to the effect,

18  frankly, if we haven't done it yet, it's just impossible to do.

19         MR. WEXLER:  Can I defend myself for one second, Your

20  Honor?

21         THE COURT:  I don't think that's necessary.

22         MR. WEXLER:  Okay.

23         THE COURT:  I think there were some statements to

24  that effect --

25         MR. WEXLER:  I believe it.  I truly believe it.

1            THE COURT:  For other's sake (indiscernible).  Well,

2  and what I want to address now, very briefly, because end-payor

3  plaintiffs referred to it, they say that defendants previously

4  agreed to a schedule which included submission of supplemental

5  expert I'm going to call it "discovery," it's declarations or

6  reports.  Tell me about that and the disagreement over whether

7  that was actually done.

8            First, Mr. Wexler and Mr. Kodroff.

9            MR. WEXLER:  Well, Your Honor, we were -- as I said

10  in my letter at the time, I was up front.  I said we want to

11  file a renewed motion.  We would do so in 60 days because at

12  the time we hadn't obtained the data yet, and we were ordering

13  it.  And we had a couple negotiations, me and Mr. Senator and

14  Ms. Allon, regarding 60 -- it was 60 days to file, then 60 days

15  to respond, and there was a disagreement among us -- I mean,

16  the issue arose that -- when class was briefed the first time,

17  all of the experts -- the reports were exchanged and the

18  experts' depositions were taken before any briefing.  And that

19  sort of became an issue.

20            I was concerned that if we did, that we would -- it

21  the was then going to extend the schedule even further.  But we

22  -- it appeared that we were -- that the only -- it appeared we

23  had agreement on 60/60 -- I believe 30, but then Mr. Senator

24  wanted to file a reply, to which I said it's too soon, I'm not

25  going to agree for you to file a reply.

1            In any event, Ms. Allon suggested that we simply
2    agree that if they want to file a reply, we'll meet in good
3    faith; and if there's still a dispute, we'll bring it to the
4    Court.  It seemed like a minor thing.  And then, all of a
5    sudden, a light bulb went on over Mr. Senator's head and he
6    said, no, wait a minute, I'm not so sure I want to -- that you
7    should be able to file anything at all.  And that's where it
8    broke down.  So we just -- you know, and that's where it went.
9            THE COURT:  Mr. Senator, do you wish to respond?
10           MR. SENATOR:  All I'll say, Your Honor, is that we
11   had two discussions.  And over the course of the discussions,
12   the extent to which the EPPs wanted to supplement the record --
13   again, with their terminology -- kept evolving, where
14   originally it sounded like it was a very minimal, almost
15   technical supplement, and then it became we're getting new
16   data, we're doing new economic analysis, and -- you know, it
17   just became apparent that what they were really talking about
18   was a redo of expert discovery.  And that we thought was just
19   not appropriate.
20           MR. WEXLER:  I disagree with that characterization,
21   but --
22           THE COURT:  Well, I've heard --
23           MR. WEXLER:  -- (indiscernible.)
24           THE COURT:  -- your back and forth, and
25   I can't tell, sitting here, the extent to which what is being

1  requested will result in a redo of expert discovery.  It sounds
2  like it's not quite as simple an issue as the EPPs claim, and
3  nor do I think it's as complex as you have stated, Mr. Senator.
4          What I'm going to do is allow this limited
5  supplementing of the record with declarations from the three
6  experts, and I'm going to permit the defendants to depose them.
7  And what we will do with regard to challenges to their reports
8  is in responding -- all of this will be before the motion --
9  the amended motion is filed.  The responses -- I debated about
10  whether the responses to the motions should include challenges
11  to the experts' new declarations or whether I should provide
12  for separate Daubert motions.  And I think separate Daubert
13  motions, focused on the issues, is most appropriate.
14          I don't need a review of the Daubert standard, which
15  is usually five or six pages.  I do not need that.  I'm
16  familiar with the Daubert standard.  And so that's what we'll
17  do.  We'll have this limited discovery.  We'll set a schedule.
18  And we'll do the page limits first and then the schedule.  And
19  we'll have -- the amended motion will be filed.  The defendants
20  will then respond and file Daubert motions.  The end-payors
21  will respond to the Daubert motions and they will have an
22  opportunity to reply to the class certification motion.  So
23  we'll have that motion, the motion (indiscernible) response and
24  reply.  With regard to the Daubert motions, at that stage we'll
25  have Daubert motions and a response.  So we'll plug in a reply

1 to Daubert motions -- in support of the Daubert motions.  We're

2 not going to have surreplies.

3          We're going to try to limit it in page numbers, and

4 we'll talk about page numbers next.  And then when we determine

5 the pages, we'll talk about a schedule.  But what I had in mind

6 is a very tight schedule, start to finish, I think we could do

7 this in three months, and maybe even shorter.  But we'll do

8 that and we'll go through that now.

9          First, page limits.  On the motion for class

10 certification, I think that was made easy by Mr. Wexler who

11 said the defendants have 25 pages, that works for them.  Is

12 that a correct statement?

13          MR. WEXLER:  Yes, it is.

14          THE COURT:  Ms. Senator, you said -- is that a

15 correct statement of your position?

16          MR. SENATOR:  We had proposed 25 pages when -- with

17 the premise that there was not going to be further discovery.

18 Perhaps we can both still do it in 25, but that was our

19 premise.  So I guess I would just like to hold out that

20 depending on what happens with the discovery, we could come

21 back to Your Honor if we needed to, although I have no desire

22 to do that or to write a long brief.

23          THE COURT:  No, no, let's --

24          MR. SENATOR:  And I (indiscernible16) to read it.

25          THE COURT:  That's absolutely true.  And I was really

1  talking just about the motion, and the motion or the amended

2  motion at 25 pages.  And I think we should -- because I don't

3  think you knew you were filing Daubert motions, we can increase

4  that by a little bit.  And how would you split -- well, let me

5  hear your position now, knowing that you're going to be filing

6  a response to the amended motion and a Daubert motion, how many

7  pages for each document?

8             Mr. Senator.

9             MR. SENATOR:  Yes, Your Honor.  I'm just pausing to

10 consider that.  I think what I would suggest would be -- I

11 wondered if we could have a combined total that we could

12 essentially allocate however we wanted, because it's hard for

13 me to envision in the abstract without having seen their three

14 different -- or I guess their motion and their declarations,

15 how I would allocate from one to the next.

16            THE COURT:  Assuming I say "yes," what's your answer?

17            MR. SENATOR:  I guess my suggestion would be 45

18 total, with the assumption it would be a 25-page -- my building

19 blocks in my mind are a 25-page motion, opposition, and 10 page

20 each Daubert.  So that would be a total of 45, although I did

21 reallocate it.

22            THE COURT:  Well, I don't think you need -- if you

23 scrap the Daubert standard, I don't think you need 10 pages for

24 each Daubert motion.  But I'll reduce that just a little bit to

25 a total of 40, and you can allocate it.  A total of 40 pages.

1  your response to the amended motion and your filings -- well,

2  not -- I guess you can file two Daubert motions.  It really

3  doesn't matter.

4           Next we're going to have the plaintiffs' response to

5  the Daubert motions, and I'll grant leave to file a reply on

6  the class certification motions.  And I think since we allowed

7  you to combine, we'll allow the plaintiffs to combine.  What's

8  your answer then?

9           MR. WEXLER:  Your Honor, this is Ken Wexler.  I think

10 35 pages should be enough.

11          THE COURT:  I think a little -- I was thinking a

12 little less.  I can go 30 -- we'll make it 30, Mr. Wexler.

13          MR. WEXLER:  Okay.

14          THE COURT:  And finally, that will make -- the

15 amended motion for class certification fully briefed.  The

16 Daubert motions we'll give the defendants, in order to balance

17 this, an opportunity to file a reply in further support of the

18 Daubert motions.

19          How many pages, Mr. Wexler?

20          MR. SENATOR:  I think that would be us, Your Honor

21          MR. WEXLER:  That's them.  I was going to say zero.

22     (Simultaneous speaking)

23          THE COURT:  I'm sorry.  I misspoke. Yes --

24          MR. SENATOR:  That's okay.

25          THE COURT:  Mr. Senator, I don't think Wexler is

1   filing a reply in (indiscernible) support of the bankruptcy.

2                MR. WEXLER:  I'd suggest 15, Your Honor.

3                THE COURT:  Okay.  15 pages.  Now let's talk about

4   time.  I think we've got the (indiscernible) of it.

5                MR. WEXLER:  Your Honor, there's a potential -- this

6   is Ken Wexler again, for the record.  There's a potential issue

7   that I see, is that if they respond and they want to introduce

8   contrary expert declarations, there's no room for us to take

9   depositions or file our own Daubert.  I don't know that they

10  will, but that was left out.

11               THE COURT:  Mr. Wexler, what's -- I'm sorry.

12  Mr. Senator, what's your thought?

13               MR. SENATOR:  I don't know what we will do on our

14  experts as a result of theirs.  I'd be surprised if we didn't

15  do -- put anything in evidentiary.  If they want to challenge

16  those by Daubert, I suppose they can do that.

17       (Simultaneous speaking)

18               MR. WEXLER:  Thank you.

19               THE COURT:  And they would say the same about you.

20  Now, when would you do that, with your response?

21               MR. SENATOR:  Well, we could -- if they're doing --

22  as Your Honor mentioned, they would submit their -- or serve

23  their new or supplemental expert reports before the filing of

24  the motion, the question is really the schedule.

25               They've now had almost 70 days, and I don't know when

1   the date is that will be picked by the Court for them to

2   actually serve them, but they're going to have at a minimum, I

3   would assume, about 80 days to put these things together.  And

4   just in terms of scheduling, I would think if they -- I don't

5   want to suggest too long a period for us to respond and to

6   delay the briefings starting on the motion.  On the other hand,

7   I also don't want to (audio interference).

8            One thing they could do is they could submit their

9   expert reports very quickly now, and then have a little bit

10  more time for their filing their actual motion.  And then --

11  you know, so we could get started working on their expert

12  reports and what we're going to do in response to them.  And

13  then we would put all -- put our contrary experts, to the

14  extent we have them, with our opposition briefs.  But there

15  would be that little bit of overlap so that some of our time in

16  evaluating their expert reports and developing our own

17  responses wouldn't be -- you know, would be time they'd also be

18  spending finishing their opening briefs.

19            MR. WEXLER:  I don't follow, Your Honor.  It seems --

20            MR. SENATOR:  So what I'm saying is, say Mr. Wexler's

21  reports are due 10 days from now; his brief is due, whatever,

22  20 days from now; and then our opposition and response experts

23  are due the 40 days thereafter.  That means our total time for

24  our experts is 60 days, and -- but the schedule isn't pushed

25  out as far.  That's all.  As opposed to our doing experts

1  before he even files his opening brief, which then requires the

2  whole schedule to be pushed out further.

3         THE COURT:  Well, let's go ahead and use some real

4  time now and plug in these events, because we haven't talked

5  about scheduling of any expert depositions, and we haven't

6  talked about the date for admission of expert declarations and

7  responsive declarations, and we ought to do that.

8         And I guess we start with the proposition -- I guess

9  we're going to start -- we will start with how long it will

10  take to file an amended motion for class certification with

11  these (indiscernible) declarations.

12         MR. WEXLER:  Your Honor, Ken Wexler again.  I -- we

13  were planning on advising the Court that we would do so -- we

14  would file our motion with supporting declarations in 21 days.

15         THE COURT:  Okay.

16         MR. WEXLER:  If we did that, then they would be able

17  to build in time to take our experts' depositions and --

18         THE COURT:  All right.  Let's just go through the

19  current schedule.

20         MR. WEXLER:  Yes.

21         THE COURT:  21 days and -- the start -- I'm looking

22  at a calendar.  That would take us to September 8th.  No.

23         MR. WEXLER:  September 1st.

24         THE COURT:  That's Labor Day.  We'll make it

25  September 4th, a little more than 21 days.

1           All right.  Next thing we have to schedule would be

2   depositions of plaintiffs' experts.

3           MR. WEXLER:  I would offer that the depositions be

4   taken and they file their (indiscernible) 60 days after

5   September 4.

6           MR. SENATOR:  I think that really would cramp us,

7   frankly.  I would request 30 days to do the deposition, which

8   will be -- you know, we have to digest their reports, we have

9   to talk to our experts, figure out what the issues are, we have

10  to look at the data.  It's not a deposition that we're going to

11  do overnight.

12          MS. ALLON:  Your Honor, this is Devora --

13          THE COURT:  These depositions -- let me just finish,

14  then I'll -- then you can speak.

15          These depositions -- first of all, these reports, as

16  I hear what's being said, are not going to be that complex.

17  They're going to be much, much, much scaled down from anything

18  that you got originally, because the issues are much more

19  narrow.  They're going to address primarily the

20  ascertainability issues that I raised in my opinion.  And I'm

21  told that of the six or seven -- I think there were seven major

22  ascertainability issues, five are gone, two remain.  So I don't

23  think we're talking about full-scale expert discovery again.

24          And you're talking about three experts.  I think --

25  if anything, you'd have the benefit of scheduling depositions

1  and then scheduling a response to the motion.

2          MS. ALLON:  Your Honor, this is Devora Allon.  Can I

3  just make a point briefly?

4          THE COURT:  Yes.

5          MS. ALLON:  Just from TEVA's perspective, first of

6  all, I would say, you know, the second half of September and

7  into October is the Jewish holidays.  That's going to

8  materially affect our ability to be involved in depositions.

9  So that's the first point I would make.

10          And then the second point I would make is I expect

11  that to the extent we are going to put in responses, we will

12  have two to three experts who will have to put in responses.

13  But before we can be prepared to depose their experts, we'll

14  need to have our experts assess the data and digest it and help

15  us to prepare.

16          And so my suggestion would be -- I don't think

17  there's a need for an interim deadline for depositions, but I

18  would request a total of 90 days to put in our opposition brief

19  and any opposition reports or responding reports.

20          THE COURT:  All right.  Well, it's not that I'm being

21  harsh, but I think you're overdoing it.  If the schedule

22  doesn't work, you'll seek an amendment.  But I'm going to give

23  you 60 days to accomplish that.  So it will take us from

24  September 4th to November -- make it November 6th.  That's the

25  date by which defendants take depositions of plaintiffs'

1  experts, respond to EPP's motion -- amended motion, and submit

2  expert reports.  If that proves to be too tight, well, then

3  tell us.

4          All right.  Now we have to schedule Daubert motions.

5  So same schedule?  Might have 60 -- you have 60 days, can you

6  do that?

7          MR. WEXLER:  Well, that would be -- they'd be filing

8  -- this is Ken Wexler.  They'd be filing their Dauberts with

9  their responses, right?

10          THE COURT:  Yes.

11          MR. WEXLER:  Okay.  Well, and then -- Your Honor,

12  with regard to the reply, because once they file their

13  responses, they're saying they will submit expert declarations

14  or responses.  If we could file our reply -- take the

15  depositions and file their reply in 45 days, that would work

16  for us.

17          THE COURT:  This is your reply to the --

18          MR. WEXLER:  In support of class, yes.

19          THE COURT:  They will have filed Daubert motions, so

20  you'll file responses to their Daubert motions, take deps, file

21  your own Daubert motions.  Okay.  And you need 45 days, so

22  October 9th.

23          UNIDENTIFIED:  November --

24          THE COURT:  I'm sorry.  November 9th.  November 6th.

25  November 6th.  45 days will take us probably right to

1  Christmas.

2          UNIDENTIFIED:  I think before.  Let's see.

3          THE COURT:  Yeah, it will.  Let's press that to --

4  make it November -- December 18th.

5          MR. WEXLER:  All right.  We'll make it work, Your

6  Honor.

7          THE COURT:  Okay.

8          MR. SENATOR:  And Your Honor, I -- this is Stuart

9  Senator.  I assume with that there's no further expert reports,

10  no rebuttal expert reports or further evidence to be introduced

11  at that stage.

12          THE COURT:  I don't think so.  Not on this record

13  that we're developing today.  But we've got -- we've got a

14  reply to the amended motion and Daubert motion and this is

15  plaintiffs' -- that's the plaintiffs' experts and responses and

16  defendants' responses I assume for plaintiffs' motion, and

17  defendants' expert reports.  Then we have --

18          MR. SENATOR:  Then we would just need our reply --

19  the defense reply on the Daubert motions.

20          THE COURT:  On Daubert.

21          MR. WEXLER:  Your Honor, I don't believe we have

22  replied on the Dauberts previously.  If that helps.

23          THE COURT:  The Dauberts that we've ruled on.

24          MR. WEXLER:  Yes.

25          THE COURT:  Well, since we're lumping together what

1  needs to be done, page limit wise, I'm not so concerned about

2  that.  And the only thing remaining now is the defendants'

3  reply on Daubert issues.  And that's --

4            MR. SENATOR:  Well, also the EPP reply.

5            THE COURT:  Pardon me?

6            MR. SENATOR:  The EPP reply --

7            THE COURT:  Yes.  Yes, but we've already covered that

8  in pages.

9            MR. SENATOR:  Right.

10           THE COURT:  And (indiscernible) but let me make sure

11  this works, the dates work.  And we still don't have a date on

12  defendants' reply on Daubert.  I think we'll do it right after

13  the first of the year, January 8th.  And that will be ten pages

14  for him (indiscernible) reply.  The amended motion filed --

15           MR. SENATOR:  Your Honor --

16           THE COURT:  Yes?

17           MR. SENATOR:  Could I just make one request?  We

18  still feel a bit backed up on the 60 days through the Jewish

19  holidays, with opposition and the preparation of the defense

20  expert report.  And so my proposal is not to change that

21  November 6th date, but to see if plaintiffs could serve their

22  -- not their briefs, which is due September 4th -- their

23  opening briefs, but the expert reports that they've been

24  preparing this summer.  If those can be served in the next two

25  weeks, say by August 25th, two weeks from today, so we can have

1 a bit of extra time and a bit of a head start before Labor Day

2 in sharing those with our experts and getting them going on

3 that.  And that seems to comport with what Mr. Wexler was

4 saying he needed when he was explaining to Your Honor early in

5 the call why these weren't that significant or extensive

6 reports.

7          THE COURT:  Can you do that, Mr. Wexler?

8          MR. WEXLER:  We can try, yeah.  I mean, I -- there

9 are some technical things that I need to make sure of.  But you

10 can put it down and if we need relief from it, we'll give you a

11 reason.  But as of sitting here right now, I think we can meet

12 that.

13          THE COURT:  Plaintiffs' expert reports.  The date we

14 have picked now was September 4th.  And if we back up two

15 weeks, August -- two weeks would take us back to August 21st.

16 Today is August 11th.

17          MR. WEXLER:  I thought Mr. Senator -- and you can

18 correct me if I'm wrong, Stuart -- was asking us to move it up

19 a week, so that would make it August 28th.

20     (Simultaneous speaking)

21          MR. SENATOR:  The date I had asked for was August

22 25th.

23          THE COURT:  Mr. Senator --

24          MR. SENATOR:  The date I had asked for was August

25 25th, two weeks from today.  But obviously if Mr. Wexler can do

1   it on August 21st, 10 days from today, that would be (audio

2   interference).

3           THE COURT:  Well, no,  Well, I didn't get the date.

4   And what we'll do is we'll pick the earlier of the two dates

5   and see if it works, and that would be August 25th.

6           Let me go through this schedule.  And that will --

7   just to make sure.  The amended motion September 4th.  The

8   amended expert reports or declarations, or supplemental expert

9   reports or declarations, August 25th.  Depositions and --

10  depositions of plaintiffs' experts, defendants' response to

11  end-payor plaintiffs' motion, and defendants' expert reports

12  November 6th.

13          Next on the schedule, plaintiffs' reply in further

14  support of their motion.  And Daubert motions, by the way, I

15  forgot, November 6th.  Plaintiffs' reply in further support of

16  their amended motion, their response to defendants' Daubert

17  motions, and the Daubert reports, the -- I'm sorry, the expert

18  reports for the defense, what date had we selected?

19          MR. SENATOR:  The defense expert reports would be the

20  same, November 6th date, as the defense opposition brief.

21          THE COURT:  Okay.  The next, December 18th,

22  plaintiffs' reply in further support of the amended motion, a

23  response to the defendants' Daubert motions, and plaintiffs'

24  Daubert motions, I think -- yes, plaintiffs' Daubert motions,

25  and the date for that is December 18th.  And defendants' --

1 allowing replies to the Daubert motion -- I just want to be

2 sure I've covered everything.

3          MR. SENATOR:  Your Honor, if I just may --

4          THE COURT:  Yes.

5          MR. SENATOR:  -- you as my -- on behalf of my team,

6 I'm just trying to reply on Daubert.  Could we have the

7 weekend?  So not January 8th and instead Monday, January 11th?

8 That's the first week-- although this year is obviously

9 unprecedented, that's the first week of the year when -- I

10 don't know when people will be back from what hopefully will be

11 allowable vacation.

12          THE COURT:  All right.  Okay.  January 11th then.

13 And the only thing filed then will be the Daubert reply, ten

14 pages.

15          UNIDENTIFIED:  Have we covered the schedule?

16          MR. WEXLER:  That's actually -- Your Honor, Ken

17 Wexler.  That has been a response to our Dauberts, but we need

18 a date for reply in support of our Dauberts --

19          MS. ALLON:  Well, just to be clear, Mr. Wexler,

20 that's our opposition to your Dauberts.  I think the schedule

21 is each side gets the opportunity to oppose Dauberts, but we're

22 not going to have another round of reply briefs.

23          THE COURT:  I didn't say that.  I thought we were

24 allowing -- I think I've already included reply briefs.

25          MS. ALLON:  On the Dauberts, Your Honor.

44

1          MR. WEXLER:  Yes.  He did include --

2          THE COURT:  -- so I think you're wrong, but the

3   bottom line -- that's your response -- defendants' --

4   plaintiffs' response, defendants -- on January 11th we --

5          MR. WEXLER:  I believe that's defendants' response to

6   our Dauberts --

7          THE COURT:  Yes.

8          MR. WEXLER:  -- EPP's Dauberts, right?  So then we

9   just need a time for a reply, and a page limit.

10          THE COURT:  Right.  Well, the page limit, we'll limit

11   the pages in the responses and replies to ten.  And plaintiffs'

12   reply, two weeks later, January 25th.

13          I think this works.  I have a law clerk and a legal

14   assistant on the call; and if I don't get it straight, I'm sure

15   they will.  We've really taken issues that -- most have been

16   resolved by agreement, although not surprising to me that he

17   didn't agree to anything.

18          MR. WEXLER:  Sad but true.

19          THE COURT:  Next, I'd like to talk about the

20   schedule, any remaining scheduling matters.  I'm not sure.  I

21   think we've talked about page limits, and I think the schedule

22   is done.  Is there anything else that we have to do?

23          MR. SORENSON:  Your Honor, this is David Sorenson.

24   May I be heard briefly?

25          THE COURT:  Yes.

1          MR. SORENSON:  Just -- I understand Your Honor's

2    rulings on the sequencing, but what is now apparent is that if

3    we're waiting until after the EPP renewed motion is not just

4    briefed but decided before we move on to summary judgment for

5    the rest of the case, we're talking about summary judgment

6    briefings starting, you know, I don't know when next year.

7    First quarter, second quarter, I don't know when we would be

8    starting.

9          So I would just ask Your Honor to at least consider

10    the possibility of starting summary judgment briefing before

11    then, if not now, which I understand you're not inclined to do,

12    but perhaps overlap with this EPP briefing, so that at some

13    point in the next -- before the end of the year, we can get

14    started on briefing on summary judgment and substantive

15    Dauberts.

16          And second, I want to come back to the 23(f) point I

17    made earlier.  Whoever wins, whoever loses the EPP class

18    renewed motion, I would fully expect, having seen this, that

19    someone is going to file a 23(f).  And I wanted to flag that

20    because what I fear is that whoever files that 23(f) will

21    accompany it with a motion to stay proceedings before Your

22    Honor and put off summary judgment briefing even longer.  And I

23    just wanted to flag that, because obviously that would just add

24    even more and more, months and months of delay.  So I just

25    wanted to touch base on both of those things before we ended

1  the call.

2          THE COURT:  I wish -- I see, Mr. Sorenson.  Well, I

3  think what you want me to do is to press a button and make all

4  of these problems go away.  And unfortunately, they can't and

5  won't.  I've already ruled that summary judgment I don't think

6  can fairly be deferred -- can be handled at this time.  And in

7  order to be fair to both sides, it will be deferred.  I've

8  ruled --

9          MR. SORENSON:  Yes, Your Honor.

10          THE COURT:  -- for an hour and a half plus, and I'm

11  not going to change my mind.  If you're telling me that the

12  task ahead is arduous and long and difficult, thank you.  I got

13  that.  And you've made it so.  And that's your right.  You have

14  a right to do that.  But what you just told me tells me

15  nothing.  What it does tell you is that maybe you ought to have

16  some serious settlement discussion, because we are looking at a

17  long, expensive path.  And you pretty much know where you are.

18  The past direct purchasers are certified, the end-payor

19  purchaser class was not.  I think the end-payor purchasers have

20  a difficult task ahead of them in order to succeed on class

21  certification.  They think otherwise.  I'm giving them a

22  chance.

23          Maybe this is an opportunity to discuss settlement.

24  Although if you don't, the case will be on hold for quite some

25  time, because there won't be very many developments that will

1  make it easier for you to decide any issues regarding

2  settlement between now and sometime in, I would say, mid-2021.

3          Is there -- well, would it be helpful to you if I

4  again used my typical provision, which is the settlement

5  provision, direct that you meet and confer and advise me, in a

6  certain period of time, that you think further settlement

7  (indiscernible).

8          Refresh my recollection.  I've got hundreds of files,

9  and none of the paper in front of me.  And I haven't downloaded

10 the voluminous docket entries.  I have some of them.  Has there

11 been settlement conferencing in this case?  I think there has.

12         MR. SORENSON:  Well, Your Honor -- this is David

13 Sorenson again.  There was -- and I don't have it right in

14 front of me, but my memory is that at your direction we did --

15 I think all plaintiffs, actually, made settlement demands of

16 defendants --

17         THE COURT:  -- yes.

18         MR. SORENSON:  -- and -- right.  And the defendants,

19 at least to the direct purchaser class, did not make a counter-

20 offer of any type at that time, and that's -- that was it.

21         And then there was some discussion, I think, on a

22 couple of conference calls with Your Honor in which I think --

23 and obviously the defendants will correct me if I'm wrong about

24 this, but I think there was a general view among the parties

25 that settlement discussions would be profitable again after

1  summary judgment was briefed, before a decision.

2      Perhaps -- I will -- can certainly consult with my

3  colleagues -- from the plaintiffs' standpoint whether, you

4  know, something before then would be productive on our side.

5  I'll certainly talk with my colleagues and other plaintiff

6  groups about that.  But that's, I think, where it has last

7  stood by my memory --

8      THE COURT:  I think your recollection is correct.

9  And it is strange, but it was at your suggestion -- I mean the

10 collective you, not just you, Mr. Sorenson -- that settlement

11 again be discussed after the briefs on summary judgment were

12 filed, but before that -- before those motions were decided.

13     Well, I think what I'm going to do, without asking

14 any more questions, in view of this lengthy schedule, is to

15 give you a month to meet and confer, and jointly report to me

16 on whether you believe either settlement conferencing before a

17 magistrate judge or some other form of ADR, such as -- and I

18 won't specify, but just mediation -- private mediation, might

19 be of assistance in resolving the case.

20     And if yes on that, tell me when we'd be ready to

21 proceed.  And also I'll give you an opportunity at that stage,

22 whenever it occurs, to tell me whether you both agree -- or all

23 agree that the scheduling order can be vacated.  In order to

24 proceed with either settlement conferencing or other ADR such

25 as mediation, you all must agree.

1          And in order to agree -- in order to obtain a vacator

2    of the schedule, to take you offer the schedule that you're on,

3    you'll all have to agree to the vacator.  If the schedule is

4    vacated, and the case is not settled, I would just pick where

5    we left off.  You wouldn't be penalized.  You'd be able to

6    argue to me as to how much time -- additional time you need.

7    And I'll give you 30 days to submit that report.

8          MR. SORENSON:  Okay, Your Honor.  Yes, Your Honor.

9    And this is Mr. Sorenson again.  Your Honor, I apologize.  I

10   was not trying to imply that it was as easy as pushing a

11   button.  I appreciate this is a complex case with a lot of

12   lawyers and a lot of work.  And I didn't mean to suggest

13   otherwise.

14         THE COURT:  Well, I'm glad you didn't.  Your class

15   certification motion is a lot easier to address than the end-

16   payor plaintiffs'.  But I suspect that the help with the new

17   motion, the amended motion, is easier than the last one, which

18   I found very difficult.  I think we got it right, but who

19   knows.

20         In any event, you'll get a schedule covering

21   everything that we've agreed upon, and also the 30-day -- the

22   roughly 30-day settlement point.

23         Okay.  Now, in case we come up with some hiccups, I

24   don't want to put everybody on the line to discuss tweaking of

25   the schedule if we find there's some issue as we try to put all

1  these words to paper.  I want to be able to talk to all liaison
2  counsel, and we might do that -- we might have to do that,
3  might not.

4         In addition to everything else, I should tell you
5  that the law clerk familiar with the case -- we lost a law
6  clerk a year ago.  Now we have another law clerk familiar with
7  the case, he's leaving Friday.  We're going to get this order
8  out before then, but in the event we have any issues, I will
9  take it up with liaison counsel.  And because I want the issues
10 resolved quickly, I'll rely on the liaison counsel to report
11 and will not invite other counsel to participate.  What we'd be
12 talking about is perhaps an inconsistency in the scheduling or
13 a question that we had regarding the schedule.

14        And now one last question for the electronic sound
15 recording operator.  How much time will it take to get a
16 transcript, as soon as we can get one?

17        THE CLERK:  Judge, I can do a daily request, and
18 probably Thursday.

19        THE COURT:  That's great.  I thank you very much for
20 (indiscernible) have a report of your name, but why don't you
21 put your name on the record so counsel can identify you.

22        THE CLERK:  My name is Carl Hauger.

23        THE COURT:  Thank you very much for your patience.
24 I'm certain the record will be clear and concise and thank you
25 for your service today.  You were drafted.  You're not usually

1  assigned to me, and this was a long and very technical

2  conference, and I forgot to ask counsel to identify themselves

3  when we started, and I think you got the identification.  It

4  wasn't that difficult.  In any event, thank you very much for

5  your service.

6          Is there anything else you have to address?

7  Plaintiffs first, Mr. Wexler, Mr. Kodroff?

8          MR. WEXLER:  No, Your Honor.

9          THE COURT:  Mr. Sorenson, for the direct purchaser?

10          MR. SORENSON:  No, Your Honor.

11          THE COURT:  All right.  Now for the defense,

12  Mr. Senator?

13          MR. SENATOR:  No, Your Honor.  Thank you for your

14  time today.

15          THE COURT:  You're welcome.

16          Ms. Allon, anything --

17          MS. ALLON:  No, Your Honor.  Thank you.

18          THE COURT:  Anyone else?  Walgreens?  CVS/Rite-Aid?

19  Giant Eagle?

20          UNIDENTIFIED:  No, Your Honor.

21          UNIDENTIFIED:  No, Your Honor.

22          THE COURT:  All right.  I'll end the conference and

23  we'll try to get an order out promptly.  To the extent that my

24  legal assistant thinks she will have to do the order, she will

25  not.  To the extent my law clerk thinks he will have to do the

1 | order, he will.  And I want you to call me right back.
2 |          THE CLERK:  Will do, Your Honor.
3 |          THE COURT:  All right.  Thank you very much.
4 |          ALL COUNSEL:  Thank you, Your Honor.
5 |          THE COURT:  Take care.  Bye now.
6 |          UNIDENTIFIED:  You, too.
7 |     (Proceedings concluded at 4:45 p.m.)
8 |                              *  *  *  *  *
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |

1        **C E R T I F I C A T I O N**

2

3          I, Ilene Watson, court-approved transcriber, hereby

4  certify that the foregoing is a correct transcript from the

5  official electronic sound recording of the proceedings in the

6  above-entitled matter.

7

8

9  _____

10 ILENE WATSON, AAERT CER/CET 447    DATE:  August 13, 2020

11 ACCESS TRANSCRIPTS, LLC

12

13

14

15       **C E R T I F I C A T I O N**

16

17         I, Lisa Luciano, court-approved transcriber, hereby

18 certify that the foregoing is a correct transcript from the

19 official electronic sound recording of the proceedings in the

20 above-entitled matter.

21

22

23 _____

24 LISA LUCIANO, AAERT CET 327    DATE:  August 13, 2020

25 ACCESS TRANSCRIPTS, LLC

# EXHIBIT C

| | |
|---|---|
| **From:** | Justin Boley |
| **To:** | Senator, Stuart; XT Allon, Devora |
| **Cc:** | Young, Blanca; Wu, Jeffrey; XT Russell, Alexandra; Kenneth Wexler; "srobertson@cohenmilstein. com"; Tyler Story; Jeffrey L. Kodroff |
| **Subject:** | RE: Niaspan |
| **Date:** | Thursday, December 17, 2020 1:30:53 PM |

Stuart,

We respectfully disagree with your position.  We intend to file a motion for leave to file a reply report and will attach the proposed reply report to our motion papers, as has been the practice in this case when filing such motions. Defendants will have an opportunity to file an opposition and are free to present whatever arguments they wish to at that time.

While we disagree with your position, we do not intend to quote from Ms. Craft's reply report in our reply papers and will not attach it as an exhibit.  We reserve all rights to ask the Court to allow us to supplement the record as necessary should our motion for leave be granted.

**Justin N. Boley**

**WEXLER WALLACE LLP**

55 West Monroe, Suite 3300 // Chicago, IL 60603

T 312.346.2222 // F 312.346.0022 // DIRECT T 312.261.4542

---

**From:** Senator, Stuart <Stuart.Senator@mto.com>
**Sent:** Wednesday, December 16, 2020 5:41 PM
**To:** Justin Boley <jnb@wexlerwallace.com>; XT Allon, Devora <devora.allon@kirkland.com>
**Cc:** Young, Blanca <Blanca.Young@mto.com>; Wu, Jeffrey <Jeffrey.Wu@mto.com>; XT Russell, Alexandra <alexandra.russell@kirkland.com>; Kenneth Wexler <kaw@wexlerwallace.com>; 'srobertson@cohenmilstein. com' <srobertson@cohenmilstein.com>; Tyler Story <tjs@wexlerwallace.com>
**Subject:** RE: Niaspan

Justin,

Defendants oppose an additional "reply" report by M.s Craft, as set out more fully in the attached letter.

**Stuart N. Senator** | **Munger, Tolles & Olson LLP**
350 South Grand Avenue | Los Angeles, CA 90071
Tel:  213.683.9528 | stuart.senator@mto.com | www.mto.com

***NOTICE***
*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law.  It is not intended for transmission to, or receipt by, any unauthorized person.  If you have received this message in error, do not read it.  Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected. Thank you.*

---

**From:** Justin Boley <jnb@wexlerwallace.com>

**Sent:** Wednesday, December 16, 2020 10:29 AM
**To:** Senator, Stuart <Stuart.Senator@mto.com>; XT Allon, Devora <devora.allon@kirkland.com>
**Cc:** Young, Blanca <Blanca.Young@mto.com>; Wu, Jeffrey <Jeffrey.Wu@mto.com>; XT Russell,
Alexandra <alexandra.russell@kirkland.com>; Kenneth Wexler <kaw@wexlerwallace.com>;
'srobertson@cohenmilstein. com' <srobertson@cohenmilstein.com>; Tyler Story
<tjs@wexlerwallace.com>
**Subject:** RE: Niaspan

Stuart,

Thanks for agreeing to the additional pages.

As the moving party, we bear the burden on this motion and believe a rebuttal report is warranted
on this basis alone.  But Mr. Dietz also went beyond the scope of Ms. Craft's report and the Court's
opinion, including in dealing with the ASO/TPA issue and the Optum data.

Let us know your position.

Thanks,

**Justin N. Boley**

**WEXLER WALLACE LLP**
55 West Monroe, Suite 3300 // Chicago, IL 60603
T 312.346.2222 // F 312.346.0022 // DIRECT T 312.261.4542

---

**From:** Senator, Stuart <Stuart.Senator@mto.com>
**Sent:** Wednesday, December 16, 2020 12:07 PM
**To:** Justin Boley <jnb@wexlerwallace.com>; XT Allon, Devora <devora.allon@kirkland.com>
**Cc:** Young, Blanca <Blanca.Young@mto.com>; Wu, Jeffrey <Jeffrey.Wu@mto.com>; XT Russell,
Alexandra <alexandra.russell@kirkland.com>; Kenneth Wexler <kaw@wexlerwallace.com>;
'srobertson@cohenmilstein. com' <srobertson@cohenmilstein.com>; Tyler Story
<tjs@wexlerwallace.com>
**Subject:** RE: Niaspan

Justin,

The page increase is fine.  We'd like to understand more about what you envision substantively for
the proposed Craft rebuttal report. As you know, the main thrust of the opposition was that Craft
and EPPs had not made the required showing, which doesn't seem to us to merit a reply report,
especially on a renewed motion, following the various other documents that Craft and EPPs have
already submitted.

Stuart

**Stuart N. Senator | Munger, Tolles & Olson LLP**
350 South Grand Avenue | Los Angeles, CA 90071
Tel:  213.683.9528  |  stuart.senator@mto.com  |  www.mto.com

***NOTICE***
*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law.  It is not intended for transmission to, or receipt by, any unauthorized person.  If you have received this message in error, do not read it.  Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected. Thank you.*

**From:** Justin Boley <jnb@wexlerwallace.com>
**Sent:** Wednesday, December 16, 2020 9:05 AM
**To:** Senator, Stuart <Stuart.Senator@mto.com>; XT Allon, Devora <devora.allon@kirkland.com>
**Cc:** Young, Blanca <Blanca.Young@mto.com>; Wu, Jeffrey <Jeffrey.Wu@mto.com>; XT Russell, Alexandra <alexandra.russell@kirkland.com>; Kenneth Wexler <kaw@wexlerwallace.com>; 'srobertson@cohenmilstein. com' <srobertson@cohenmilstein.com>; Tyler Story <tjs@wexlerwallace.com>
**Subject:** Niaspan

Stuart, Devora,

EPPs seek Defendants' consent to extend the page limit for their upcoming class certification reply by 5 pages, in parity with Defendants' recent filing, and to file a short rebuttal report on behalf of Ms. Craft, addressing the report of Mr. Dietz and his related testimony.

Please let us know your position by this evening if possible.  Thanks.

Justin N. Boley
Wexler Wallace LLP
312.261.4542 (direct)
312.550.0450 (cell)
jnb@wexlerwallace.com

MUNGER, TOLLES & OLSON LLP

RONALD L. OLSON
ROBERT E. DENHAM
JEFFREY I. WEINBERGER
CARY B. LERMAN
GREGORY P. STONE
BRAD D. BRIAN
BRADLEY S. PHILLIPS
GEORGE M. GARVEY
WILLIAM D. TEMKO
JOHN W. SPIEGEL
DONALD B. VERRILLI, JR.*
TERRY E. SANCHEZ
STEVEN M. PERRY
MARK B. HELM
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
KATHLEEN M. M'DOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
HENRY WEISSMANN
KEVIN S. ALLRED
JEFFREY A. HEINTZ
JUDITH T. KITANO
JEROME C. ROTH
GARTH T. VINCENT
TED DANE
STUART N. SENATOR
MARTIN D. BERN
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
KELLY M. KLAUS
DAVID B. GOLDMAN
DAVID H. FRY
LISA J. DEMSKY
MALCOLM A. HEINICKE
TAMERLIN J. GODLEY
JAMES C. RUTTEN
RICHARD ST. JOHN
ROHIT K. SINGLA
LUIS LI
CAROLYN HOECKER LUEDTKE
C. DAVID LEE
MARK H. KIM
BRETT J. RODDA*
FRED A. ROWLEY, JR.
KATHERINE M. FORSTER
BLANCA FROMM YOUNG
ROSEMARIE T. RING
MELINDA EADES LEMOINE
SETH GOLDMAN

GRANT A. DAVIS-DENNY
JONATHAN M. BLAVIN
DANIEL B. LEVIN
MIRIAM KIM
MISTY M. SANFORD
HAILYN J. CHEN
BETHANY W. KRISTOVICH
JACOB S. KREILKAMP
JEFFREY Y. WU
LAURA D. SMOLOWE
ANJAN CHOUDHURY
KYLE W. MACH
HEATHER E. TAKAHASHI
ERIN J. COX
BENJAMIN J. HORWICH
E. MARTIN ESTRADA
MATTHEW A. MACDONALD
BRYAN H. HECKENLIVELY
ELAINE J. GOLDENBERG*
MARK R. YOHALEM
GINGER D. ANDERS*
MARGARET G. MARASCHINO
JOHN M. GILDERSLEEVE
ADAM B. WEISS
GEORGE CLAYTON FATHEREE, III
KELLY L. C. KRIEBS
JEREMY A. LAWRENCE
LAURA K. LIN
ACHYUT J. PHADKE
ZACHARY M. BRIERS
JENNIFER M. BRODER
KURUVILLA J. OLASA
JUSTIN P. RAPHAEL
ROSE LEDA EHLER
ERIC P. TUTTLE
JOHN W. BERRY
ROBYN K. BACON
JORDAN D. SEGALL
DAVID S. HONG
JONATHAN KRAVIS*
WESLEY T.L. BURRELL
KAREN A. LORANG
CRAIG JENNINGS LAVOIE
JENNIFER L. BRYANT
ANDREW CATH RUBENSTEIN
NICHOLAS D. FRAM
JOHN L. SCHWAB
ASHLEY D. KAPLAN
JESSICA REICH BARIL

JULIANA M. YEE
JEREMY K. BEECHER
MATTHEW K. DONOHUE
EMILY CURRAN-HUBERTY
JORDAN X. NAVARRETTE
BENJAMIN B. MAJOR
LAUREN C. BARNETT
C. HUNTER HAYES
TREVOR N. TEMPLETON
SKYLAR B. GROVE
ELIZABETH R. DYER
SARAH S. LEE
LAURA M. LOPEZ
MICHAEL C. BAKER
ADELE M. EL-KHOURI*
COLIN A. DEVINE
DANE P. SHIKMAN
LEXI PEACOCK
MAGGIE THOMPSON
SAMUEL H. ALLEN
ALLISON M. DAY
JONATHAN S. MELTZER*
LAUREN M. HARDING
NEFI D. ACOSTA
STEPHANIE G. HERRERA
TERESA REED DIPPO
DANIEL BENYAMIN
SARA A. MCDERMOTT
J. MAX ROSEN
RACHEL G. MILLER-ZIEGLER*
ALISON F. KAROL SIGURDSSON
ANNE K. CONLEY
KATHERINE G. INCANTALUPO
DAVID P. THORESON
NICHOLAS H. AXELROD
DAVID W. MORESHEAD
ANDREW N. BREWSTER, III
TERRA D. LAUGHTON
ROWLEY J. RICE
JEREMY S. KREISBERG*
GINA F. ELLIOTT
BRANDON R. TEACHOUT
LUCAS J. ARRIAZ
USHA CHILUKURI VANCE
STEVE HILTON
VINCENT LING
ALEXANDER S. GORIN
BRENDAN GANTS*

MARKUS BRAZILL
MARI T. SAIGAL
LAUREN E. ROSS*
ZOE BEDELL*
BENJAMIN D. BARDOH
ABE DYK
MICHELE C. NIELSEN
APRIL YOUPEE-ROLL
DAVID F. FEINGOLD
COBUS VAN DER VEN*
MARIANNA MAO
MEGAN MCCREADIE
OMAR M. NOURELDIN
STEPHEN HYLAS
ARIEL TESHUVA
SHANNON GALVIN AMINIRAD
LLOYD MARSHALL
NATALIE KARL
BRANDON MARTINEZ
ANDREW J. RAMIREZ
ANDREW LEWIS
CARRIE C. LITTEN
BEAU C. TREMITIERE
ESTALYN S. MARQUIS
JAMES R. SALZMANN
ELIZABETH DOUGLAS
SAMIR HALAWI
ROBIN S. GRAY

OF COUNSEL

ROBERT K. JOHNSON
PATRICK J. CAFFERTY, JR.
PETER A. DETRE
BRAD SCHNEIDER
PETER E. GRATZINGER
JENNY H. HONG
KIMBERLY A. CHI
BLAU C. TREMITIERE
MATTHEW S. SCHONHOLZ
MICHAEL E. GREANEY

E. LEROY TOLLES
(1922–2008)

*ADMITTED IN DC
ALL OTHERS ADMITTED IN CA

350 SOUTH GRAND AVENUE
FIFTIETH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-3089
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

601 MASSACHUSETTS AVENUE NW
SUITE 500E
WASHINGTON, D.C. 20001-5369
TELEPHONE (202) 220-1100
FACSIMILE (202) 220-2300

December 16, 2020

Writer's Direct Contact
(213) 683-9528
(213) 683-4028 FAX
stuart.senator@mto.com

TO: EPP's Counsel in Niaspan Antitrust Litigation

Re: *Potential Reply Expert Report of Ms. Craft Regarding
EPPs' Renewed Motion for Class Certification in Niaspan Antitrust Litigation*

Dear Justin:

We cannot agree to EPPs' request, just two days before their reply brief on their renewed motion for class certification is due, also to present a reply expert report from Ms. Craft. You mention two issues Ms. Craft would address; both have been present in this case all along—including specifically with respect to EPPs' original motion for class certification. It was EPPs' and Ms. Craft's choice not to address them in Ms. Craft's supplemental declaration in conjunction with EPPs' renewed motion opening papers. There is no basis to submit yet another Craft report on reply to that renewed motion.

1. The "ASO/TPA issue" addressed in Defendants' November 6, 2020 opposition to EPPs' renewed motion for class certification and in Mr. Dietz's concurrent expert declaration is not a new or surprising subject matter. It was raised by defendants in their opposition to EPPs' original motion, and it is a known and indeed central issue on ascertainability. *See* Opposition to EPPs' Motion for Class Certification, Docket No. 608, filed Feb. 25, 2019, at 14 ("insurer acting in an administrator services only (ASO capacity)"); *id.* at 15-23. ASOs' roles were also discussed at depositions in conjunction with EPPs' prior class certification motion, including the deposition of EPPs' prior class certification expert, Mr. Winkleman, and their damages expert, Dr.

MUNGER, TOLLES & OLSON LLP

EPP's Counsel in Niaspan Antitrust Litigation
December 16, 2020
Page 2


Rosenthal – testimony discussed in Defendants' opposition to EPPs' prior motion.  *Id.* at 17 (discussing Rosenthal and Winkelman testimony regarding ASOs).

It was EPPs' and Ms. Craft's clear choice not to address this issue in the renewed motion and in Ms. Craft's supplemental declaration in support of that motion.   Indeed, Ms. Craft – not Defendants' counsel – was the first one to mention ASOs and TPAs at her deposition. Craft Oct. 14, 2020 Depo. Transcript, at 33:22-34:1 ("So that's the party that's entering into the agreement with the PBM and, further, to identify those instances in which the contracting party may be acting as an administrator, whether ASO or TPA, for a fully insured plan.").  Before any follow up on ASOs/TPAs by Defendants' counsel, Ms. Craft again returned to the subject herself.  *Id.* at 45:8-14 ("And this is true whether there's a fully insured health plan or an ASO or a TPA because . . . .").  The issue then became a subject to which Ms. Craft returned again and again in the deposition:

- 106:23-107:4 (". . . and the information about whether the contracting party is, in fact, the insurer or is an ASO or TPA")

- 107:15-16 ("That would be your ASO or TPA relationships.")

- 111:4-9 ("the particular tables that I'm talking about . . . identify whether that entity which has contracted with the PBM is contracting in a capacity as an ASO or TPA . . .  ")

- 113:19-114:6 ("and then recognize relationships between TPAs as opposed to – and I'm going to put in a bucket here together, ASOs and TPAs . . .")

- 121:19-122:1 (". . . the party being billed is a TPA or ASO, in which case . . . ")

- 122:21-24 ("some benefit managers that enroll clients as TPAs do.")

- 123:4-7 ("Are you using a TPA? Are you not using a TPA?")

- 124:7-13 ("If the contracting party is acting as an ASO or a TPA . . .")

- 124:14-24 ("to determine whether the client relationship is an ASO; as a TPA")

- 125:17-20 (". . . if the billing party is an ASO or a TPA . . . ")

- 128:1-3 ("So the only thing you're missing is if that billing party who you sent your invoice to is an ASO or TPA . . .")

- 129:9-13 ("where your billing party is an ASO or a TPA")

- 134:4-9 ("ASO or a TPA")

MUNGER, TOLLES & OLSON LLP

EPP's Counsel in Niaspan Antitrust Litigation
December 16, 2020
Page 3

- 144:25-145:4 ("ASO or a TPA")

- 152:7-9 (". . . identification of an ASO or TPA . . . ")

- 155:13-17 ("it is not designed to identify the ASO or TPA relationships")

That deposition took place weeks before Defendants filed their November 6, 2020 opposition and Mr. Dietz's concurrent expert declaration.

     2.  There is also nothing justifying a reply expert report to address the Optum data that was discussed in Defendants' November 6, 2020 opposition to EPPs' renewed motion for class certification and in Mr. Dietz's concurrent expert declaration.  As with the ASO/TPA issue, it has been present all along.  For example, Defendants specifically criticized Ms. Craft in their opposition to EPPs' initial class certification motion for Ms. Craft's failure to "even review the data produced in this case."  Docket No. 608, at 36.  This was also a subject discussed by Judge DuBois in His Honor's memorandum opinion.  Docket No. 708, at 17 (referring to "Craft's failure to review the data produced in this case").  And both in her prior declaration and in her current declaration Ms. Craft relies on a declaration from Optum specifically with respect to "the type of data that PBMs retain" – which EPPs' argued was a basis for Judge DuBois's denying the motion to exclude Ms. Craft's prior opinions and Judge DuBois then cited in His Honor's memorandum opinion.  *Id.*, at 16-17.

     It was EPPs' and Ms. Crafts' clear choice to ignore the actual Optum data in the renewed motion and Ms. Craft's supplemental declaration in support of that motion.  Similar to Ms. Craft's being the one who brought up the ASO/TPA issue at her deposition, Ms. Craft testified at her October 14, 2020 deposition that she herself decided to look at the Optum data (for the first time) in preparation for the deposition.  Craft Oct. 14, 2020 Depo. Transcript, at 13:15-15:19 (". . . Q.  Did  you ask for those files? A. I did.  Q.  When?  A. Sometime over the last several weeks in connection with thinking about the upcoming deposition. . . .") .  Once again, that was weeks before Defendants filed their November 6, 2020 opposition to EPPs' renewed motion for class certification and Mr. Dietz's concurrent expert declaration.   This too makes clear that it was no surprise to EPPs or Ms. Craft that Defendants and Mr. Dietz would discuss the Optum data.

*   *   *

     We think it is inappropriate for EPPs and Ms. Craft to put in a reply report on these issues not just for the above reasons but also because the issue of a reply expert reports was explicitly raised at the August 11, 2020 scheduling conference, and Judge DuBois clearly stated that reply expert reports would not be permitted.  *See* Transcript of Telephonic Scheduling Conference, Aug. 11, 2020, at 38:17-18, 39:8-13 (THE COURT: This is your reply . . . MR. SENATOR:  . . . I assume with that there's no further expert reports, no rebuttal expert report or further evidence to be introduced at that stage.  THE COURT: I don't think so.  No on this

MUNGER, TOLLES & OLSON LLP

EPP's Counsel in Niaspan Antitrust Litigation
December 16, 2020
Page 4

record that we're developing today."). His Honor's scheduling order then conspicuously omitted permission to file reply expert reports. See Order, Docket No. 716, Para 4.

This makes EPPs' and Ms. Crafts' clear choice not to address these issues in the renewed motion and Ms. Craft's supplemental declaration all the more stark, and the inappropriateness of addressing them for the first time on reply all the more clear. And the idea in your email that "As the moving party, [EPPs] bear the burden on this motion and believe a rebuttal report is warranted on this basis alone" has been disposed of by the Judge's statement at the August 11, 2020 scheduling conference. Transcript of Telephonic Scheduling Conference, Aug. 11, 2020, at 38:17-18, 39:8-13

We also strongly object to EPPs' waiting until two days before their reply brief is due to bring up this request. Mr. Dietz's expert report was served on November 6, 2020. The deposition was scheduled on a date EPPs' requested, and defendants asked no question of Dr. Dietz.

We believe that at this late date it is especially inappropriate for EPPs to seek to present a reply report. But if EPPs nevertheless chose to do so, we believe that the issue should be raised with Judge DuBois before any purported reply report, proposed reply report, or offer of proof of any sort in or with the reply brief – is presented. Any other course of action would in our view be directly contrary to Judge DuBois ruling at the status conference, and fundamentally unfair. (In light of the extremely compressed timing at this juncture, please include this letter with any presentation you make to Judge DuBois.) If you plan to move forward with seeking to present a reply expert report and will not follow this course, please tell us that immediately and we will present the issue to Judge DuBois tomorrow.

Very truly yours,

Stuart N. Senator

SNS:flr

# EXHIBIT D

| | |
|---|---|
| **From:** | Justin Boley |
| **To:** | Senator, Stuart |
| **Subject:** | Re: Activity in Case 2:13-md-02460-JD IN RE: NIASPAN ANTITRUST LITIGATION Stipulation |
| **Date:** | Thursday, December 17, 2020 1:15:36 PM |

I think we should have a response for you very shortly.

Justin N. Boley
Wexler Wallace LLP
312.261.4542 (direct)
312.550.0450 (cell)
jnb@wexlerwallace.com


On Dec 17, 2020, at 3:02 PM, Senator, Stuart <Stuart.Senator@mto.com> wrote:


Thanks.  Where are EPPs on the reply report question you brought up about Ms. Craft?

Stuart N. Senator | Munger, Tolles & Olson LLP
350 South Grand Avenue | Los Angeles, CA 90071
Tel:  213.683.9528 | stuart.senator@mto.com | www.mto.com

***NOTICE***
*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law.  It is not intended for transmission to, or receipt by, any unauthorized person.  If you have received this message in error, do not read it.  Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected.  Thank you.*

**From:** Justin Boley <jnb@wexlerwallace.com>
**Sent:** Thursday, December 17, 2020 12:57 PM
**To:** Senator, Stuart <Stuart.Senator@mto.com>
**Subject:** Re: Activity in Case 2:13-md-02460-JD IN RE: NIASPAN ANTITRUST LITIGATION Stipulation

Stuart,

I apologize, that's my fault.  Given the limited scope of the stipulation and the time crunch, we didn't think it was necessary to circulate again.  I'll ask that we send everything around in the future.

Justin N. Boley
Wexler Wallace LLP
312.261.4542 (direct)
312.550.0450 (cell)
jnb@wexlerwallace.com


On Dec 17, 2020, at 2:29 PM, Senator, Stuart
<Stuart.Senator@mto.com> wrote:

Justin,

Did I miss the email where you ran this "stipulation" by defendants for approval?  (I know we agreed to the bottom line requested relief.)

**Stuart N. Senator | Munger, Tolles & Olson LLP**
350 South Grand Avenue | Los Angeles, CA 90071
Tel:  213.683.9528 | stuart.senator@mto.com | www.mto.com

*\*\*\*NOTICE\*\*\**
*This message is confidential and may contain information that is privileged, attorney work product or otherwise exempt from disclosure under applicable law.  It is not intended for transmission to, or receipt by, any unauthorized person.  If you have received this message in error, do not read it.  Please delete it without copying it, and notify the sender by separate e-mail so that our address record can be corrected.  Thank you.*

**From:** ecf_paed@paed.uscourts.gov <ecf_paed@paed.uscourts.gov>
**Sent:** Thursday, December 17, 2020 11:45 AM
**To:** paedmail@paed.uscourts.gov
**Subject:** Activity in Case 2:13-md-02460-JD IN RE: NIASPAN ANTITRUST LITIGATION Stipulation

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### Eastern District of Pennsylvania

## Notice of Electronic Filing

The following transaction was entered by KODROFF, JEFFREY on 12/17/2020 at 2:45 PM EST and filed on 12/17/2020
**Case Name:**        IN RE: NIASPAN ANTITRUST LITIGATION
**Case Number:**      2:13-md-02460-JD
**Filer:**            PLAINTIFF(S)

**Document Number:** [730](#)

**Docket Text:**
**STIPULATION *Stipulation and Proposed Order regarding Page Limit Extension* by PLAINTIFF(S). (KODROFF, JEFFREY)**

**2:13-md-02460-JD Notice has been electronically mailed to:**

ADAM T. HUMANN    adam.humann@kirkland.com, kenymanagingclerk@kirkland.com

ALEXANDER JOHN EGERVARY    aje@hangley.com, mzh@hangley.com

ALEXANDRA I. RUSSELL    alexandra.russell@kirkland.com

ANDREW COYNE CURLEY    acurley@bm.net, dshappell@bm.net, mdaniels@bm.net

ANDREW WILLIAM KELLY    akelly@odrlaw.com

ANNA T. NEILL    aneill@knpa.com, 4631402420@filings.docketbird.com, moria@knpa.com

ANTHONY J. BOLOGNESE    abolognese@bolognese-law.com

ARCHANA TAMOSHUNAS    atamoshunas@tcllaw.com

BARRY L. REFSIN    brefsin@hangley.com, aje@hangley.com, ecffilings@hangley.com, jsolt@hangley.com, mhennigar@hangley.com, mlawrence@hangley.com, mrebuck@hangley.com, ned@hangley.com

BERNARD D. MARCUS    marcus@marcus-shapira.com

BETHANY R. TURKE    brt@wexlerwallace.com

BLANCA F. YOUNG    blanca.young@mto.com, robyn.bird@mto.com

BRIAN C. HILL    hill@marcus-shapira.com, yates@marcus-shapira.com

BRUCE E. GERSTEIN    bgerstein@garwingerstein.com, ECF@garwingerstein.com, sroth@garwingerstein.com

CAITLIN G. COSLETT    ccoslett@bm.net

CASEY MATTHEW PRESTON      cpreston@cohenmilstein.com

CHRIS LETTER      cletter@odrlaw.com, jfitzpatrick@odrlaw.com

CHRISTINA SHARP      dsharp@girardsharp.com,
avongoetz@girardsharp.com, jcook@girardsharp.com

CHRISTOPHER T. STOW-SERGE      cstow@odrlaw.com,
kfontenot@odrlaw.com

DAN CHIOREAN      dchiorean@odrlaw.com

DAN LITVIN      dlitvin@garwingerstein.com,
ccimino@garwingerstein.com, ecf@garwingerstein.com,
sroth@garwingerstein.com

DANIEL C. GIRARD      dgirard@girardsharp.com,
apolk@girardsharp.com, avongoetz@girardsharp.com

DANIEL C. SIMONS      dsimons@bm.net, pfrohbergh@bm.net

DANIEL J STUART      stuart@marcus-shapira.com,
ocilka@marcus-shapira.com

DAVID BAYLIS FRANCO      dfranco@dfrancolaw.com

DAVID F. SORENSEN      dsorensen@bm.net, aarteaga@bm.net,
cchoe@bm.net, clozano@bm.net, dwerwinski@bm.net,
ecramer@bm.net, pfrohbergh@bm.net

DAVID S. SCALIA      dscalia@dugan-lawfirm.com

DEVORA W. ALLON      devora.allon@kirkland.com, ecf-
b6317641dae4@ecf.pacerpro.com,
kenymanagingclerk@kirkland.com

DIANA J. ZINSER      dzinser@srkattorneys.com

DIANNE M. NAST      dnast@nastlaw.com

DMITRIY TISHYEVICH      dtishyevich@mwe.com,
docketflow@mwe.com

DONNA M. EVANS      devans@cohenmilstein.com

DOUGLAS R. PLYMALE      dplymale@dugan-lawfirm.com

DOUGLAS R. WILSON      dwilson@hpcllp.com,
canderson@hpcllp.com

ELIZABETH A. RYAN     eryan@baileyglasser.com,
mmcclay@baileyglasser.com

ERIC L. BLOOM     ebloom@hangley.com, cnichols@hangley.com,
jsolt@hangley.com

ERIC L. CRAMER     ecramer@bm.net

ERIN OGBURN     erin.ogburn@kirkland.com,
kenymanagingclerk@kirkland.com

ERIN G. ALLEN     allen@marcus-shapira.com, yates@marcus-
shapira.com

FRANK ROCCO SCHIRRIPA     fschirripa@hrsclaw.com

GARY L. AZORSKY     gazorsky@cohenmilstein.com,
efilings@cohenmilstein.com

GREGORY M. SERGI     gregory.sergi@mto.com

GREGORY Y. PORTER     gporter@baileyglasser.com,
mchapman@baileyglasser.com

HANNAH SCHWARZSCHILD     hannahs@hbsslaw.com,
christinet@hbsslaw.com

HEIDI M SILTON     hmsilton@locklaw.com,
dmstanek@locklaw.com, lgn-hmsilton@ecf.courtdrive.com

HOWARD J. SEDRAN     hsedran@lfsblaw.com,
jrapone@lfsblaw.com, klongacre@lfsblaw.com

JAMES R. DUGAN , II     jdugan@dugan-lawfirm.com,
bonnie@dugan-lawfirm.com, dscalia@dugan-lawfirm.com

JAYNE A. GOLDSTEIN     jgoldstein@sfmslaw.com,
pleadings@sfmslaw.com

JEFFREY I. WEINBERGER     jeffrey.weinberger@mto.com,
dan.munson@mto.com

JEFFREY L. KODROFF     jkodroff@srkattorneys.com

JEFFREY Y. WU     jeffrey.wu@mto.com, denise.olguin@mto.com

JENNIFER PIKE     jennifer.pike@faegredrinker.com

JESSICA R. MACAULEY     jessicam@hbsslaw.com,
marcellaj@hbsslaw.com

JOHN RODDY     jroddy@baileyglasser.com

JOHN A. MACORETTA     jmacoretta@srkattorneys.com

JOHN ANDREW IOANNOU     jioannou@motleyrice.com

JOHN D. RADICE     jradice@radicelawfirm.com,
kpickle@radicelawfirm.com, lsmith@radicelawfirm.com

JOHN S. YI     john.yi@faegredrinker.com

JONATHAN D. JANOW     jonathan.janow@bipc.com,
alison.sharp@bipc.com, jacqueline.thomas@bipc.com

JONATHAN S. MELTZER     jonathan.meltzer@mto.com

JOSEPH OPPER     jopper@garwingerstein.com,
ccimino@garwingerstein.com, ecf@garwingerstein.com,
sroth@garwingerstein.com

JOSEPH E. WOLFSON     jwo@stevenslee.com,
JMVA@STEVENSLEE.COM

JOSEPH H. MELTZER     jmeltzer@ktmc.com,
1472664420@filings.docketbird.com, kmarrone@ktmc.com,
pleadings@ktmc.com

JOSEPH T. LUKENS     jlukens@faruqilaw.com

JOSHUA BARTON GRAY     jgray@knpa.com, moria@knpa.com

JOSHUA H. GRABAR     jgrabar@grabarlaw.com

JUSTIN N. BOLEY     jnb@wexlerwallace.com

KAREN HANSON RIEBEL     khriebel@locklaw.com,
amraak@locklaw.com, crjohnson@locklaw.com,
dmstanek@locklaw.com, hnpotteiger@locklaw.com, lgn-
khriebel@ecf.courtdrive.com

KAREN N. WALKER     kwalker@kirkland.com

KEITH J. VERRIER     kverrier@lfsblaw.com

KENNETH A. WEXLER     kaw@wexlerwallace.com,
ecf@wexlerwallace.com

KIMBERLY HENNINGS     khennings@garwingerstein.com,
ecf@garwingerstein.com

KRISTEN JOHNSON PARKER     kristenjp@hbsslaw.com,
linarisc@hbsslaw.com, mikeb@hbsslaw.com

LAURA KILLIAN MUMMERT     lmummert@lowey.com,
7957188420@filings.docketbird.com

LAUREN C. RAVKIND     lravkind@knpa.com,
mmitchell@knpa.com

LAUREN GUTH BARNES     lauren@hbsslaw.com,
hannahs@hbsslaw.com, racheld@hbsslaw.com,
taylorl@hbsslaw.com

LEE ALBERT     lalbert@glancylaw.com, info@glancylaw.com, lee-
albert-5832@ecf.pacerpro.com

LORI A. FANNING     lfanning@millerlawllc.com,
jramirez@millerlawllc.com, mmiller@millerlawllc.com

MARVIN A. MILLER     mmiller@millerlawllc.com,
ajewell@millerlawllc.com, jramirez@millerlawllc.com,
lfanning@millerlawllc.com

MARY ANN GEPPERT     mgeppert@srkattorneys.com

MICHAEL JAY KANE     mkane@bm.net, sleo@bm.net

MICHAEL M. BUCHMAN     mbuchman@motleyrice.com,
jioannou@motleyrice.com

MICHELLE C. CLERKIN     mclerkin@motleyrice.com

MINDEE J. REUBEN     mreuben@litedepalma.com,
epalomino@litedepalma.com

MIRANDA Y. JONES     mjones@hpcllp.com,
abranum@hpcllp.com, canderson@hpcllp.com

MOIRA E. CAIN-MANNIX     cain-mannix@marcus-shapira.com,
yates@marcus-shapira.com

MONICA L. KILEY     mkiley@hangley.com,
brefsin@hangley.com, ecffilings@hangley.com, jsolt@hangley.com,
ned@hangley.com

NATALIE FINKELMAN BENNETT     nfinkelman@sfmslaw.com,
pleadings@sfmslaw.com, smoss@sfmslaw.com

NEILL WILSON CLARK     nclark@faruqilaw.com

NICHOLAS URBAN      nurban@bm.net

PAUL COSTA      pcosta@finekaplan.com,
akatzman@finekaplan.com, eborzillo@finekaplan.com,
nblakeslee@finekaplan.com, shufnagel@finekaplan.com

PAUL H. SAINT-ANTOINE      paul.saint-
antoine@faegredrinker.com

PETER A. DETRE      Peter.Detre@mto.com,
Susan.Ahmadi@mto.com

PETER E. GRATZINGER      peter.gratzinger@mto.com,
carol.parrish@mto.com, cindi.richardson@mto.com

PETER R. KOHN      pkohn@faruqilaw.com,
sdoherty@faruqilaw.com, tthompson@faruqilaw.com

RENAE D. STEINER      rsteiner@heinsmills.com

RICHARD ALAN ARNOLD      rarnold@knpa.com,
sscott@knpa.com

ROBERT S. KITCHENOFF      kitchenoff@wka-law.com

RUSSELL A. CHORUSH      rchorush@hpcllp.com,
abranum@hpcllp.com, canderson@hpcllp.com

SARAH SCHALMAN-BERGEN      sschalman-bergen@bm.net,
crmariney@bm.net, ECF@bm.net

SCOTT D. LIVINGSTON      livingston@marcus-shapira.com,
short@marcus-shapira.com

SCOTT E. PERWIN      sperwin@knpa.com, aneill@knpa.com,
dwilliams@knpa.com, mmitchell@knpa.com

SHARON K. ROBERTSON      srobertson@cohenmilstein.com,
efilings@cohenmilstein.com, jabetti@cohenmilstein.com,
jreynolds@cohenmilstein.com, mruan@cohenmilstein.com,
shainbach@cohenmilstein.com

STEVE D. SHADOWEN      steve@hilliardshadowenlaw.com,
jgaros@hilliardshadowenlaw.com, matt@hilliardshadowenlaw.com,
sean@hilliardshadowenlaw.com, sjohnston@hmglawfirm.com

STUART E. DESROCHES      stuart@odrlaw.com

STUART N. SENATOR      stuart.senator@mto.com,
Cindi.Richardson@mto.com, Dkt-Filings@mto.com,

loren.rives@mto.com

SUSAN C. SEGURA     ssegura@ssrllp.com, draphael@ssrllp.com,
dthompson@ssrllp.com, nblackwell@ssrllp.com

SUSAN SCHNEIDER THOMAS     sthomas@bm.net,
dfilbert@bm.net, ECF@bm.net, jgionnette@bm.net

THOMAS M. SOBOL     tom@hbsslaw.com,
AchebeS@hbsslaw.com, davidn@hbsslaw.com,
EdwardNotargiacomo@hbsslaw.com, grega@hbsslaw.com,
kierstent@hbsslaw.com, linarisf@hbsslaw.com,
madog@hbsslaw.com, marcellaj@hbsslaw.com,
mikeb@hbsslaw.com

TYLER J. STORY     tjs@wexlerwallace.com

VERA CHERIE ESSES     vera.esses@kirkland.com

WILLIAM G. CALDES     bcaldes@srkattorneys.com

**2:13-md-02460-JD Notice will not be electronically mailed to:**

CHRISTOPHER L. LIMBACHER
1111 BAGBY STREET SUITE 2100
HOUSTON, TX 77002

CHRISTOPHER M. FIRST
1111 BAGBY STREET SUITE 2100
HOUSTON, TX 77002

ELLEN MEDLIN RICHMOND
MUNGER, TOLLES & OLSEN LLP
560 MISSON STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CA 94105

GREGORY T. ARNOLD
BROWN RUDNICK BERLACK ISRAELS LLP
ONE FINANCIAL CENTER
BOSTON, MA 02111

IAN R. CONNER
KIRKLAND & ELLIS
655 FIFTEENTH STREET, NW
SUITE 1200
WASHINGTON, DC 20005

JEFFREY M. PADWA
CITY OF SOLICITOR'S OFFICE

444 WESTMINSTER ST, STE 220
PROVIDENCE, RI 02903

MATTHEW T. JERZYK
CITY OF SOLICITOR'S OFFICE
444 WASTIMINSTER ST
STE 220
PROVIDENCE, RI 02903

SAMARA L PENN
KIRKLAND & ELLIS LLP
601 LEXINGTON AVENUE
NEW YORK, NY 10022

STEVEN A. ASHER
WEINSTEIN KITCHENOFF & ASHER LLC
1845 WALNUT STREET
SUITE 1100
PHILADELPHIA, PA 19103

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=12/17/2020]
[FileNumber=17325309
-0]
[637ede0d155bec5565c141c59f02a14b2d84f9c3e0becd2780783cda595b5cc81
69e8e5804ea80d2d8f279fe7d4615d6915bf18c661631a700c90dd1d329956b]]